IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| YVONNE ORTIZ, individually and on behalf of all other similarly situated persons,<br><br>    Plaintiff,<br><br>  v.<br><br>MENU FOODS, INC., a New Jersey Corporation; MENU FOODS HOLDINGS, INC., a Delaware Corporation, MENU FOODS INCOME FUND, an unincorporated Canadian business; DOE ENTITIES and INDIVIDUALS 1- 100,<br><br>    Defendants. | Civil No.  CV07-00323 DAE LEK (Class Action)<br><br><br>MEMORANDUM IN SUPPORT OF MOTION |

## **MEMORANDUM IN SUPPORT OF MOTION**

Plaintiff above named moves pursuant to Federal Rules of Civil Procedure 7, Local Rule 7.2 and 28 USC 1447 for remand of this action to state court.

Under the Class Action Fairness Act (CAFA) and <u>Lowdermilk v. U.S. Bank National Ass'n</u>, 479 F.3d 994 (9th Circuit, 2007), Defendant Menu[2] has failed to prove to a "legal certainty" that the requirements for original jurisdiction in federal courts have been met. Specifically, Defendant Menu has failed to introduce any evidence of: (1) class size or (2) class damages to verify that damages in this action exceed $5 million. Defendant Menu has instead only offered the court conjecture and speculation in specific violation of the requirements of <u>Lowerdermilk</u>. Because of Defendant Menu's failure to meet its burden, Plaintiff respectfully requests that the Court remand this case to Hawaii

---

[2] At the time of filing the removal petition, only Defendant Menu Foods, Inc. had been served with the complaint. At the time of filing this motion, Defendant Menu Foods Holdings, Inc. has also been served with the complaint.

circuit court.

I.     **STATEMENT OF FACTS**

    A.     **The Nature of the Claim**

In this case, Defendant Menu produced, manufactured, marketed, and/or sold contaminated and adulterated dog and cat food that contained aminopterin, a type of rat poison, and melamine, an industrial chemical sometimes used in fertilizer in countries outside the United States.  The food contaminants have been shown to cause serious injury, illness, and/or death to dogs and cats.  See generally Complaint.

Menu Foods has admitted that its products were contaminated and adulterated and has initiated a voluntary recall of the contaminated and adulterated dog and cat food products.  See Complaint, Exhibit "1": Statement of Paul Henderson, President and Chief Executive Officer of Menu Foods (http://www.menufoods.com/recall/PR%20Introductory%20Remarks%2004242007.htm).

This case seeks the following relief for Hawaii consumers who purchased Menu Foods' contaminated and adulterated pet food for their dogs and cats:

    a)     Declaratory relief that Menu Foods sold contaminated and adulterated pet food in violation of the Hawaii Food, Drug & Cosmetic Act, HRS Chapter 328, which prohibits the manufacture, sale, delivery, holding, or offering for sale of any food that is adulterated because it contains a poisonous or deleterious substance which may render it injurious to health.  Under HRS § 328-1, "Food" is expressly defined as "articles used for food or drink by humans, dogs or cats.";

  b)  Injunctive relief to prevent Menu Foods from selling contaminated and adulterated food products in the state of Hawaii; and

  c)  Monetary damages for the cost of purchasing the adulterated and contaminated food by Hawaii consumers, including consequential damages for out of pocket veterinary examinations and future veterinary examinations for animals who have not been injured by the poisoning. See generally Complaint, paragraphs 1-3.

  Plaintiff specifically excluded from her complaint any claim for personal injury to any dog or cat. Complaint, paragraph 45. Thus, there are no claims for medical expenses, emotional distress or other elements of damage associated with pets' injuries. The case as filed seeks only consumer damages for the costs of purchased pet food and pet examinations.

  **B.**  **The Jurisdictional Allegations of Plaintiff's Complaint**

  Plaintiff specifically drafted the complaint to avoid federal jurisdiction to ensure that this case was litigated in Hawaii courts. Specifically, Plaintiff wants to secure benefits of Hawaii's unique Food, Drug & Cosmetic Act, which applies statutory protections to cat and dog food, and to ensure that Hawaii consumers' claims are governed by HRS Chapter 480, which imposes mandatory treble damages for unfair trade practices, such as the sale of tainted pet food.

