

ORIGINAL

LOVE & KIRSCHENBAUM
A LIMITED LIABILITY LAW COMPANY

CHAD P. LOVE  1617-0
BARBARA J. KIRSCHENBAUM  5825-0
1164 Bishop Street, Ste. 1105
Honolulu, Hawaii  96813
Tel. No. 546-7575



FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 27 2007

at 2 o'clock and 35 min. b M.
SUE BEITIA, CLERK

Attorneys for Menu Foods, Inc.,
Menu Foods Holdings, Inc., and
Menu Foods Income Fund

## IN THE UNITED STATES DISTRICT COURT CIRCUIT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| YVONNE ORTIZ, Individually and on behalf of all other similarly situated persons,<br><br>       Plaintiff,<br><br>  vs.<br><br>MENU FOODS, INC., a New Jersey corporation; MENU FOODS HOLDINGS, INC., a Delaware corporation; MENU FOODS INCOME FUND, an unincorporated Canadian business; DOE ENTITIES and INDIVIDUALS 1-100,<br><br>       Defendants. | CIVIL NO. CV07-00323 DAE LEK<br>(Class Action)<br><br>MENU FOODS HOLDINGS, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND, FILED 07/12/07; DECLARATION OF CHAD P. LOVE; EXHIBITS A AND B; DECLARATION OF ERIN OWENS; CERTIFICATE OF SERVICE<br><br><br>[Non-Hearing Motion] |

-i-

Dockets.Justia.com

**MENU FOODS HOLDINGS, INC.'S MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION FOR REMAND, FILED 07/12/07**

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................... 1

II.    PROCEDURAL BACKGROUND ................................................. 5

III.   ARGUMENT .................................................................................. 6

    A.   The Amount-in-Controversy Exceeds $5 Million ................................. 6

        1.   The Standard for Determining the Amount-in-
Controversy is to Assess the Total Sum and Value
of What Plaintiffs Are Claiming, Not What
Damages Plaintiffs Will Ultimately Recover at
Trial ........................................................................................... 7

        2.   The Total Sum and Value of the Damages Sought
by Plaintiffs in this Case Exceeds $5 Million, as
Demonstrated to a Legal Certainty by Objective
Data ........................................................................................... 8

            •   Number of Pets Potentially Affected ...................................... 9

            •   The Sum and Value of the Categories of
Damages for Potentially Affected Pets ................................... 10
               a)   Compensatory and Consequential Damages................... 10
               b)   Statutory Damages under HRS Chapter 480 .................. 11
               c)   Damages Available to Elders under HRS
Chapter 480 .................................................................. 11
               d)   Attorneys' Fees ............................................................. 14
               e)   Summary of the Calculation of Veterinary
Screening, Statutory Damages and Attorneys'
Fees .............................................................................. 16

    B.   Plaintiffs Should Not Be Awarded Fees and Costs ............................... 17

IV.    CONCLUSION............................................................................... 18

# TABLE OF AUTHORITIES

## CASES

Alicia F. v. Department of Education, Civil No. 06-00268 HG-BMK, 2007 WL 593633 (D. Haw. Feb. 21, 2007)....................................................................... 15

Berry v. Hawaiian Express Service, Inc., Civil No. 03-00385 SOM-LEK, 2006 WL 4102120 (D. Haw. Oct. 25, 2006)............................................................. 15

Calt F/S v. JSS Scandinavia, 142 F.3d 1150 (9th Cir. 1998)). ............................... 14

Cohn v. Petsmart, Inc., 281 F.3d 837 (9th Cir. 2002)............................................ 17

DFS Group LP v. Paiea Properties, 110 Haw. 217, 131 P.3d 500 (S. Ct. 2006).......................................................................................................................... 14

Espinosa v. Philip Morris USA, Inc., No. 07 C 231, 2007 WL 917383 (D. Ill. March 25, 2007)......................................................................................... 8, 13

International Padi, Inc. v. Diverlink, No. 03-56478, 03-56788, D.C. No. CV-02-00289-GLT, 2005 WL 1635347 at *1 (9th Cir. July 13, 2005)........................ 17

Lao v. Wickes Furniture Co., Inc., 455 F. Supp. 2d 1045 (C.D. Ca. 2006)........... 7, 11

Lowdermilk v. United States Bank National Association, 479 F.3d 994 (9th Cir. 2007)......................................................................................................... 4, 12, 14

