DAVIS LEVIN LIVINGSTON GRANDE

THOMAS R. GRANDE  3954
851 Fort Street, Suite 400
Honolulu, Hawai'i 96813
Telephone: (808) 524-7500
Facsimile: (808) 356-0418
Email: tgrande@davislevin.com

EMILY A. GARDNER   6891
Attorney at Law
Dillingham Transportation Building
735 Bishop Street, Suite 402
Honolulu, Hawai'i  96813
Telephone: (808)-540-0200
Facsimile: (808)-540-0201
Email: eagardner@hawaii.rr.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| YVONNE ORTIZ, individually and on behalf of all other similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>MENU FOODS, INC., a New Jersey Corporation; MENU FOODS HOLDINGS, INC., a Delaware Corporation, MENU FOODS INCOME FUND, an unincorporated Canadian business; DOE ENTITIES and INDIVIDUALS 1- 100,<br><br>Defendants. | Civil No.  CV07-00323 DAE LEK<br>(Class Action)<br><br>REPLY MEMORANDUM IN SUPPORT OF MOTION FOR REMAND; DECLARATION OF THOMAS R. GRANDE; EXHIBITS 1 and 2; CERTIFICATE OF SERVICE<br><br>[Non-Hearing Motion] |

Dockets.Justia.com

# REPLY MEMORANDUM
# IN SUPPORT OF MOTION FOR REMAND

Defendants (collectively "Menu") have failed to carry their burden to prove to a "legal certainty" that the jurisdictional amount of $5 million is exceeded in this case because:

1)   Menu has not relied upon its own sales data, which establishes that the jurisdictional limit of $5 million is not met[1]; and

2)   Assessment of each element of damages – treble damages for recalled pet food and for veterinary screenings, punitive damages, alternative senior damages, injunctive relief, and attorneys fees – result in a potential recovery well below the jurisdictional threshold.[2]

---

1 Menu calculates the jurisdictional amount based on a quote in a press release put out by the American Veterinary Medical Association ("AVMA") on March 24, 2007, and even this figure was distorted to suit their needs.

The AVMA press release states "While this recall includes 90 brands across the entire manufacturing spectrum, it represents only 1 per cent of available pet food products." The amount of "available pet food products" across the entire manufacturing spectrum is completely different than the amount of pet food products that were actually sold during the recall period, which should be the basis for any jurisdictional calculation.

[2] Although Menu persists in misrepresenting the Complaint to "include claims by pet owners whose pets allegedly were injured by the recalled pet food," Menu Memorandum at 2, Plaintiff's class definition specifically excludes "any claim for personal injury for any pet." Complaint, paragraph 45.

**I.   THE LEGAL CERTAINTY STANDARD**

    **A.   Removal Statutes Must Be Strictly Construed**

The rule of construing removal statutes strictly and resolving doubts in favor of remand is well-established.  See, e.g., Syngenta Crop. Prot., Inc. v. Henson, 537 U.S. 28, 32, 123 S. Ct. 366, 369, 154 L.Ed.2d 368 (2002) ("[S]tatutory procedures for removal are to be strictly construed."); Gould v. Mutual Life Ins. Co. of N.Y., 790 F.2d 769, 773 (9th Cir.1986) ("Removal jurisdiction is statutory and strictly construed.").

In the context of this strict construction and Plaintiff's right to choose her own forum, it is clear that Menu has failed to carry its burden of legal certainty that the $5 million jurisdictional amount is exceeded.

    **B. Plaintiff May Choose Her Forum**

The Supreme Court has long held that plaintiffs may limit their jurisdictional claims to avoid federal subject matter jurisdiction.  See, e.g., St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 294, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ("If [the plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.").

The Class Action Fairness Act ("CAFA") does not change the long-standing rule that the plaintiff is the master of her own claim;  Lowdermilk v. United States

Bank Association, 479 F.3d 994, 999, 1003 (9th Circ. 2007), ("By adopting 'legal certainty' as the standard of proof, we guard the presumption against federal jurisdiction and preserve the plaintiff's prerogative, subject to the good faith requirement, to forgo a potentially larger recovery to remain in state court."; ["Plaintiffs] are not obligated to overstate their damages to satisfy the defendant's interest in a federal forum, but may plead conservatively to secure a state forum.");

Because Plaintiff has chosen the state forum to ensure the application of Hawaii legal safeguards, Defendants are required to come forward with admissible concrete evidence. As shown below, virtually every court that has examined a remand request under CAFA has looked at information in the possession of Defendant, i.e. the Defendant's own files, records, statistical evidence, declarations, etc.

