LOVE & KIRSCHENBAUM
A LIMITED LIABILITY LAW COMPANY

**ORIGINAL**

CHAD P. LOVE  1617-0
BARBARA J. KIRSCHENBAUM  5825-0
1164 Bishop Street, Ste. 1105
Honolulu, Hawaii  96813
Tel. No. (808) 546-7575
email:  clove@lkhawaii.com

Attorneys for Menu Foods, Inc.,
Menu Foods Holdings, Inc., and
Menu Foods Income Fund

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 04 2007

at ___ o'clock and ___ min. ___ M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT CIRCUIT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| YVONNE ORTIZ, Individually and on behalf of all other similarly situated persons, <br><br> Plaintiff, <br><br> vs. <br><br> MENU FOODS, INC., a New Jersey corporation; MENU FOODS HOLDINGS, INC., a Delaware corporation; MENU FOODS INCOME FUND, an unincorporated Canadian business; DOE ENTITIES and INDIVIDUALS 1-100, <br><br> Defendants. | CIVIL NO. CV07-00323 DAE LEK (Class Action) <br><br> MENU FOODS HOLDINGS, INC.'S OBJECTIONS TO THE FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR REMAND AND ORDER DENYING DEFENDANTS' MOTION TO STAY AS MOOT, FILED 8/21/07; EXHIBITS A THRU F; CERTIFICATE OF SERVICE |

Dockets.Justia.com

**MENU FOODS HOLDINGS, INC.'S OBJECTIONS TO THE FINDINGS
AND RECOMMENDATION TO GRANT IN PART AND DENY IN
PART PLAINTIFFS' MOTION FOR REMAND AND ORDER
DENYING DEFENDANTS' MOTION TO STAY AS MOOT,
FILED 8/21/07**

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................... 1

II.    QUESTIONS PRESENTED............................................................ 1

III.   STATEMENT OF THE CASE ....................................................... 2

IV.    STATEMENT OF FACTS .............................................................. 3

       A.    BACKGROUND ................................................................. 3

       B.    THE PARTIES .................................................................... 4

       C.    PLAINTIFFS' ALLEGATIONS AND RELIEF
             SOUGHT ............................................................................ 5

       D.    PROCEDURAL HISTORY ................................................ 6

V.     ARGUMENT................................................................................... 8

       A.    AFTER THE *DE NOVO REVIEW* PURSUANT TO LR
             74.2, THIS COURT SHOULD DETERMINE THAT
             THIS ACTON PROPERLY BELONGS IN FEDERAL
             COURT .............................................................................. 8

       B.    THE AMOUNT IN CONTROVERSY EXCEEDS
             $5 MILLION....................................................................... 10

             1.   The Legal Standard for Determining the Amount-
                  In-Controversy is to Calculate the Total Sum and
                  Value of Damages and Relief Plaintiffs Are
                  Claiming, Not What Plaintiffs' Recovery
                  Ultimately Might Be .................................................. 10

2. The Total Sum and Value of the Damages Sought by Plaintiffs in this Case Exceeds $5 Million, as Demonstrated to a Legal Certainty by the Best and Most Reliable Data Available ........................................................ 11

   a. Menu Foods Does Not Have Access to Market Share Information .......................................................... 12

   b. Number of Pets Potentially Affected ..................................... 16

   c. The Sum and Value of the Categories of Damages for Potentially Affected Pets ..................................... 19

      i) Compensatory and Consequential Damages ................... 19

      ii) Treble Damages Recoverable under HRS Chapter 480 ................................................................ 20

      iii) Damages Available to Elders under HRS Chapter 480 ................................................................ 20

      iv) Attorneys' Fees ............................................................... 25

      v) Other Damages and Relief Sought by Plaintiffs ............. 27

      vi) Summary of Total Value of Damages/Relief Sought by Plaintiffs ......................................... 28

C. Menu Foods' Motion for Stay of Proceedings Should be Granted ................................................................. 29

VI CONCLUSION ............................................................ 29

# **TABLE OF AUTHORITIES**

## **CASES**

*U.S. Pac. Builders v. Mitsui Trust & Banking*, 57 F. Supp.2d 1018 (D.Haw. 1999)........................................................................................................... 8

*Christian v. White*, No. CV 04-00743 DAE-LEK, 2007 WL 461303 (D.Haw. Feb. 6, 2007)..................................................................................... 8

*Conant v. McCoffey*, No. C97-0139 FMS, 1998 WL 164946 (N.D. Cal. 1998)................................................................................................................. 8

*Bednarz v. Frank*, CV No. 06-00220 DAE-LEK, 2007 WL 707541 (D.Haw. March 3, 2007) .................................................................................. 8

*McDonnell Douglas Corp. v. Commodore Bus. Machs.*, 656 F.2d 1309 (9th Cir. 1981) ........................................................................................... 8, 9, 13

*Lao v. Wickes Furniture Co., Inc.*, 455 F. Supp. 2d 1045 (C.D. Ca. 2006)........... 10, 11, 21

*Levine v. BIC USA, Inc.*, No. 07cv1096-LAB, 2007 WL 2406897 (S.D.Cal. August 20, 2007)............................................................................. 11, 21

*Lowdermilk v. United States Bank National Association*, 479 F.3d 994 (9th Cir. 2007) ..................................................................................... 14, 15, 22, ................................................................................................................ 23, 25

*Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005)................. 11, 16, 21, ................................................................................................................ 22

*Espinosa v. Philip Morris USA, Inc.*, No. 07 C 231, 2007 WL 917383 (D. Ill. March 25, 2007) ....................................................................... 14, 15, 24

*In re Intel Corp. Microprocessor Antitrust Litig.*, No. MDL 05-1717-JJF, Civ.A. 05-485-JJF, 2006 WL 1431214 (D. Del. May 22, 2006).......................... 15

*Johnson v. Transamerica Occidental Life Ins. Co.*, No. 04-applied-1205, 2005 WL 1138648 (E.D. Wis. May 13, 2005)........................................ 15

*Calt F/S v. JSS Scandinavia*, 142 F.3d 1150 (9th Cir. 1998)). ............................ 25