  Defendant Menu has removed this case to federal court to avoid those consumer protections by seeking consolidation of the case before a putative federal Multi-District Litigation panel, where Hawaii legal protections will not apply if a federal class action is certified. See Defendant Menu's Memorandum of Law in Support of Motion to Stay All Proceedings filed June 15, 2007 at 3 ("The [MDL] cases seek to certify a class of United

3

States residents who purchased allegedly contaminated pet food and seek to compensate them for all damages incurred as a result of Defendants' conduct").

In her complaint, Plaintiff disclaimed federal jurisdiction by including the following specific allegations:

> Pursuant to 28 U.S.C. § 1332(d)(2) and (d)(6), the individual class members aggregated claims and the amount in controversy does not exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and inclusive of attorneys fees..
>
> Pursuant to Lowdermilk v. U.S. Bank National Association, 479 F.3d 994 (2007), this action is not removable to federal court and if removed, Menu Foods has the burden of proving to a "legal certainty" the jurisdiction of any federal court over this action, i.e. that the amount in controversy exceeds the sum or value of $5,000,000.00.

Complaint, paragraphs 42 and 43.

## II. STANDARD OF REVIEW

### A. Standards for Removal & Burden of Proving Federal Jurisdiction

A civil action in state court may be removed to federal district court if the district court had "original jurisdiction" over the matter. 28 U.S.C. § 1441(a). As amended by CAFA, 28 U.S.C. § 1332(d) gives federal district courts "original jurisdiction of any civil action in which, inter alia, the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and in which the aggregate number of proposed plaintiffs is 100 or greater, and any member of the plaintiff class is a citizen of a state different from any defendant (minimal diversity). 28 U.S.C. § 1332(d).

The Ninth Circuit has ruled that "under CAFA the burden of establishing removal jurisdiction remains… on the proponent of federal jurisdiction." Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 685 (9th Cir.2006) (per curiam); See also Serrano v.

4

180 Connect, Inc., 478 F.3d 1018 (9th Cir. 2007) (holding that the proponent of federal jurisdiction bears the burden of proving jurisdiction).

Where a complaint specifies an amount in controversy (as here), the Court "need not look beyond the four corners of the complaint to determine whether the CAFA jurisdictional amount is met…" Lowdermilk v. U.S. Bank National Ass'n, 479 F.3d 994, 998 (9th Circuit, 2007). In assessing the jurisdictional amount, the court should initially look to whether Plaintiff avers damages ("does not exceed the sum or value of $5,000,000.00") that do not reach the threshold for federal jurisdiction. *Id.* In the instant Complaint, as noted above, Plaintiff expressly aver that the amount in controversy does not exceed $5 million, exclusive of interest and costs.

It is well settled that the burden is on the party seeking to preserve the district court's removal jurisdiction (here, Defendant Menu Foods), <u>not</u> the party moving for remand to state court, to show that the requirements for removal have been met. *See* e.g., Sanchez v. Monumental Life Insurance Co., 102 F. 3d 398 (9th Cir. 1996); Duncan v. Stuetzle, 76 F.3d 1480 (9th Cir. 1996); Office of Hawaiian Affairs v. Department of Education, 951 F. Supp. 1484 (D. Haw. 1997). The removal statute is strictly construed against removal and the burden of establishing federal jurisdiction falls upon the party invoking the statute. Ethridge v. Harbor House Restaurant, 861 F. 2d 1389, 1393 (9th Cir. 1988). Where there is doubt as to the right to removal in the first instance, ambiguities are to be construed against removal. Samuel v. Langham, 780 F. Supp. 424, 427 (N.D. Tex. 1992).