Manguno v. Prudential Prop. and Cas. Ins. Co., 276 F.3d 720 (5th Cir. 2002)..... 8

Massachusetts Cas. Ins. Co. v. Renstrom, 831 F. Supp. 1088 (S.D.N.Y. 1993)............................................................................................................................ 8

Paramount Pictures Corporation v. Carroll, No. CV 05-00260 ACK-LEK, 2006 WL 1990815 (D. Haw. July 13, 2006)............................................................. 15

Parr v. TLLC, LLC, Civil No. 06-00500 DAE-LEK, 2007 WL 1223447 (D.Haw. April 23, 2007) ..................................................................................... 14, 15

Ridder Bros., Inc. v. Blethen, 142 F.2d 395, 399 (9th Cir. 1944).......................... 17

## CASES (Cont.)

Synagro Technologies, Inc. v. GMP Hawaii, Inc., Civ. No. 04-00509
SPK/LEK, 2007 WL 851271 (D. Haw. March 15, 2007) ..................................... 15

Valdez v. Allstate Ins. Co., 372 F.3d 1115 (9th Cir. 2004).................................. 2

## STATUTES

Hawaii Revised Statutes Chapter 480.................................................................. 3, 8, 11, 13

28 U.S.C. § 1332 (2005) .................................................................................... 18

28 U.S.C. § 1332(d) (2005).................................................................................. 3, 7

28 U.S.C. § 1407(a) (1976).................................................................................. 4, 5, 6

28 U.S.C. § 1441 (2002) .................................................................................... 18

Defendant MENU FOODS HOLDINGS, INC. ("Menu Foods") submits this memorandum of law in opposition to the Motion for Remand of this action to state court.

## I.    INTRODUCTION

This is a putative class action arising out of the nationwide recall of pet food manufactured by Menu Foods. There currently are over one-hundred cases filed against Menu Foods in which plaintiffs seek various damages related to Menu Foods' recall of approximately 60 million cans and pouches of pet food. The Judicial Panel on Multidistrict Litigation ("JPML") has established a Multidistrict Litigation ("MDL") in the United States District Court for the District of New Jersey for cases arising out of Menu Foods' pet food recall, so that such litigation may proceed through discovery and pre-trial proceedings in an orderly, efficient and coordinated fashion. The JPML is in the process of transferring pet food recall cases pending in federal courts across the nation to the MDL.

In this pet food recall case, Plaintiffs' proposed class consists of "[a]ll Hawaii consumers who purchased pet food on the Menu Foods recall list between November 8, 2006 and March 6, 2007." See Complaint ¶ 44. By Plaintiffs' own admission, there are "several thousand" putative class members. Complaint ¶ 46. Plaintiffs' putative class is broad enough to include claims by pet owners whose

pets allegedly were injured by the recalled pet food, as well as exposure-only claims.

Plaintiffs' claimed damages for putative class members include the cost of veterinary screening to determine whether the pets were injured by recalled pet food. If the veterinary screening determines a pet is injured, however, Plaintiffs nonsensically purport to exclude any claim for veterinary care for the injured pet from the class in an effort to avoid federal jurisdiction. See Complaint ¶ 45. Nonetheless, such claims for veterinary care are excluded only after the pet has already received the benefit of class membership in the form of the veterinary screening.[1]

In addition to veterinary screening, Plaintiffs seek: (1) the cost of recalled pet food purchased from November 8, 2006 through March 6, 2007; (2) statutory

---

[1]   Plaintiffs' claim that Menu Foods mischaracterized their putative class is not well taken. The confusion and lack of clarity regarding the type of claims for veterinary care that are included in the putative class arises from Plaintiffs' attempt to carve out one type of veterinary care, but not other types, simply to avoid federal jurisdiction. In any event, even excluding care for injured pets from Plaintiffs' claims results in a figure greater than $5 million, as the calculations herein and affidavits filed herewith demonstrate. See Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004) (court may consider "summary-judgment-type evidence relevant to the amount in controversy," such as affidavits or declarations).

treble damages for unfair trade practices; (3) statutory damages pursuant to HRS Chapter 480 of $5,000 per elder plaintiff; (4) punitive damages; and (5) attorneys fees statutorily available under HRS Chapter 480.  Plaintiffs also seek declaratory and injunctive relief.