### C. Legal Certainty Requires Proof From Defendants Own Files

In every case reviewed by Plaintiffs placing the burden on Defendants to prove jurisdiction to legal certainty under CAFA, courts have looked to defendant's own company statistical data and/or declarations of company officials. In its opposition, company data from Menu is conspicuously absent.

Federal courts have recognized that it is the removing party who has all the necessary information to demonstrate the amount in controversy. "When the defendant has vital knowledge that the plaintiff may lack, a burden that induces the

removing party to come forward with the information—so that the choice between state and federal court may be made accurately is much to be desired." Brill v. Countrywide Home Loans, Inc. 427 F. 3d 446, 447-48 (7th Cir. 2005).

Instead of offering "competent proof to establish" that the statutory threshold has been exceeded, Id. at 448., Menu instead offers speculative third-party information.

Menu concedes that it must come forward with "'summary judgment-type evidence relevant to the amount in controversy,' such as affidavits or declarations." Menu Memorandum at 2, n. 1 internal quotations from Valdez v. Allstate Insurance Company, 372 F.3d 1115, 1117 (9th Cir. 2004). Lowdermilk v. United States Bank Association, 479 F.3d 994 (9th Circ. 2007)( "To make this determination, the court should consider, in addition to the complaint itself, "facts in the removal petition and ... summary judgment-type evidence relevant to the amount in controversy at the time of removal."). However, Menu has failed to comply with this standard.

Most courts that have applied the "legal certainty" standard have evaluated company data, even while ruling in favor of remand. E.g., Lowdermilk at 479, (Remand granted under CAFA based on defendant's employment records); Morgan v. Gay, 471 F.3d 469 (3rd Cir. 2006)(Remand granted under CAFA based on profit statement from defendant's chief financial officer).

While Menu is correct that courts have considered "statistical and objective evidence", Menu Memorandum at 8, n 6, even the decisions cited by Menu have all relied upon <u>data from Defendants' own records</u> to make their removal decision. <u>Espinosa v. Phillip Morris USA, Inc.</u> 2007 WL 917383, *2 (D. Ill. March 25, 2007)(adopting "Defendants' position concerning the price of a pack of cigarettes"); <u>Manguno v. Prudential Property and Casualty Insurance Company</u>, 276 F.3d 720, 724 (5th Cir. 2002)( Defendant "prov[ed] the jurisdictional amount by submitting an undisputed affidavit stating (based on the number and value of claims submitted to Prudential during the relevant period)."); <u>Massachusetts Casualty Insurance Company v. Renstrom</u>, 831 F.Supp. 1088, 1090 (S.D.N.Y 1993)(decision based on insurer obligation to make $500 month payments).

Menu's failure to produce its own company data is significant. The basis for requiring a defendant to prove to a "legal certainty" that the jurisdictional amount is met is because it is the defendant – and not the plaintiff – who has access to information "from its own files", <u>Lowdermilk</u> at 1000, to meet the "legal certainty" standard. As the Court in <u>Lowdermilk</u> noted,

> If Defendant, who is the only party with access to its …
> records cannot more accurately approximate the class
> size, Plaintiff cannot be expected to plead her case with
> any more specificity than she did.

Id. at 1002.

Despite Menu's failure to produce its own records, Plaintiffs have obtained Menu's financial statements that establish that the jurisdictional limit is not met.

## II. MENU DID NOT DISCLOSE ITS OWN SALES DATA THAT ESTABLISHES THAT THE JURISDICTIONAL LIMIT IS NOT MET

### A. Menu Has Offered No Evidence of Class Size

At the outset, Menu Foods should have knowledge of the amount of sales that it generated in Hawaii and some estimate of the class size. However, Menu's only basis for class size is an assumption based on Plaintiff's estimate. See Menu Memorandum at 12-13 ("As noted in Menu Foods' removal petition, "several" is defined as "more than two", and therefore based on the Complaint, the class is at least 3,000."). Simply stated, an international manufacturer and distributor of products should have data that would establish the amount of its sales, including sales to a specific state, such as Hawaii. Menu should have submitted admissible evidence from its files on the amount of sales in Hawaii to accurately estimate class size.

### B. Damages for Recalled Pet Food

In order to assess potential damages, Plaintiff looked at the Menu Foods Income Fund website to obtain the March 2007 "Menu Foods Income Fund Consolidated Balance Sheets *(All figures expressed in thousands of Canadian dollars, unaudited)*" Exhibit 1 at 1 (bold and italics in original).

7

Under the Notes to Consolidated Financial Statements, Menu Foods Income Fund reported that

> The Fund's operations fall into one reportable business segment. The Fund is principally engaged in the manufacture of wet [pet food] products, where it serves major customers on a North American basis. Geographic segment information is presented below.