*DFS Group LP v. Paiea Properties*, 110 Haw. 217, 131 P.3d 500 (S. Ct. 2006).................................................................................................................. 25

*Parr v. TLLC, LLC*, Civil No. 06-00500 DAE-LEK, 2007 WL 1223447 (D.Haw. April 23, 2007) ...................................................................................... 25, 26

*Synagro Technologies, Inc. v. GMP Hawaii, Inc.*, Civ. No. 04-00509 SPK/LEK, 2007 WL 851271 (D. Haw. March 15, 2007) ...................................... 26

*Alicia F. v. Department of Education*, Civil No. 06-00268 HG-BMK, 2007 WL 593633 (D. Haw. Feb. 21, 2007) ...................................................................... 26

*Berry v. Hawaiian Express Service, Inc.*, Civil No. 03-00385 SOM-LEK, 2006 WL 4102120 (D. Haw. Oct. 25, 2006)............................................................ 26, 27

*Paramount Pictures Corporation v. Carroll*, No. CV 05-00260 ACK-LEK, 2006 WL 1990815 (D. Haw. July 13, 2006)............................................................ 27

*International Padi, Inc. v. Diverlink*, No. 03-56478, 03-56788, D.C. No. CV-02-00289-GLT, 2005 WL 1635347 at *1 (9th Cir. July 13, 2005) ................ 28

## **STATUTES**

28 U.S.C. § 1332 (2005) ...................................................................................... 29

28 U.S.C. § 1332(d) (2005)................................................................................ 1, 6, 11

28 U.S.C. § 1407(a) (1976)................................................................................ 7

28 U.S.C. § 1441 (2002) ...................................................................................... 29

Hawaii Revised Statutes Chapter 480..................................................................... 5, 12, 20,
.......................................................................................................................... 24, 25, 27

Hawaii Revised Statutes Chapter 480-13.5............................................................ 21

## **RULES**

Fed. R. Civ. P. Rule 23(b)(2) ........................................................................ 7

Rules of the United States District Courts for the State of Hawaii Rule
74.2 ................................................................................................................ 1, 8

# I. INTRODUCTION

Defendant MENU FOODS HOLDINGS, INC. ("Menu Foods") submits these objections to the Findings and Recommendation of Magistrate Judge Leslie E. Kobayashi, filed August 21, 2007 (the "Recommendation", a true and correct copy attached as Ex. A), pursuant to LR 74.2. For the reasons set forth below, Menu Foods objects to Judge Kobayashi's finding that Menu Foods failed to prove with a legal certainty that it has met the $5 million amount in controversy requirement. As such, Menu Foods also objects to Magistrate Judge Kobayashi's recommendation that this Court grant Plaintiffs' motion for remand and deny Defendants' motion to stay as moot. [1]

# II. QUESTION PRESENTED

There is one question for this Court to decide, which is:

Does the Court have diversity jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), where (A) there is diversity of citizenship; (B) the number of plaintiffs in the class number several thousand; and (C) credible and reliable statistical evidence demonstrates that the amount in controversy exceeds $5 million in sum or value?

The answer is "Yes."

---

[1] Menu Foods is not objecting to that portion of the recommendation denying Plaintiffs' request for fees and costs.

### III. STATEMENT OF THE CASE

This is a state-wide putative products liability action arising out of the nationwide recall of pet food manufactured by Menu Foods.  Plaintiffs argue that Menu Foods failed to prove that the $5 million amount in controversy was met because it did not offer evidence from its business records relating to the amount of pet food that was recalled specifically in Hawaii.  Plaintiffs suggest that only sales and market share data from Menu Foods' files are reliable enough to satisfy the legal certainty standard under CAFA.  Magistrate Judge Kobayashi incorrectly adopted Plaintiffs' view.  Menu Foods put forth methodologically sound calculations based on statistical information and state veterinary data.  Its sources were credible and available to the public, and Plaintiffs never questioned the reliability of Menu Foods' showings.  Indeed, Menu Foods demonstrated that the $5 million jurisdictional minimum required under CAFA was met with only 3 of the 7 categories of damages that Plaintiffs seek.[2]  Importantly, Menu Foods is a

---

[2]   As argued, *infra*, Menu Foods is only required to show that the damages Plaintiffs claim, not the damages Plaintiffs will recover, meet the $5 million threshold.  It is Menu Foods' position that Plaintiffs are not entitled to recover under the theories articulated in the Complaint and that Plaintiffs are not entitled to damages pled in the Complaint or discussed herein.  As a result, Menu Foods' statements in this brief regarding the size of putative class or the quantum of damages are based on Plaintiffs' alleged claims and are not admissions of the veracity of the claims or their amounts.

manufacturer and does not sell pet food directly to consumers; it, therefore, is in no better position to assess market share in individual states than Plaintiffs.

Plaintiffs misstate that the "amount-in-controversy" is equal to the amount that Plaintiffs would recover at trial – even playing on the weaknesses in their own case to minimize their potential recovery. While Menu Foods agrees that Plaintiffs will not succeed at trial, the key factor in assessing amount in controversy is the total amount sought, not likely recovered. Applying the correct test here, it is clear that Menu Foods established by a legal certainty that it met the jurisdictional amount requirement. Menu Foods thus requests that the Court vacate the Magistrate Judge's Recommendation that this case be remanded and issue an order denying Plaintiffs' motion for remand and granting Defendants' motion to stay.

## IV. STATEMENT OF FACTS

A.    BACKGROUND

This is a putative class action arising out of the nationwide recall of pet food manufactured by Menu Foods. There currently are over one hundred cases filed against Menu Foods in which thousands of plaintiffs and putative class members seek various damages related to Menu Foods' recall of over 60 million cans and pouches of pet food. The Judicial Panel on Multidistrict Litigation ("JPML") has established a Multidistrict Litigation ("MDL") in the United States District Court for the District of New Jersey for cases arising out of the recall, so that such

litigation may proceed through discovery and pre-trial proceedings in an orderly, efficient and coordinated fashion. The JPML is in the process of transferring pet food recall cases pending in federal courts across the nation to the MDL.