### B. Plaintiff May Disclaim Federal Jurisdiction

Because federal courts are courts of limited jurisdiction, federal jurisdiction must

5

be strictly construed. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); 13 Wright, Miller & Cooper, at § 3522. Because it is well established that the plaintiff is "master of her complaint", the plaintiff may plead specifically to avoid federal jurisdiction. See, e.g., Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 831, 122 S.Ct. 1889, 153 L.Ed.2d 13 (2002); Caterpillar Inc. v. Williams, 482 U.S. 386, 398-99, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); Valles v. Ivy Hill Corp., 410 F.3d 1071, 1075 (9th Cir.2005).

Subject to a "good faith" requirement in pleading, a plaintiff may sue for less than the amount she may be entitled to if she wishes to avoid federal jurisdiction and remain in state court. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Where the plaintiff has alleged her facts and pled her damages, and there is no evidence of bad faith, the defendant must not only contradict the plaintiff's own assessment of damages, but must overcome the presumption against federal jurisdiction. Id. at 290, 58 S.Ct. 586.

As the Court in Lowdermilk explained, "absent evidence of bad faith, we are obliged to honor th[e] representation [of Plaintiffs' claimed jurisdictional amount…. They are not obligated to overstate their damages to satisfy the defendant's interest in a federal forum, but may plead conservatively to secure a state forum." Lowdermilk at 1003.

### C. Defendant Must Prove CAFA Jurisdiction to a Legal Certainty

Under CAFA, the Ninth Circuit has held that a "where the plaintiff has pled an amount in controversy less than $5,000,000, the party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met." Id. at 1000. Where the

underlying statute provides for an award of attorneys fees, then attorney's fees are included in the amount in controversy. *Id.* at 1000.

In proving that the jurisdictional amount is exceeded to a "legal certainty," the defendant can not rely upon mere conjecture or speculation, but must instead advance a theory or theories "supported by evidence from its own files" that the jurisdictional minimum is exceeded. *Id.* at 1000. For example, in Lowdermilk, defendant submitted a declaration to the court of: (1) the estimated class size and (2) the estimated damage for each class member to support its contention that the jurisdictional amount was exceeded. *Id.* at 1000.

Notwithstanding its proffered declaration and supporting documentation, the Court in Lowdermilk rejected the evidence submitted by the defendant. In Lowdermilk, the case was brought on behalf of Defendant's employees, alleging that they were paid late wages after termination. *Id.* at 1000. Finding that the defendant offered "thin support" for its proffered numbers, *Id.* at 1001, the Court found that defendants' deficiencies included the following:

1)  failing to prove to a legal certainty class size by providing no evidence of "how many…employees…would qualify as class members." *Id.* at 1001.

2)  failing to prove to a legal certainty the amount of damages by providing no evidence and instead "assume[ing] that all class members would be entitled to the maximum damages under Oregon law…" *Id.* at 1001.

The Court concluded that the defendant did not come forward with "concrete evidence… to estimate with any certainty the actual amount in controversy." *Id.* at 1001. The Court reasoned that it is appropriate to place this burden on the defendant since only

7

the defendant has access to evidence that would prove the jurisdictional amount or disprove Plaintiffs' stated jurisdictional limit. *Id.* at 1002 ("If Defendant, who is the only party with access to its employment records cannot more accurately approximate the class size, Plaintiff cannot be expected to plead her case with any more specificity than she did." *Id.* at 1002.)

The Court in <u>Lowdermilk</u> ruled that absent Defendants' proffer of appropriate evidence as to "the size of the class, the amount of unpaid wages owed due to the rounding policy, and whether or not members of the class qualify for penalty wages; such speculation does meet the "legal certainty" standard." *Id.* at 1002. The Court concluded that

> [W]e cannot base our jurisdiction on Defendant's speculation and conjecture. Even if we include attorneys' fees in the calculation, Defendant is no closer to carrying its burden because we simply have no basis for estimating the claims of the individual class members. Accordingly, we hold that at this juncture of the litigation, Defendant has failed to prove with legal certainty that the amount in controversy meets CAFA's jurisdictional requirements.

*Id.* at 1002.