In their motion for remand, Plaintiffs argue that the amount-in-controversy does not exceed the sum or value of $5 million required to confer federal subject matter jurisdiction over this putative class action.  28 U.S.C. § 1332(d).  Plaintiffs make this bald and unsubstantiated allegation in their Complaint with the admitted goal of avoiding federal jurisdiction.  Complaint ¶ 42; see Pl. Mem.[2] at 3 ("Plaintiffs specifically drafted the Complaint to avoid federal jurisdiction"). Plaintiffs further admit that they hope to flip the burden to Menu Foods to demonstrate the inaccuracy of their unsupported allegation of the claimed damages to a "legal certainty."  See Complaint ¶ 43 (Plaintiffs plead that "pursuant to Lowdermilk…, this action is not removable to federal court and if removed, Menu Foods has the burden of proving to a 'legal certainty' the jurisdiction of any federal court over this action…..").  In other words, by alleging in the Complaint that their

---

[2]    Plaintiffs' Memorandum of Law, dated July 12, 2007, in support of their Motion for Remand will be referred to as "Pl. Mem.")

NEWY1\8128746.1
365652-1

damages are below $5 million, Plaintiffs hope to shift to Menu Foods the burden of demonstrating with "legal certainty" the inaccuracy of Plaintiffs' unsubstantiated allegation regarding the amount-in-controversy. <u>Lowdermilk v. United States Bank National Association</u>, 479 F.3d 994 (9th Cir. 2007).[3]

Plaintiffs' purpose in avoiding federal jurisdiction appears to be to circumvent transfer of this case to the MDL, where other federal pet food recall cases will proceed. Plaintiffs erroneously posit that transfer of this action to the MDL would deny them Hawaii's legal protections. Pl. Mem. at 3. To the contrary, the purpose of the MDL is to coordinate discovery and pre-trial proceedings to ensure consistency in decisions and to conserve judicial and party resources. <u>See</u> 28 U.S.C. § 1407(a) ("When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this

---

[3]  As argued below, Menu Foods is only required to show that the damages Plaintiffs claim, as opposed to the damages Plaintiffs will recover, meet the $5 million threshold. <u>See</u> <u>infra</u> III.A.1. It is Menu Foods' position that Plaintiffs are not entitled to recover under theories articulated in the Complaint, and that Plaintiffs are not entitled to damages pled in the Complaint or discussed herein. As a result, Defendant's statements in this brief regarding the size of putative class or the quantum of damages are based on Plaintiffs' alleged claims and are not admissions of the veracity of the claims or their amounts.

NEWY1\8128746.1
365652-1

section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions...."). If transferred, this action will go to the MDL for discovery and pre-trial proceedings, but thereafter may be remanded to this Court for trial. Id. ("Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district court from which it was transferred....") In any event, the JPML is the appropriate forum in which to oppose transfer of this action to the MDL.

## II.    PROCEDURAL BACKGROUND

Plaintiff YVONNE ORTIZ commenced this products liability action in the Circuit Court of the First Circuit, State of Hawaii, entitled Yvonne Ortiz, individually and on behalf of all other similarly situated persons v. Menu Foods, Inc., a New Jersey Corporation; Menu Foods Holdings, Inc., a Delaware Corporation; Menu Foods Income Fund, an unincorporated Canadian business; Doe Entities and Individuals 1-100, Civil No. 07-1-0849-05(EEH), on May 11, 2007. Defendant Menu Foods was served on or about May 23, 2007.[4] Menu Foods timely filed a Notice of Removal on June 12, 2007.

---

[4]    Defendant Menu Foods, Inc., was served on July 2, 2007, and Menu Foods Income Fund agreed to accept service as of July 17, 2007.

-5-

Plaintiffs allege that Menu Foods manufactured contaminated and adulterated "cuts and gravy" style dog and cat food between November 8, 2006 and March 6, 2007 and sold throughout the United States, including the State of Hawaii.  Complaint ¶¶ 1, 4, 6, 8, 12-16.  Plaintiffs allege that Menu Foods voluntarily recalled its pet food that may have been contaminated beginning on March 16, 2007, and that the total recall ultimately included 220 different products, including products purchased by plaintiff Ortiz.  See Complaint ¶¶ 13-16, 32.