Exhibit 1 at 21.

Menu's quarterly sales for the last quarter of 2006[3] for "United States Domestic" was $56,907,000 Canadian, or a total of $227,628,000 Canadian for calendar year 2006. Daily sales in the United States would be approximately $623,638 Canadian ($227,628,000 divided by 365). Converting this amount to United States dollars[4] result in approximately $591,438 United States sales of wet pet food products in the United States each day.

The Menu Foods recall period was from November 8, 2006 through March 16, 2007, or 119 days. Therefore, based on the amount of sales per day in the U.S. for 2006, there were $70,381,122 ($591,438 X 119) total sales in the U.S. during the 119 day recall period.

---

[3] Quarterly sales for the quarter ending March 2007 dropped dramatically to $37,656,000 Canadian. Plaintiff will use the much larger 2006 last quarter to illustrate that the jurisdictional amount is well below $5 million.

As of 2006, the U.S. Census Bureau reports that the population of Hawaii is 1,285,498.  The U.S. Census Bureau also reports that the population of the United States in 2006 was 299,398,484.  Thus, Hawaii's population equals 0.0042 of the U.S. population.  Declaration of Thomas R. Grande.

Based upon the foregoing, a reasonable estimate of the amount of Menu Foods products sold in Hawaii during the recall period would be approximately $295,601 ($70,381,122 x 0.0042).  If this amount is trebled, there is $886,803 in potential treble damages for the class period for recalled pet food.

### C. Damages for Veterinary Screenings

In order to assess potential number of pets affected in Hawai'i, Plaintiffs used Menu's statement that 60 million cans and pouches of pet food were recalled in the United States for the 3 month period from December 3, 2006 to March 6, 2007.  Exhibit 2:  Transcript of FDA Press Conference on the Pet Food Recall (April 19, 2007).   This means that approximately 20 million cans and pouches of pet food was recalled in the U.S. each month.  The recall period was later expanded to include an additional month (from November 8, 2006 to March 6, 2007).  Thus, a reasonable estimate is that 80 million cans and pouches of Defendants' pet food products were recalled in the United States during the entire recall period.

---

[4] The conversion rate on August 7, 2007 was 0.948367 one US dollar for one

9

The number of pet food containers recalled in Hawaii during the recall period would be approximately 336,000 (80 million X 0.0042). The number of pet food containers recalled in Hawaii per day during the 4 month recall period would be approximately 2,824 containers (336,000/119 days). If each pet consumes 2 containers per day (1 container per meal, and 2 meals per day), the number of pets in Hawaii potentially affected by the recall is 1,411 pets.

Accepting Defendants' figure of $217.00 as the mean cost of a blood and urine analysis for a pet in Hawaii, the estimated cost of veterinary screenings for pets affected by the recall would be $306,187 (1,411 X $217.00). This amount trebled is $918,561.

### D.     Punitive Damages Are Not Awardable with Treble Damages

Under Hawaii law, where treble damages are awarded, the plaintiff may not also recover punitive damages. <u>Eastern Star, Inc. v. Union Building Materials Corp.</u>, 6 Haw. App. 125, 141, 712 P.2d at 1148, 1160 (1985). Thus, there is no basis to include in any punitive damages in the total damages calculation.

### E.     There is No Evidence That Elder Damages Will Be Awarded

There is no allegation in the complaint that Menu targeted elders in the marketing and sale of their tainted pet food products. Under HRS Chapter 480, a senior may be awarded alternative damages to treble damages if the victim of

---

Canadian dollar. Declaration of Thomas R. Grande.

deception is a senior. HRS §480-13(b)(1)("where the plaintiff is an elder, the plaintiff, in the alternative, may be awarded a sum not less than $5,000 or threefold any damages sustained by the plaintiff, whichever sum is the greater").

In determining whether to award elder damages, the court considers the following factors:

> (1) Whether the person's conduct was in willful disregard of the rights of the elder;
> (2) Whether the person knew or should have known that the person's conduct was directed toward or targeted an elder;
> (3) Whether the elder was more vulnerable to the person's conduct than other consumers because of age, poor health, infirmity, impaired understanding, restricted mobility, or disability;
> (4) The extent of injury, loss, or damages suffered by the elder; and
> (5) Any other factors the court deems appropriate.

HRS §480-13.5(b),

At this stage in the litigation, Menu has not offered any evidence that it targeted seniors in the sale of its poisoned pet food. As noted in Lowdermilk, it is not appropriate to calculate a jurisdictional amount where "Defendant assumes that all class members would be entitled to the maximum damages… but provides no evidence to support this assertion". 479 F.3d at 1001. Thus, there is no basis to include alternative senior damages in the jurisdictional calculation.