B.    THE PARTIES

Defendant Menu Foods, Inc., is a New Jersey corporation with its principal place of business in Pennsauken, New Jersey, and is a manufacturer of certain cat and dog food products. Defendant Menu Foods Holdings, Inc., is a Delaware corporation with its principal place of business in Pennsauken, New Jersey. Defendant Menu Foods Income Fund is an unincorporated open-ended trust with its principal place of business in Streetsville, Ontario, Canada. As will be discussed in greater detail, *infra*, none of the Menu Foods defendants sell directly to consumers, and Menu Foods, Inc., is the only Menu Foods defendant to this action that manufactures pet food. *See* Complaint ¶ 5, a true and correct copy attached as Ex. B. (For purposes of these objections, unless otherwise specifically identified, all Menu Foods defendants will be collectively referred to as "Menu Foods.")

Plaintiffs' proposed class consists of "[a]ll Hawaii consumers who purchased pet food on the Menu Foods recall list between November 8, 2006, and March 6, 2007." *See* Ex. B ¶ 44. By Plaintiffs' own admission, there are "several thousand" putative class members. Ex. B ¶ 46.

C.    PLAINTIFFS' ALLEGATIONS AND RELIEF SOUGHT

Plaintiffs allege that Menu Foods manufactured contaminated and adulterated "cuts and gravy" style dog and cat food between November 8, 2006, and March 6, 2007, and sold throughout the United States, including Hawaii. Ex. B ¶¶ 1, 4, 6, 8, 12-16. Plaintiffs allege that Menu Foods voluntarily recalled its pet food that may have been contaminated beginning on March 16, 2007, and that the total recall ultimately included 220 different products, including products purchased by Plaintiff Ortiz. *See* Ex. B ¶¶ 13-16, 32.

Plaintiffs claim seven specific categories of damages or relief, as well as a catch-all of any damages established at trial. The specific relief sought is as follows: (1) the cost of recalled pet food purchased from November 8, 2006. through March 6, 2007; (2) the cost of veterinary screening to determine whether the pets were injured by recalled pet food; (3) statutory treble damages pursuant to HRS Chapter 480 for unfair trade practices; (4) statutory damages pursuant to HRS Chapter 480 of $5,000 per elder plaintiff; (5) punitive damages (in the event that treble and elder damages pursuant to HRS Chapter 480 are not awarded); (6) attorneys' fees statutorily available under HRS Chapter 480; and (7) injunctive relief precluding Menu Foods from selling "adulterated" pet food in the State of Hawaii and ensuring that no "adulterated" pet food is still being sold in Hawaii.

D.    PROCEDURAL HISTORY

On May 11, 2007, Plaintiff Yvonne Ortiz commenced this products liability action in the Circuit Court of the First Circuit, State of Hawaii. Defendant Menu Foods Holdings, Inc., was served on or about May 23, 2007.[3] On June 12, 2007, Menu Foods Holdings, Inc., timely filed a Notice of Removal.

On July 12, 2007, Plaintiffs filed their motion for remand, arguing that the amount-in-controversy does not exceed the sum or value of $5 million required under CAFA to confer federal subject matter jurisdiction over this putative class action. 28 U.S.C. § 1332(d).[4] Plaintiffs also make this unsubstantiated allegation (that the $5 million jurisdictional minimum is not met) in their Complaint with the admitted goal of avoiding federal jurisdiction. *See* Ex. B ¶¶ 42, 43. Plaintiffs' purpose in avoiding federal jurisdiction appears to be to circumvent transfer of this case to the MDL.

Plaintiffs' position that, if this action is transferred to the MDL and if all of the federal class actions in the MDL are certified on a national level, Plaintiffs may be denied Hawaii's legal protections. In making this argument, Plaintiffs concede that the primary purpose of the MDL is to coordinate discovery and pre-trial

---

[3]    Defendant Menu Foods, Inc., was served on July 2, 2007, and Menu Foods Income Fund agreed to accept service as of July 17, 2007.

[4]    On July 27, 2007, Menu Foods filed its opposition. On August 9, 2007, Plaintiffs submitted their reply, which will be referred to herein as "Pl. Reply."

proceedings to ensure consistency in decisions and to conserve judicial and party resources (*see* 12 U.S.C. 1407(a)), that the actions may be remanded to the district courts for trial after pretrial proceedings, that class certification on a national level is far from certain (indeed, the availability of different damages among the actions is a factor that militates against class certification (*see* Fed. R. Civ. P. 23(b)(2)), and that even if certified as a class nationally, Plaintiffs would not necessarily be deprived of Hawaii's statutory remedies. *See* Pl. Reply at 14.

In any event, the JPML is the appropriate forum to decide whether transfer of this action to the MDL is proper. The JPML issued a conditional transfer order ("CTO", a true and correct copy attached as Ex. C), conditionally transferring this action to the MDL on August 1, 2007, to which Plaintiffs objected on August 15, 2007. Plaintiffs filed a motion to vacate the CTO on August 30, 2007, and Menu Foods' opposition is due on September 19, 2007.

Magistrate Judge Leslie E. Kobayashi entered her Recommendation on August 21, 2007, finding that Menu Foods had not established that the amount-in-controversy exceeds $5 million by a legal certainty and recommending that the action be remanded to state court, that Plaintiffs' request for fees and costs be denied, and that Menu Foods' motion to stay the proceedings be denied as moot.

## V. ARGUMENT

**A.    AFTER THE *DE NOVO REVIEW* PURSUANT TO LR 74.2, THIS COURT SHOULD DETERMINE THAT THIS ACTION PROPERLY BELONGS IN FEDERAL COURT**

Pursuant to LR 74.2, when a party objects to the order, findings or recommendations of a Magistrate Judge, the district court must make a *de novo* determination and "must consider the matter anew, the same as if it had not been heard before and as if no decision previously had been rendered." *U.S. Pac. Builders v. Mitsui Trust & Banking,* 57 F. Supp.2d 1018, 1024 (D.Haw. 1999) (citation omitted). Pursuant to LR 74.2, the district court "shall set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." LR 74.2. "A decision is 'contrary to law' if it applies an incorrect legal standard or fails to consider an element of the applicable standard." *Christian v. White*, No. CV 04-00743 DAE-LEK, 2007 WL 461303 at *2 (D.Haw.  Feb. 6, 2007) (quoting *Conant v. McCoffey*, No. C 97-0139 FMS, 1998 WL 164946 at *2 (N.D.Cal. 1998)).