### III.    DEFENDANT MENU HAS FAILED TO MEET ITS BURDEN OF LEGAL CERTAINTY

Plaintiff does not contest that this case meets the standards of minimal diversity (requiring any plaintiff to be a citizen of a state different from any defendant) or numerosity (requiring the number of proposed plaintiffs to be greater than 100). 28 U.S.C. § 1332(d). Plaintiff strongly contests that the third requirement of section 1332(d) is met since the amount in controversy does not exceed the sum or value of $5,000,000, exclusive of interests or costs. Because Plaintiff has disclaimed damages greater than $5 million and Defendant has failed to meet its burden to prove the jurisdictional amount to

8

a "legal certainty", this Court should remand this case to Hawaii circuit court.

### A. Defendant Has Misstated the Allegations of Plaintiff's Complaint

Defendant's failure to ensure that appropriate jurisdiction exists in this court is highlighted by the fact that Defendant has grossly misstated the claims raised in Plaintiff's complaint.

In its Notice of Removal, Defendant alleges that Plaintiff is seeking "compensatory damages in the form of veterinarian bills, the cost of the pet food, and related expenses as a result of their pets' illnesses." Notice of Removal at 4. However, Plaintiff has specifically not pled and is not seeking any damages for "any claim for personal injury for any pet." Complaint, paragraph 45. Plaintiff's Complaint is devoid of any claims resulting from illness or injury to pets belonging to class members and any damages associated with pet illness or injury, which apparently forms the basis for Defendant Menu's damages estimated, should be disregarded.

In her Complaint, Plaintiff is seeking only recovery of costs associated with purchasing defective, toxic, recalled food products manufactured by Defendant and sold in Hawaii to Hawaii pet owners. The Complaint filed by Plaintiff is unlike claims filed in other states because it includes no claims for pet illness or injury. The case is a consumer class action suit with specific claims made under Hawaii law as it relates to the sale of defective and adulterated food products. The only veterinary expense Plaintiff has claimed is for the cost of a preventative blood and urine screening examinations for the pets in the class, none of whom have suffered any overt symptoms as a result of their exposure to melamine-contaminated food. Defendant's misstatement of the plain allegations of the complaint underscores the inappropriateness of the removal petition.

### B. Defendant Has Offered No Evidence to Prove the Number of Class Members or the Amount of Class Damages

Defendant's removal petition is based solely upon its interpretation of the number of class members alleged in the complaint and its assumption about the amount of class member damages based upon personal injury claims that are excluded from this case. See Notice of Removal at 3-6. Instead of offering the "concrete evidence" required by Lowdermilk, Defendant instead engages in the "speculation and conjecture" that Lowdermilk specifically reject.

An examination of the "evidence" proffered by Defendant illustrates the utter failure to meet the Lowdermilk standards.

First, based upon Plaintiff's estimation that there are several thousand class members, Defendant argues that because "several" is greater than two, then there are approximately 3,000 class members. Ignoring the mandate of Lowdermilk, Defendant has offered no affidavit or other admissible evidence of the number of consumers that were sold its tainted food. Presumably, Defendant is in possession of that information and its failure to put forward any evidence as to the class size fails to meet the standard of "legal certainty."

Second, equally speculative (and grossly erroneous), is Defendant's estimate of $2,000 damages per class member. Presumably, Defendant arrived at this figure based upon its misunderstanding that claims for personal injury are included within the class definition. As stated above, Plaintiff has made no claims for pet illness or injury as part of the class action Complaint. Where Defendant's figure comes from or the basis of its "estimate" is simply conjecture—one that is based on Defendant's misreading of the basic facts of the case.

Last, the claim for senior damages is equally speculative. Hawaii law does give the court discretion to award alternative senior damages for unfair or deceptive practices directed at seniors. See HRS 480-13(a)(1).[3] However, an award of these maximum damages is discretionary and based upon several factors that the court may consider. See HRS 480-13.5.[4] Defendant has offered no basis either for its estimation of the number of seniors who are members of the class, nor has it met its burden by assuming that these seniors would be entitled to maximum amount of damages available. Lowerdermilk at 1001 (rejecting defendant's assumption that all class members would be entitled to the maximum damages allowed under Oregon law).