## III.    ARGUMENT

### A.    The Amount-in-Controversy Exceeds $5 Million.

The sole issue in dispute for purposes of Plaintiffs' motion to remand is whether the amount-in-controversy in this action exceeds $5 million.[5] Notwithstanding Plaintiff's admitted attempt to craft a complaint so as to prevent the transfer of this action to the MDL "for the just and efficient conduct of [this] action," 28 U.S.C. § 1407(a), this court has jurisdiction because the damages claimed by Plaintiffs exceed $5 million.

---

[5]    Plaintiffs do not dispute that the aggregate number of class members is greater than 100 -- indeed, the Complaint states that there are "several thousand" (see Complaint ¶ 46) -- or that there is diversity of citizenship.  Pl. Mem. at 8.

**1. The Standard for Determining the Amount-in-Controversy is to Assess the Total Sum and Value of What Plaintiffs Are Claiming, Not What Damages Plaintiffs Will Ultimately Recover at Trial.**

The damages sought by Plaintiffs, not the damages (if any) they ultimately will recover, determine whether their allegations satisfy the amount-in-controversy required for federal jurisdiction in this diversity action. See Lao v. Wickes Furniture Co., Inc., 455 F. Supp. 2d 1045, 1049 (C.D. Ca. 2006) ("The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties"). The amount-in-controversy requirement is met if "the complaint ... contain[s] allegations that, if established at trial, would justify a judgment exceeding the jurisdictional minimum.... The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy), not whether plaintiff is likely to win or be awarded everything he seeks." Id. The merits, or lack thereof, of Plaintiffs' claims are irrelevant to this inquiry. See id. ("That the plaintiff may fail in its proof, and the judgment be less than the threshold (indeed, a good chance that the plaintiff will fail and the judgment will be zero) does not prevent removal"). The amount-in-controversy requirement for this action is $5 million. 28 U.S.C. § 1332(d).

**2. The Total Sum and Value of the Damages Sought by Plaintiffs in this Case Exceeds $5 Million, as Demonstrated to a Legal Certainty by Objective Data.[6]**

As noted, Plaintiff Ortiz filed this class action on behalf of all Hawaii consumers who claim to have purchased pet food manufactured by Menu Foods over an approximate four-month long period between November 8, 2006 and March 6, 2007. Plaintiffs' damages claims include the cost of recalled pet food purchased from November 8, 2006 through March 6, 2007 by Hawaii consumers; the cost of out of pocket and future veterinary examinations to monitor for potential injury caused by consuming the allegedly contaminated pet food; statutory treble damages for unfair trade practices; statutory damages pursuant to HRS Chapter 480 of $5,000 per elder plaintiff; punitive damages; attorneys fees statutorily available under HRS Chapter 480; and the injunctive relief requested by Plaintiffs. A tabulation of just some elements of Plaintiffs' claims -- statutory damages, veterinary screening, and attorneys fees -- demonstrates that the amount-in-controversy exceeds $5 million.

---

[6]   It is routine for district courts to consider statistical and objective evidence of the nature presented by Menu Foods in calculating the amount-in-controversy. See Espinosa v. Philip Morris USA, Inc., No. 07 C 231, 2007 WL 917383 (D. Ill. March 25, 2007); Manguno v. Prudential Prop. and Cas. Ins. Co., 276 F.3d 720 (5th Cir. 2002); Massachusetts Cas. Ins. Co. v. Renstrom, 831 F. Supp. 1088 (S.D.N.Y. 1993).

- ***Number of Pets Potentially Affected***

In 2006, 39% of U.S. households owned at least one dog and 34% of U.S. households owned at least one cat, according to the Humane Society of the United States (the "HSUS"). (http://www.hsus.org/pets/issues_affecting_our_pets/ pet_overpopulation_and_ownership_statistics/us_pet_ownership_statistics.html) The United States Census Bureau reports that there were 491,071 households in Hawaii in 2006. (http://www.census.gov/popest/estimates.php)  Applying the percentage of U.S. households owning a dog or a cat to the census information regarding the number of households in Hawaii, the number of households in Hawaii owning at least one dog (.39 x 491,071) in 2006 was 191,517, and the number owning at least one cat (.34 x 491,071) was 166,964.