### F. Attorneys Fees

Solely for the purpose of this motion, Plaintiffs accept Defendants' estimate of $201,500 for attorneys fees.

G.  **Requested Injunctive Relief**

Without offering any admissible evidence, Menu claims that injunctive relief should be included to exceed the $5 million jurisdictional threshold.  Menu Memorandum at 17.  For this reason alone, injunctive relief should not be included in the calculation.

However, even if the Court were to consider the claimed injunctive relief, it does not increase the jurisdictional amount.  The injunctive relief claimed by plaintiff is to "(1) preclude Menu Foods for [sic] selling adulterated pet food in the State of Hawai'i, (2) ensure that no adulterated pet food is being sold in the State of Hawaii and/or (3) to pay for the cost of any veterinary screening examinations for any pet that consumed the contaminated food."  Complaint, paragraph 53.

Menu has publicly represented that it has already complied with both items (1) and (2), so presumably there would be no cost of compliance for these items.  Complaint, Exhibits 1 and 2.  Item (3) – veterinary screenings -- is already computed as an element of damage.  Thus, there is no basis to include any additional amount for injunctive relief in the jurisdictional calculation

H.  **Summary of Accurate Estimation of Pet Food Damages, Veterinary Screening, and Attorneys Fees**

Based on the foregoing, an accurate estimation of the jurisdictional amount is as follows:

| Damage Category | Amount |
|---|---|
| Pet Food Damages x 3 | $886,803 |
| Vet Screenings x 3 | $918,561 |
| Attorneys Fees | $201,500 |
| | |
| **TOTAL** | **$2,006,864** |

### III.  THE COURT SHOULD ERR ON THE SIDE OF REMAND

Under CAFA, removal may be made at any time.  CAFA affords a removing defendant additional protections by eliminating the usual one-year removal limitation. *See* 28 U.S.C. § 1453(b) (stating that the one year time limit for removal set forth in § 1446(b) does not apply).

Given the strict standards (that Menu clearly has not met), Menu is still protected because after remand if evidence is developed from Menu's own files that the jurisdictional limit is exceeded, Menu retains the right to remove the action to federal court.  Lowdermilk, 479 F.3d at 1002 (CAFA-qualified case may be removed at a later date).

Although Menu argues that the case should be removed in order to ensure coordination of discovery in the MDL, consolidated federal cases in MDL proceedings and related state cases routinely have discovery orders that allow for state/federal discovery coordination.  See generally Federal Judicial Center, Manual for Complex Litigation (4th), section 20.31 at 203 (West 2007).

In addition, while Menu argues that the case may be remanded from the MDL to Hawai'i District Court after pretrial proceedings, all of the federal court class actions in the MDL are national class cases that if certified on a national level may preclude the assertion of Hawaii's mandatory treble damages and the protections of the Hawaii food and drug act.

Based on the above and consistent with the strict construction of removal statutes and the legal certainty standard, the Court should err on the side of remand.

### IV.   PLAINTIFF SHOULD BE AWARDED FEES AND COSTS

By failing to provide any admissible evidence and no statistical evidence from its own files, Menu has wasted the Court and counsel's time in filing its frivolous removal petition. If Menu had competent evidence, it should have provided it either: (1) in the removal petition itself or (2) in its opposing memorandum. Plaintiff should not have been the party to bring to the Court's attention Menu's own statistical evidence. Menu was in possession of the sales data, but purposefully withheld it from the Court.

Moreover, Menu was put on notice of its obligation to to comply with the explicit Ninth Circuit standards adopted in Lowdermilk that the jurisdictional amount was met. See Complaint, paragraphs 42-43.

14

Based upon the foregoing, Plaintiff should be awarded fees and costs for having to fight this removal petition by filing this motion to remand.

## V. CONCLUSION

In <u>Lowdermilk</u>, the Ninth Circuit rejected Defendants' attempt to remove because it offered "thin support" for its proposition that the jurisdictional threshold was exceeded. 479 F.3d at 1001. In this case, Menu has offered no support for its position. For the above stated reasons, Plaintiff respectfully submits that this case should be remanded to Hawaii circuit court.

DATED: Honolulu, Hawaii, August 9, 2007.

          /s/ Thomas R. Grande
THOMAS R. GRANDE
EMILY A. GARDNER

Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.5(e), I certify that the foregoing REPLY MEMORANDUM IN SUPPORT OF MOTION FOR REMAND is proportionately spaced, has a typeface of 14 points or more, and does not exceed 15 pages.

Dated: Honolulu, Hawaii, August 9, 2007.

          /s/ Thomas R. Grande
THOMAS R. GRANDE
EMILY A. GARDNER

Attorneys for Plaintiff