"[T]he court is obligated to arrive at its own independent conclusion about those portions of the Magistrate Judge's findings or recommendation to which objections are made." *Bednarz v. Frank*, CV. No. 06-00220 DAE-LEK, 2007 WL 707541 at *3, (D.Haw. March 3, 2007) (citing *U.S. Pac. Builders*, 57 F. Supp.2d at 1024). In addition, "[t]he judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions." *McDonnell Douglas Corp. v.*

8

*Commodore Bus. Machs.,* 656 F.2d 1309, 1313 (9th Cir. 1981) (citation omitted);

LR 74.2.

Here, the Recommendations were "contrary to law" in two respects:

(1)    When calculating the value of damages and relief sought by Plaintiffs

to arrive at the amount-in-controversy, Magistrate Judge Kobayashi

failed to include one category of damages sought by Plaintiffs because

she improperly considered the likelihood that Plaintiffs would not

prevail in recovering those damages.

(2)    Magistrate Judge Kobayashi's finding that Menu Foods has not

established that the amount-in-controversy was at least $5 million

because its calculations were not based on company data improperly

imposed a greater burden upon Menu Foods than the "legal certainty"

standard.  Indeed, by requiring Menu Foods to provide data that it does

not and is in no position to maintain, the Magistrate Judge created a

standard that is impossible for Menu Foods to meet.

The Court must now examine *de novo* whether the total amount-in-

controversy as pleaded by Plaintiffs in the Complaint exceeds $5 million, exclusive

of interest and costs.  Based on the evidence and calculations put forth by Menu

Foods, the reliability and methodology of which has not been and cannot be

challenged by Plaintiffs, the amount-in-controversy well exceeds $5 million, the jurisdictional minimum, and this action properly belongs in federal court.

## B.    THE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION

As recognized by the Magistrate Judge, the sole issue in dispute for purposes of Plaintiffs' motion to remand is whether the amount-in-controversy in this action exceeds $5 million. Ex. A at 19. There is no dispute about diversity in citizenship. Ex. A at 18-19.

### 1.    The Legal Standard for Determining the Amount-in-Controversy is to Calculate the Total Sum and Value of Damages and Relief Plaintiffs Are Claiming, Not What Plaintiffs' Recovery Ultimately Might Be.

It is the total sum and value of the damages and relief sought by Plaintiffs, not the amount (if anything) they ultimately will recover, that determines whether their allegations satisfy the amount-in-controversy required for federal jurisdiction in this diversity action. *See Lao v. Wickes Furniture Co., Inc.*, 455 F. Supp.2d 1045, 1049 (C.D. Ca. 2006) ("The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties"). As will be discussed in greater detail *infra*, Menu Foods respectfully submits that Magistrate Judge Kobayashi made an error of law in failing to include all the categories of damages and relief claimed by Plaintiffs in the Complaint (in particular, Plaintiffs' claim for Elder damages) in determining the amount-in-controversy.

10

"[T]he inquiry in deciding removal disputes is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe a successful plaintiff.  The court does not consider the amount of damages that may ultimately be recovered.  Rather, <u>the court accepts as true plaintiff's allegations as pled in the complaint and assumes plaintiff will prove liability and recover the damages alleged</u>."  *Levine v. BIC USA, Inc.*, No. 07cv1096-LAB, 2007 WL 2406897 at *2, (S.D.Cal. August 20, 2007) (emphasis added) (internal citation omitted).  The merits, or lack thereof, of Plaintiffs' claims are irrelevant to this inquiry.  *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005) ("That the plaintiff may fail in its proof, and the judgment be less than the threshold (indeed, a good chance that the plaintiff will fail and the judgment will be zero) does not prevent removal"); *see also Lao,* 455 F. Supp.2d at 1049 (same quote).  The amount-in-controversy requirement for this action, when all the recovery Plaintiffs seek is considered, exceeds $5 million.  28 U.S.C. § 1332(d).

2.      **The Total Sum and Value of the Damages Sought by Plaintiffs in this Case Exceeds $5 Million, as Demonstrated to a Legal Certainty by the Best and Most Reliable Data Available.**

As noted, Plaintiff Ortiz filed this class action on behalf of all Hawaii consumers who claim to have purchased pet food manufactured by Menu Foods over an approximately four-month long period between November 8, 2006, and March 6, 2007.  Plaintiffs' damages claim includes the cost of recalled pet food

purchased from November 8, 2006, through March 6, 2007, by Hawaii consumers; the cost of out of pocket and future veterinary examinations to monitor for potential injury caused by consuming the allegedly contaminated pet food; statutory treble damages for unfair trade practices; statutory damages pursuant to HRS Chapter 480 of $5,000 per Elder plaintiff; punitive damages; attorneys' fees statutorily available under HRS Chapter 480; and the injunctive relief requested by Plaintiffs. [5]  A tabulation of just some elements of Plaintiffs' claims -- statutory damages, veterinary screening, and attorneys' fees -- demonstrates that the amount-in-controversy exceeds $5 million.

### a.    *Menu Foods Does Not Have Access to Market Share Information.*

Plaintiffs have made much of the fact that in demonstrating that the amount-in-controversy exceeds $5 million, Menu Foods did not provide Company data regarding pet food sales to consumers in Hawaii.  In stressing this point, Plaintiffs seek to create a false standard that defendants must use their own data to meet the legal certainty standard to prove that the jurisdictional minimum is met. Magistrate Judge Kobayashi adopted Plaintiffs' argument and found that Menu Foods should have provided specific Company data to calculate the amount-in controversy.  Ex. A at 21.  Menu Foods respectfully submits that the Magistrate

---

[5]    The punitive damages sought by Plaintiffs are not included in this list because punitive damages are only available if treble damages pursuant to HRS Chapter 480 are not awarded.

Judge made an error of law in adopting this heightened (and in this case impossible) standard.