## IV.    PLAINTIFF SHOULD BE AWARDED FEES AND COSTS

"An order remanding the case may require payment of just costs and any actual expenses, including attorneys fees, incurred as a result of the removal." 28 USC 1447(c).

---

[3] "[W]here the plaintiff is an elder, the plaintiff, in the alternative, may be awarded a sum not less than $5,000 or threefold any damages sustained by the plaintiff, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit. In determining whether to adopt the $5,000 alternative amount in an award to an elder, the court shall consider the factors set forth in section 480-13.5"

[4] If a person commits a violation under section 480-2 which is directed toward, targets, or injures an elder, a court, in addition to any other civil penalty, may impose a civil penalty not to exceed $10,000 for each violation.
   (b)  In determining the amount, if any, of civil penalty under subsection (a), the court shall consider the following:
     (1)  Whether the person's conduct was in willful disregard of the rights of the elder;
     (2)  Whether the person knew or should have known that the person's conduct was directed toward or targeted an elder;
     (3)  Whether the elder was more vulnerable to the person's conduct than other consumers because of age, poor health, infirmity, impaired understanding, restricted mobility, or disability;
     (4)  The extent of injury, loss, or damages suffered by the elder; and
     (5)  Any other factors the court deems appropriate.
   (c)  As used in this chapter, 'elder' means a consumer who is sixty-two years of age or older. "

11

A court may award attorney fees when removal is wrong as a matter of law. Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1106 n. 6 (9th Cir.2000)(even if removal petition is "fairly supportable", an award of fees may be made).; see also Moore v. Permanente Med. Group, Inc., 981 F.2d 443, 448 (9th Cir.1992) (holding that "bad faith need not be demonstrated" to award fees).

In Ansley v. Ameriquest Mortg. Co. 340 F.3d 858, 865 (9th Cir. 2003), the Ninth Circuit affirmed an award of fees for a motion to remand where the defendant "did not provide any authority in support of its argument … so as to justify removal." *Id.*

In her complaint, Plaintiff specifically referenced the required standard of legal certainty and cited to the Lowdermilk case. Although Defendant Menu cited the case in its removal petition, its complete failure to attempt to comply with the requirements of Lowdermilk by submitting concrete evidence is more egregious than the failure to provide legal authority in Ansley. A cursory reading of Lowdermilk should have alerted Defendant Menu to the required standard of concrete evidence proven to a legal certainty.

In light of Defendant Menu's complete lack of factual authority for its position, Plaintiff should be awarded her reasonable fees and costs through the submission of a declaration to the Court after hearing of this motion.[5]

V. **CONCLUSION**

For the above stated reasons, Plaintiff respectfully submits that this case should be remanded to Hawaii circuit court. Plaintiff expressly pled an amount in controversy that would preclude CAFA jurisdiction. Moreover, Defendant misstated the basic premise of

---

[5] Plaintiff does not offer a declaration of fees and costs at this time since they do not know whether Defendant Menu will persist in its attempt at removal notwithstanding its total failure to comply with the appropriate legal requirements.

the Complaint and based its Notice of Removal on issues and damages not pled in the Complaint.  In addition, Defendant's estimates of damages were unsupported by evidence, are clearly speculative, and thus fail to meet the burden of proving the amount in controversy to a "legal certainty."  Last, Defendant failed to comply with the evidentiary requirements of <u>Lowdermilk</u>, even though the case was brought to its attention in Plaintiff's complaint.  Based on all the foregoing, this case should be remanded and Plaintiff should also be awarded her costs and fees for having to oppose the motion.

        DATED:  Honolulu, Hawaii, <u>July 12, 2007</u>.

                                                       <u>/s/ Thomas R. Grande</u>
                                              THOMAS R. GRANDE
                                              EMILY A. GARDNER

                                              Attorneys for Plaintiff