In addition, according to the HSUS, the average number of dogs owned per household was 1.7, and the average number of cats owned by household was 2.4. (http://www.hsus.org/pets/issues_affecting_our_pets/pet_overpopulation_and_own ership_statistics/us_pet_ownership_statistics.html)  Applying this information to the number of households owning dogs and cats, the number of dogs in Hawaii in 2006 (191,517 x 1.7) was 325,580, the number of cats (166,964 x 2.4) was 400,714, and therefore, the total number of cats and dogs in Hawaii in 2006 was 726,694.

NEWY1\8128746.1
365652-1

The recalled pet food represented 1% in the total pet food sold in the United States.  (American Veterinary Medical Association ("AVMA") website (http://www.avma.org/press/releases/070324_clarified_recall.asp)  Using the U.S. Census Bureau, HSUS and AVMA data above, approximately 3,255 dogs (.01 x 325,580) and 4,007 cats (.01 x 400,714), or a total of  7,262 dogs and cats, were potentially affected by the pet food recall.

- ***The Sum and Value of the Categories of Damages for Potentially Affected Pets.***

    a)    <u>Compensatory and Consequential Damages</u>.

Plaintiffs seek the cost of veterinary screening examinations (either out of pocket or in the future) for all affected pets.  Specifically, Plaintiffs seek the cost of blood and urine tests for renal failure.  <u>See</u> Pl. Mem. at 9.  Based on a survey of several veterinarians, animal hospitals and animal clinics in Hawaii, including Honolulu, Pearl City, Waipahu, Aiea, Kahului, and Lahaina, the average cost of one veterinary screening for renal failure for a dog or cat, including blood and urine test, office visit and OSHA clean-up cost (if any) is $217.  Declaration of Erin Owens, dated July 27, 2007, ¶¶ 2, 3.  Conservatively estimating that Plaintiffs only seek one screening per animal, **the cost of veterinary screening for renal**

-10-

**failure for 7,262 dogs and cats at an average cost of $217 per screening is $1,575,854.**[7]

    b)    <u>Statutory Damages under HRS Chapter 480.</u>

Plaintiffs acknowledge that they drafted the Complaint "to ensure that Hawaii consumers' claims are governed by HRS Chapter 480, which imposes mandatory treble damages for unfair trade practices, such as the sale of tainted food." Pl. Mem. at 3. **Applying treble damages to the total compensatory and consequential damages** (3 x 1,575,854) **brings total damages to $4,727,562.**

    c)    <u>Damages Available to Elders under HRS Chapter 480.</u>

In paragraph G of their prayer for relief, Plaintiff asks for a minimum of $5,000 for each class member who is an "elder" (age 62 or over per HRS § 480-13.5). As made clear by the standard for determining the amount-in-controversy articulated in <u>Lao</u>, 455 F. Supp. 2d at 1049, it makes no difference, as Plaintiffs attempt to argue, that they may not ultimately be awarded the $5,000

---

[7]    In addition, Plaintiffs' claim for compensatory damages includes the cost of the contaminated pet food they claim to have purchased over an alleged four month period. Although Menu Foods submits that Plaintiffs are not entitled to such damages, they are sought by Plaintiffs, and when added to the total amount of damages Plaintiffs seek, they further increase the amount-in-controversy.

NEWY1\8128746.1
365652-1

damages per elder at trial – this is a category of damages sought by Plaintiffs and therefore must be included in tabulating the amount-in-controversy.[8]

The population of Hawaii in 2006 was 1,285,498. (http://www.census.gov/ popest/states/asrh/SC-EST2006-02.html.) In addition, according to the U.S. Census Bureau, the population of Hawaii over age of 65 in 2006 was 179,370. Id. Therefore, the percentage of the population of Hawaii over age 65 in 2006 was 13.95% (and conversely, the percentage of the population under 65 was 86.05%). In their Complaint, Plaintiffs admit that there are "several thousand" members of their putative class. See Complaint ¶ 46. As noted in Menu Foods' removal petition, "several" is defined as "more than two," and therefore based on the