Menu Foods does not have access to data regarding sales to consumers specific to any particular state. Henderson Decl., ¶4 (a true and correct copy attached as Ex. D).[6] Menu Foods is a manufacturer of pet food products. *See* Ex. B ¶ 5 ("Menu Foods manufactures pet food for 17 of the top 20 North American retailers and is also a contract manufacturer of branded pet food products, manufacturing for five of the top six branded companies in North America."). Menu Foods sells no animal food products directly to consumers. Ex. D ¶3. Although Menu Foods has sales data relating to gross sales to retailers and the branded companies, these figures do not reflect (a) the retail price that consumers pay, or (b) the volume of sales to consumers by state. Ex. D, ¶5. Such figures may be in the possession of the retailers and branded companies that Menu Foods sells to, but Menu Foods does not have access to such information. *Id.*

---

[6] Menu Foods submits the attached facsimile copy of the Declaration of Paul Henderson (the "Henderson Decl.", Ex. D). The original shall be filed with the Court upon receipt. LR 74.2 provides that when considering objections to a Magistrate Judge's findings or recommendations, the Court may accept additional evidence. LR 74.2; *see also McDonnell Douglas,* 656 F.2d at 1313. Here, the Henderson Declaration does **not** contain any additional evidence relating to the calculation of the amount-in-controversy. It is submitted merely to rebut Plaintiffs' incorrect assertions that Menu Foods is in possession of data and information and their implications that Menu Foods has willfully withheld such data and information from the Court.

Where a party is not in possession and has no access to specific sales or market share data to demonstrate amount-in-controversy, it must still be afforded an opportunity to meet the legal certainty standard. Adopting Plaintiffs' argument (Pl. Reply at 4) that "legal certainty requires proof from defendants' own files" turns the legal certainty standard into an impossible standard in this case and would set a bad precedent in amount in controversy determinations. It is contrary to Ninth Circuit law as well. *See, e.g., Lowdermilk v. United States Bank National Association*, 479 F.3d 994, 1000 (9th Cir. 2007) ("'legal certainty' standard sets a high bar for the party seeking removal, but it is not insurmountable").

Because Menu Foods lacks Company data, in its opposition to Plaintiffs' remand motion, and herein, Menu Foods provides unbiased publicly available statistical data from the U.S. Census Bureau, the United States Humane Society, and the American Veterinary Medical Association to calculate the amount-in-controversy. Other than baldly labeling Menu Foods' proof as "speculative third-party information," nowhere in Plaintiffs' papers do they contest the reliability of these figures or the methodology used by Menu Foods in arriving at its calculations. *See* Pl. Reply at 5 and generally.

It is routine for district courts to consider third-party statistical and objective evidence of the nature presented by Menu Foods in calculating the amount-in-controversy. *See Espinosa v. Philip Morris USA, Inc.*, No. 07 C 231, 2007 WL

917383 (D. Ill. March 25, 2007) (denying motion for remand where defendants

established that CAFA's amount-in-controversy requirement was met using data

drawn from United States government statistics, which plaintiffs failed to show were

unreliable); *In re Intel Corp. Microprocessor Antitrust Litig.*, No. MDL 05-1717-

JJF, Civ.A. 05-485-JJF, 2006 WL 1431214 (D. Del. May 22, 2006) (denying motion

for remand where defendants established that CAFA's amount-in-controversy

requirement was met based in part on U.S. Census data on population and computer

ownership and purchases, which evidence plaintiffs failed to discredit); *Johnson v.*

*Transamerica Occidental Life Ins. Co.*, No. 04-C-1205, 2005 WL 1138648 (E.D.

Wis. May 13, 2005) (denying motion for remand where defendant relied upon

national mortality statistics, population estimates based on census information, and

data from Medicare to meet the amount in controversy requirement).

 Magistrate Judge Kobayashi's (and Plaintiffs') reliance on *Lowdermilk v.*

*United States Bank National Association*, 479 F.3d 994 (9th Cir. 2007), to support

the position that only Company data is sufficient to calculate class size is

misplaced. *See* Ex. A at 21; Pl. Reply at 6. In *Lowdermilk*, the Court determined

that the defendant, an employer, had access to the records to reflect class size, *i.e.*,

employment records, and therefore were in a better position than the plaintiff to

assess class size. *Id.* at 1002. Here, Menu Foods does not have records relating to

the number of consumers by state and, therefore, is in no better position than

Plaintiffs to assess class size or the number of pets potentially affected by the recall. As recognized by Plaintiffs in their Reply, the 7th Circuit in *Brill* stated that "[w]hen the defendant has vital knowledge that the plaintiff may lack, a burden that induces the removing party to come forward with the information – so that the choice between state and federal court may be made accurately – is much to be desired." 427 F.3d at 447-48. *See* Pl. Reply at 5. Menu Foods has no "vital knowledge" that Plaintiffs lack. The data, calculations, and methodology supplied by Menu Foods are unbiased and reliable and demonstrate to a legal certainty that the amount in controversy in the action exceeds $5 million.

### b.    *Number of Pets Potentially Affected.*

In 2006, 39% of U.S. households owned at least one dog and 34% of U.S. households owned at least one cat, according to the Humane Society of the United States (the "HSUS") (http://www.hsus.org/pets/issues_affecting_our_pets/ pet_overpopulation_and_ownership_statistics/us_pet_ownership_statistics.html). The United States Census Bureau reports that there were 491,071 households in Hawaii in 2006 (http://www.census.gov/popest/estimates.php). Applying the percentage of U.S. households owning a dog or a cat to the census information regarding the number of households in Hawaii, the number of households in Hawaii owning at least one dog (.39 x 491,071) in 2006 was 191,517, and the number owning at least one cat (.34 x 491,071) was 166,964.

16

In addition, according to the HSUS, the average number of dogs owned per household was 1.7, and the average number of cats owned by household was 2.4 (http://www.hsus.org/pets/issues_affecting_our_pets/pet_overpopulation_and_own ership_statistics/us_pet_ownership_statistics.html).  Applying this information to the number of households owning dogs and cats, the number of dogs in Hawaii in 2006 (191,517x 1.7) was 325,580, the number of cats (166,964x 2.4) was 400,714, and, therefore, the total number of cats and dogs in Hawaii in 2006 was 726,694.