---

[8]    In addition, this case is unlike the case in Lowdermilk, where the Court rejected the contention that all class members would be entitled to maximum damages. In Lowdermilk, the Court based its determination that the defendants provided no support for why each of the plaintiffs would be entitled to the maximum (30 days) penalty wage damages permitted under Oregon law on the fact that the plaintiff only alleged that she was owed "up to 30 days' of penalty wages and defendants provided no support for the number of days of penalty wages the members of the putative class would be entitled. 479 F.3d at 1001. Here, the only objective variable in assessing the amount of elder damages that Plaintiffs are seeking under HRS Chapter 480 is the number of elders in the putative class. Menu Foods has provided concrete evidence based on data from US Census Bureau to establish the number of elders in the putative class. In addition, unlike the plaintiff in Lowdermilk, where the damages per plaintiff is not specifically alleged, here the exact amount per elder sought ($5,000) is alleged in the Complaint and is specified in HRS Section 480-13 (b) (1) ("where the plaintiff is an elder, the plaintiff, in the alternative, may be awarded a sum not less than $5,000 or threefold any damages sustained by the plaintiff, whichever sum is the greater…").

-12-

Complaint, the class is at least 3,000.[9] Assuming that 13.95% of the class members are over 65 (a conservative figure considering that age 65 is three years older than required to be defined as an "elder" pursuant to HRS Chapter 480), then 418 of the class members are elders (.1395 x 3,000). **Therefore, the damages sought by Plaintiffs for the elders in the putative class** (418 x $5,000) **totals $2,090,000**.

If the Court awards the 418 elders each $5,000 in alternative damages, they would not be entitled to their share of the compensatory and consequential damages calculated above. The percentage of the population who are not "elders" (86.05%) would be entitled to the compensatory and consequential damages calculated above and the elders would be entitled only to the total alternative damages of $2,090,000. Accordingly, the compensatory and consequential damages Plaintiffs seek on behalf of non-elders is $4,068,067 (.8605 x

---

[9]  See Espinosa v. Philip Morris USA, Inc., No. 07 C 231, 2007 WL 917383 at *2 (N.D. Ill. March 26, 2007) (concluding that where class representative states in the complaint that "the proposed class members 'number in the hundreds of thousands,' " the class contains at least 200,000 members, "by [class representative]'s own estimation"). Plaintiffs attempt to deny that the definition of "several" is not more than two, but they do not recant their allegation of "several thousand" made in the Complaint nor do they provide any alternative definition of "several thousand." See Pl. Mem. at 10.

NEWY1\8128746.1
365652-1

$4,727,562); and **total damages sought by Plaintiffs for both elders and non-elders** ($2,090,000 + $4,068,067) **amounts to $6,158,067.**[10]

    d)    <u>Attorneys' Fees</u>.

HRS Chapter 480 also provides for the recovery of attorneys' fees. As held in <u>Lowdermilk</u>, and as Plaintiffs concede (<u>see</u> Pl. Mem. at 6-7), "where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." 479 F.3d at 1000 (quoting <u>Calt F/S v. JSS Scandinavia</u>, 142 F.3d 1150, 1155-56 (9th Cir. 1998)).

One method used to calculate "reasonable" attorneys' fees is the "lodestar" method. <u>See</u>, <u>e.g.</u>, <u>DFS Group LP v. Paiea Properties</u>, 110 Haw. 217, 131 P.3d 500 (S. Ct. 2006); <u>Parr v. TLLC, LLC</u>, Civil No. 06-00500 DAE-LEK, 2007 WL 1223447 (D.Haw. April 23, 2007). Under the lodestar method, the Court calculates "reasonable" attorneys' fees by multiplying the number of hours reasonably expended by a reasonable hourly rate.

Plaintiffs have two attorneys. The lead attorney is Thomas Grande, who was licensed in Hawaii in 1985 and has 22 years of experience. Declaration of Chad Love, dated July 27, 2007 (the "Love Decl."), ¶3, Ex. A. The other is Emily

---

[10]    As noted above, if trebled damages for the damages the non-elder Plaintiffs seek for cost of pet food during the alleged four month period were added, the amount-in-controversy would be even greater.

-14-

Gardner, Esq., who was admitted to the Hawaii bar in 1997, but started her practice in 1999 and has eight years of trial litigation experience.  Id. at ¶3, Ex. B.