The recalled pet food represented 1% in the total pet food sold in the United States (American Veterinary Medical Association ("AVMA") website (http://www.avma.org/press/releases/070324_clarified_recall.asp)).  Using the U.S. Census Bureau, HSUS, and AVMA data above, approximately 3,255 dogs (.01 x 325,580) and 4,007 cats (.01 x 400,714), or **a total of 7,262 dogs and cats, were potentially affected by the pet food recall**.

Other than stating that the data supplied by Menu Foods is "speculative," Plaintiffs do not explain how the U.S. Census population data for Hawaii, the percentages supplied by the U.S. Humane Society on pet ownership in the United States, or the percentage of pet food affected by the recall as stated by AVRA are in any way unreliable.  *See* Pl. Reply at 5 and generally.[7]

---

[7] Plaintiffs make one comment criticizing the AVMA statistic which is difficult to decipher.  Plaintiffs state that the AVMA press release states that the "recall includes 90 brands across the entire manufacturing spectrum, it represents only

In addition, the Magistrate Judge should have completely discounted the "alternate" calculations proffered by Plaintiffs in their Reply as they, unlike Menu Foods calculations, are based in material part on a random and unsupported assumption. Plaintiffs use Menu Foods' statements to estimate that 80 million pet food containers were recalled, and multiply that figure by the percentage representing Hawaii's population to the entire United States (.42%) to estimate that a total of 336,000 containers for the 4-month period alleged in the Complaint were recalled in Hawaii. But then Plaintiffs make a baseless and indeed flawed assumption that pets consume 2 containers per day to arrive at an estimation that 1,411 pets were affected by the recall. Magistrate Judge Kobayashi failed to question this flawed assumption.

Plaintiffs provide no basis for this assumption, which does not take into account that (1) not all of the pet food containers recalled are single serving containers (indeed, wet pet food is often in multi-serving containers), (2) many pets, particularly cats and small dogs, only eat one serving of food per day,

---

1 per cent of available pet food products." Plaintiffs then, without explanation, state that "the amount of 'available pet food products' across the entire manufacturing spectrum is completely different than the amount of pet food products that were actually sold during the recall period, which should be the basis for any jurisdictional calculation." Pl. Reply at 2 n.2. While Menu Foods is not quite sure what is meant by this statement, Menu Foods submits that AVMA's 1% figure, as a percentage "of available pet food products" (*i.e.* pet food products available for sale during the recall period), is a reliable indicator of the percentage of pets that were affected.

(3) most dog owners do not serve their dogs solely wet food, but use wet food as a mix-in with dry for flavor, and (4) many pet owners feed their pets a variety of pet food. All of these factors are ignored by Plaintiffs and support a significantly lesser rate of consumption of the recalled pet food over the four-month period than two containers per pet per day, which would, if employed, result in a significantly greater number of pets potentially affected. As is it impossible to "guess" this rate of consumption, Plaintiffs' figures should be disregarded. Menu Foods' calculations are credible and are not based on guesses or speculation and demonstrate to a legal certainty that the amount-in-controversy exceeds $5 million.

### c.  *The Sum and Value of the Categories of Damages for Potentially Affected Pets.*

     i)     <u>Compensatory and Consequential Damages</u>.

Plaintiffs seek the cost of veterinary screening examinations (either out of pocket or in the future) for all affected pets. Specifically, Plaintiffs seek the cost of blood and urine tests for renal failure. *See* Pl. Memo in Support of Remand at 9. Based on a survey of several veterinarians, animal hospitals, and animal clinics in Hawaii, including Honolulu, Pearl City, Waipahu, Aiea, Kahului, and Lahaina, the average cost of one veterinary screening for renal failure for a dog or cat, including blood and urine test, office visit, and OSHA clean-up cost (if any) is $217. Declaration of Erin Owens, dated July 27, 2007, ¶¶ 2, 3 (true and correct copy attached as Ex. F). Both Magistrate Judge Kobayashi and Plaintiffs accept this

figure as a reasonable average cost of medical screening. *See* Recommendation at

21; Pl. Reply at 10. Conservatively estimating that Plaintiffs only seek one

screening per animal (Plaintiffs do not disclose in the Complaint how many

screenings per animal they seek), **the cost of veterinary screening for renal failure**

**for 7,262 dogs and cats at an average cost of $217 per screening is** $1,575,854.[8]

ii)    Treble Damages Recoverable under HRS Chapter 480.

Plaintiffs acknowledge that they drafted the Complaint to ensure that the

class members' claims are governed by HRS Chapter 480, which imposes

mandatory treble damages for unfair trade practices. *See* Pl. Reply at 14.

**Applying treble damages to the total compensatory and consequential**

**damages** (3 x 1,575,854) **brings total damages to $4,727,562.**

iii)    Damages Available to Elders under HRS Chapter 480.

In paragraph G of their prayer for relief, Plaintiffs specifically ask "[t]hat the

Court award ... the $5,000 alternative minimum damages awardable to any

member of the Class who is an elder pursuant to the provisions of HRS Chapter

---

[8]    Plaintiffs' claim for compensatory damages also includes the cost of the
contaminated pet food they claim to have purchased over an alleged four month
period. Although Menu Foods submits that Plaintiffs are not entitled to such
damages, they are sought by Plaintiffs, and when added to the total amount of
damages Plaintiffs seek, they further increase the amount-in-controversy.
Plaintiffs in their Reply claim that this figure is $295,601, and $886,803 when
trebled pursuant to HRS Chapter 480. Pl. Reply at 9. Solely for purposes of
determining the amount-in-controversy, Menu Foods will adopt this figure to
arrive at the total value of damages and relief put in dispute by Plaintiffs.

480." (HRS § 480-13.5 defines "elders" as those age 62 or over.) As made clear by the standard for determining the amount-in-controversy articulated in *Lao*, 455 F. Supp. 2d at 1049, it makes no difference, as Plaintiffs attempt to argue, that they may not ultimately be awarded the $5,000 damages per elder at trial. "[T]he court … assumes plaintiff will prove liability and recover the damages alleged." *Levine*, 2007 WL 2406897 at *2. Elder damages of $5,000 per elder is a category of damages sought by Plaintiffs and, therefore, <u>must</u> be included in tabulating the amount-in-controversy.