Five recent decisions in the District of Hawaii calculating attorneys' fees indicate that $268[11] is a reasonable average hourly rate for an attorney with over 20 years of experience and $135[12] is a reasonable average hourly rate for an attorney with 8 years of experience.  See Parr, 2007 WL 1223447 (Judge Kobayashi ruled that $275 an hour was a reasonable rate for an attorney with 20 years experience); Synagro Technologies, Inc. v. GMP Hawaii, Inc., Civ. No. 04-00509 SPK/LEK, 2007 WL 851271 (D. Haw. March 15, 2007) (Judge Kobayashi ruled that for lawyers with 4 and 7 years experience, $125 and $135 were reasonable hourly rates, respectively); Alicia F. v. Department of Education, Civil No. 06-00268 HG-BMK, 2007 WL 593633 (D. Haw. Feb. 21, 2007) (in a case involving an attorney with 34 years of experience, who was partner of Thomas Grande (Plaintiffs' attorney in this case), the Court ruled that $285 an hour was reasonable); Berry v. Hawaiian Express Service, Inc., Civil No. 03-00385 SOM-LEK, 2006 WL 4102120 (D. Haw. Oct. 25, 2006) (Judge Kobayashi ruled that for a lawyer with 8 years experience, $150 was a reasonable hourly rate); Paramount Pictures Corporation v. Carroll, No. CV 05-00260 ACK-LEK, 2006 WL 1990815 (D. Haw.

---

[11]     ($275 + $285 + $245) ÷ 3 = $268

[12]     ($125 +$130 + $135 + $150) ÷ 4 = $135

NEWY1\8128746.1
365652-1

July 13, 2006) (Judge Kobayashi ruled that for lawyers with 3 and 20 years experience, $130 and $245 were reasonable hourly rates, respectively).

This action, if it were to go to trial, should require between 1000 to 2000 hours of attorney time. <u>See</u> Love Decl., ¶¶ 4, 5. **Conservatively assuming 1000 hours and that the work would be divided equally between Mr. Grande and Ms. Gardner, it is reasonable to calculate that the attorneys' fees sought by Plaintiffs is at least $201,500.**[13]

e)    <u>Summary of the Calculation of Veterinary Screening, Statutory Damages and Attorneys Fees.</u>

In sum, Plaintiffs' claims for damages include the following:

| Damage Category | Computation | Amount of Damages Sought |
|---|---|---|
| Trebled Compensatory and Consequential Damages, Minus Elders' Damages | Veterinary screening: $1,575,854 Trebled Amount: $4,727,562 Amount related to non-elders; 86.05% of $4,727,562 = $4,068,067 | $4,068,067 |
| Elders' Damages | 418 elders x $5,000 | $2,090,000 |
| Attorneys' Fees | 500 hrs x $268 + 500 hrs x $135 | $201,500 |
| | | |
| **SUB-TOTAL** | | **$6,359,567** |

---

[13]    **(500 x $268) + (500 x $135) = $201,500**

As noted, the foregoing excludes Plaintiffs' claims for the cost of pet food allegedly purchased over a four-month period, which would increase the amount-in-controversy.  In addition, this calculation excludes Plaintiffs' claim for punitive damages, which appropriately may be assessed for purposes of determining whether their claim reaches $5 million.[14]  This calculation further does not include the costs that would be associated with Plaintiffs' request for injunctive relief, which also may be calculated for purposes of satisfying the $5 million amount-in-controversy.  See International Padi, Inc. v. Diverlink, No. 03-56478, 03-56788, D.C. No. CV-02-00289-GLT, 2005 WL 1635347 at *1 (9th Cir. July 13, 2005) (citing Cohn v. Petsmart, Inc., 281 F.3d 837 (9th Cir. 2002); Ridder Bros., Inc. v. Blethen, 142 F.2d 395, 399 (9th Cir.1944)).  It is, therefore, a legal certainty that the amount-in-controversy in this action satisfies the federal jurisdictional amount.

**B.    Plaintiffs Should Not Be Awarded Fees and Costs.**

Plaintiffs are not entitled to fees and costs as removal of this action to federal court was made in good faith, and as established above, this action should remain in federal court.

---

[14]    While a claim for punitive damages is appropriate for calculating the amount-in-controversy, Menu Foods submits that Plaintiffs are not entitled to such an award.

## IV.    CONCLUSION

This action was properly removed to the United States District Court for the District of Hawaii pursuant to 28 U.S.C. §§ 1332 and 1441 and should not be remanded to state court.

DATED:  Honolulu, Hawaii, July 27, 2007.

_____
CHAD P. LOVE
BARBARA J. KIRSCHENBAUM

Attorneys for Menu Foods Inc., Menu Foods Holdings, Inc., and Menu Foods Income Fund

-18-