Trying to use to their advantage the weakness of their case, Plaintiffs state in their Reply that "at this stage in the litigation, Menu [Foods] has not offered any evidence that it targeted seniors in the sale of it poisoned pet food." Pl. Reply at 11. Magistrate Judge Kobayashi erred in accepting Plaintiffs' contention that it is Menu Foods' responsibility to put forth evidence demonstrating its own liability in order to demonstrate the amount in controversy, as opposed to basing the calculations on what Plaintiffs seek. *See* Ex. A at 23. ("[T]he mere fact that elders are part of the class is by no means a guarantee that they will be entitled to the higher damages….In the absence of concrete evidence, the Court cannot determine the amount in controversy with any certainty.")

In *Brill*, a case relied up on by Plaintiffs in their Reply (*see* Pl. Reply at 5), the Court rejected any purported requirement of proof of liability to establish the

jurisdictional minimum. 427 F.3d at 448. The Court recognized that "suits are removed on the pleadings, long before 'evidence' or 'proof' have been adduced. The question is not what damages the Plaintiff will recover, but what amount is 'in controversy' between the parties." *Id.* There is no requirement that Menu Foods adduce evidence that it targeted seniors.

Here, like in *Brill*, "[t]he complaint did not set a cap on recovery – as it might have done if the plaintiff had represented that the class would neither seek nor accept more than $5 million in aggregate. Nor did the complaint abjure trebled [or, in this case, Elder] damages; it held open that possibility, depending on the state of proof....[Defendants do] not have to confess liability in order to show that the controversy exceeds the threshold. A judge may well award less...,but a recovery exceeding $5 million for the class as a whole is not legally impossible." *Id.* at 449.

In addition, contrary to Plaintiffs' contention (*see* Pl. Reply at 11), this case is unlike *Lowdermilk*, where the Court rejected the contention that all class members would be entitled to maximum damages. In *Lowdermilk*, a late-wages case, not all class members were "entitled" to seek the maximum penalty damages sought because that required that they all were paid at least 30 days late, and the plaintiff had not alleged that all class members had been. 479 F.3d at 1001 ("Defendant assumes that all class members would be entitled to the maximum damages under Oregon law, but provides no evidence to support this assertion. Plaintiff...alleges

that under Oregon law, she is owed 'up to 30 days' of penalty wages.  Many

employees may have been paid only a few days late and, consequently, would be

entitled to fewer days of penalty wages.") (emphasis in original).

In this case, all the elders have the "right" to seek maximum Elder damages,

even if they may not ultimately be awarded these damages at trial.  Plaintiffs'

application of *Lowdermilk* would only be applicable here if Menu Foods had tried

to assert that the entire class might be entitled to Elder damages; however, Menu

Foods engaged in a methodologically sound (and conservative) analysis to

determine which of the class are elders and have only applied Elder damages to

this portion of the class.  Indeed, for each of the other categories of damages

Plaintiffs seek, Plaintiffs must establish liability at trial, and there is no evidence

that they will prevail.  Still, it is all of the damages Plaintiffs seek, so long as there

are "entitled" to seek them, that should be included in the total when calculating

amount-in-controversy.

The population of Hawaii in 2006 was 1,285,498 (http://www.census.gov/

popest/states/asrh/SC-EST2006-02.html).  In addition, according to the U.S.

Census Bureau, the population of Hawaii over age of 65 in 2006 was 179,370.  *Id.*

Therefore, the percentage of the population of Hawaii over age 65 in 2006 was

13.95% (and conversely, the percentage of the population under 65 was 86.05%).

In their Complaint, Plaintiffs admit that there are "several thousand" members of

their putative class. *See* Complaint ¶ 46. As noted in Menu Foods' removal petition, "several" is defined as "more than two," and therefore based on the Complaint, the class is at least 3,000. *See Espinosa v. Philip Morris USA, Inc.,* No. 07 C 231, 2007 WL 917383 at *2 (N.D. Ill. March 26, 2007) (concluding that where the complaint alleges that "the proposed class members 'number in the hundreds of thousands,' " then "by [the plaintiff]'s own estimation, the proposed class will contain at least 200,000 members"). Plaintiffs attempt to deny that the definition of "several" is not more than two, but they do not recant their allegation of "several thousand" made in the Complaint nor do they provide any alternative definition of "several thousand." *See* Pl. Reply at 7.[9] Assuming that 13.95% of the class members are over 65 (a conservative figure considering that age 65 is three years older than required to be defined as an "elder" pursuant to HRS Chapter 480), then 418 of the class members are elders (.1395 x 3,000). **Therefore, the damages sought by Plaintiffs for the elders in the putative class** (418 x $5,000) **totals $2,090,000**.

If the Court awards the 418 elders each $5,000 in alternative damages, they would not be entitled to their share of the compensatory and consequential damages calculated above. The percentage of the population who are not "elders"

---

[9]    In addition, considering that Menu Foods has already established that 7,262 dogs and cats were potentially affected by the recall, a class size of 3000 is a reasonable estimate.

(86.05%) would be entitled to the compensatory and consequential damages calculated above and the elders would be entitled only to the total alternative damages of $2,090,000. Accordingly, the compensatory and consequential damages Plaintiffs seek on behalf of non-elders is $4,068,067 (.8605 x $4,727,562), and **total damages sought by Plaintiffs for both elders and non-elders** ($2,090,000 + $4,068,067) **amount to $6,158,067**.[10]

      iv)    Attorneys' Fees.

HRS Chapter 480 also provides for the recovery of attorneys' fees. As held in *Lowdermilk*, "where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." 479 F.3d at 1000 (quoting *Calt F/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998)).

One method used to calculate "reasonable" attorneys' fees is the "lodestar" method. *See, e.g., DFS Group LP v. Paiea Properties*, 110 Haw. 217, 131 P.3d 500 (S. Ct. 2006); *Parr v. TLLC, LLC*, Civil No. 06-00500 DAE-LEK, 2007 WL 1223447 (D. Haw. April 23, 2007). Under the lodestar method, the Court calculates "reasonable" attorneys' fees by multiplying the number of hours reasonably expended by a reasonable hourly rate.

---

[10]   As noted above, if trebled damages for the damages the non-elder Plaintiffs seek for cost of pet food during the alleged four month period were added, the amount-in-controversy would be even greater.

Plaintiffs have two attorneys.  The lead attorney is Thomas Grande, who was licensed in Hawaii in 1985 and has 22 years of experience (¶ 3 of the Declaration of Chad Love, dated July 27, 2007, a true and correct copy attached as Ex. E (this declaration and the exhibits attached thereto were attached to Menu Foods' Memo in Opp).  The other is Emily Gardner, Esq., who was admitted to the Hawaii bar in 1997, but started her practice in 1999 and has eight years of trial litigation experience.  *Id.* at ¶3.

Five recent decisions in the District of Hawaii calculating attorneys' fees indicate that $268[11] is a reasonable average hourly rate for an attorney with over 20 years of experience and $135[12] is a reasonable average hourly rate for an attorney with 8 years of experience.  *See Parr*, 2007 WL 1223447 ($275/hour for attorney with 20 years experience); *Synagro Technologies, Inc. v. GMP Hawaii, Inc.,* Civ. No. 04-00509 SPK/LEK, 2007 WL 851271 (D. Haw. March 15, 2007) (for lawyers with 4 and 7 years experience, $125 and $135 were reasonable hourly rates, respectively); *Alicia F. v. Department of Education*, Civil No. 06-00268 HG-BMK, 2007 WL 593633 (D. Haw. Feb. 21, 2007) ($285/hour in a case involving an attorney with 34 years of experience, who was partner of Thomas Grande (Plaintiffs' attorney in this case)); *Berry v. Hawaiian Express Service, Inc.,* Civil

---

[11]    ($275 + 285 + 245) ÷ 3 = $268.

[12]    ($125 +130 + 135 + 150) ÷ 4 = $135.

No. 03-00385 SOM-LEK, 2006 WL 4102120 (D. Haw. Oct. 25, 2006) ($150/hour

for a lawyer with 8 years experience); *Paramount Pictures Corporation v. Carroll*,

No. CV 05-00260 ACK-LEK, 2006 WL 1990815 (D. Haw. July 13, 2006) (for

lawyers with 3 and 20 years experience, $130 and $245 were reasonable rates).

This action, if it goes to trial, should require between 1000 to 2000 hours of

attorney time. *See* Ex. E. ¶¶ 4, 5. **Conservatively assuming 1000 hours and that**

**the work would be divided equally between Mr. Grande and Ms. Gardner, it**

**is reasonable to calculate that the attorneys' fees sought by Plaintiffs is at least**

**$201,500.**[13] This figure has been accepted by Plaintiffs. *See* Pl. Reply at 11.

     v)    <u>Other Damages and Relief Sought by Plaintiffs.</u>

As noted, the foregoing excludes Plaintiffs' claims for the cost of pet food

allegedly purchased over a four-month period, which would increase the amount-

in-controversy.  Menu Foods has not undertaken to estimate this category of

damages because, as discussed *supra*, it does not have access to market share or

consumer sales-per-state data. *See* Ex. D, ¶4.  However, solely for purposes of

these objections, Menu Foods will adopt Plaintiffs' calculation of $$886,803

(when trebled pursuant to HRS Chapter 480) as the damages sought by Plaintiffs

for cost of pet food. *See* Pl. Reply at 9.

---

[13]    **(500 x $268) + (500 x $135) = $201,500.**

The injunctive relief Plaintiffs seek, which imposes continuing obligations, may be calculated for purposes of satisfying the $5 million amount-in-controversy. *See International Padi, Inc. v. Diverlink*, No. 03-56478, 03-56788, D.C. No. CV-02-00289-GLT, 2005 WL 1635347 at *1 (9th Cir. July 13, 2005) (citation omitted)).  It is, therefore, a legal certainty that the amount-in-controversy in this action satisfies the federal jurisdictional amount.

      vi)    <u>Summary of Total Value of Damages/Relief Sought by Plaintiffs</u>.

In sum, Plaintiffs' claims for damages include the following:

| Damage Category | Computation | Amount of Damages Sought |
|---|---|---|
| Trebled Cost of Veterinary Screening, Minus Elders' Damages | Veterinary screening:  $1,575,854 Trebled Amount:  $4,727,562 Amount related to non-elders = 86.05% of $4,727,562 = $4,068,067 | $4,068,067 |
| Elders' Damages | 418 elders x $5,000 | $2,090,000 |
| Attorneys' Fees | (500 x $268) + (500 x $135) | $201,500 |
| Trebled Cost of Pet Food | (as computed by Plaintiffs) | $886,803 |
| Injunctive Relief | | $+ |
| | | |
| **TOTAL** | | **$7,246,370+** |

Note:  Except for the $886,803 in Trebled Cost of Pet Food, all data and calculations above were raised in Menu Foods' Memo in Opp to Remand and are not "new" arguments/calculations.

**C.    Menu Foods' Motion for Stay of Proceedings Should Be Granted**

Magistrate Judge Kobayashi recommended denial of Menu Foods' motion

for a stay of proceeding as moot because of her recommendation that the case be

remanded to state court.  Further to its request that the Court vacate Magistrate

Judge Kobayashi's recommendation and deny Plaintiffs' motion for remand, Menu

Foods requests that a stay of proceedings be granted pending the JPML's

determination of Plaintiffs' motion to vacate the CTO.

## VI.  CONCLUSION

Menu Foods respectfully submits that Magistrate Judge Kobayashi made an

error of law when recommending that this case be remanded to state court and that

the motion for a stay be denied as moot, and request that this Court vacate the

Recommendation, deny Plaintiffs' motion for remand, and grant Menu Foods'

motion for a stay.  This action was properly removed to the United States District

Court for the District of Hawaii pursuant to 28 U.S.C. §§ 1332 and 1441 and

should not be remanded to state court.

DATED:    Honolulu, Hawaii, September 4, 2007.

                    /s/ Barbara J. Kirschenbaum
                    CHAD P. LOVE
                    BARBARA J. KIRSCHENBAUM

                    Attorneys for Menu Foods Inc, Menu Foods
                    Holdings, Inc., and Menu Foods Income Fund

29