IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

YVONNE ORTIZ, individually          )        CIVIL NO. 07-00323 DAE-LEK
and on behalf of all other          )
similarly situated persons,         )
                                    )
            Plaintiff,              )
                                    )
    vs.                             )
                                    )
MENU FOODS, INC., a New             )
Jersey Corporation, ET AL.,         )
                                    )
            Defendants.             )
_____        )

## FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR REMAND AND ORDER DENYING DEFENDANTS' MOTION TO STAY AS MOOT

    Before the Court is the Motion for Remand ("Remand

Motion"), filed by Plaintiff Yvonne Ortiz ("Plaintiff") on July

12, 2007.  Also before the Court is Defendant Menu Foods

Holdings, Inc.'s ("MFH") Motion to Stay All Proceedings ("Stay

Motion"), filed June 15, 2007.  The Court finds these matters

suitable for disposition without a hearing pursuant to Rule

7.2(d) of the Local Rules for the District of Hawai'i ("Local

Rules").  Upon careful consideration of the Motion, supporting

and opposing memoranda, and the relevant legal authority, this

Court HEREBY FINDS and RECOMMENDS that Plaintiff's Motion be

GRANTED IN PART AND DENIED IN PART and HEREBY DENIES as moot

Defendants' Motion to Stay for the reasons set forth below.

### BACKGROUND

EXHIBIT A

Dockets.Justia.com

Case 1:07-cv-00323-DAE-LEK    Document 23    Filed 08/2..2007    Page 2 of 28

The instant action arises out of the manufacture and sale by Defendants Menu Foods, Inc. ("MF"), Menu Foods Holdings, Inc. ("MFH"), and Menu Foods Income Fund ("MFIF") (collectively "Defendants") of contaminated and adulterated dog and cat food. The food, which contained melamine, an industrial chemical, and aminopterin, a type of rat poison, purportedly caused illness, injury, and/or death to dogs and cats. On May 11, 2007, Plaintiff, individually and on behalf of all other similarly situated persons (collectively "Plaintiffs"), filed a Complaint in the Circuit Court of the First Circuit, State of Hawai'i, alleging violations of Hawai'i Revised Statutes chapters 328 (Hawai'i food, drug and cosmetic act) and 480 (unfair or deceptive acts or practices); negligence/gross negligence; strict products liability; breach of express/implied warranties; unjust enrichment/disgorgement; and non-disclosure. On May 15, 2007, Plaintiff filed a motion for class certification. MFH removed the action to the U.S. District Court for the District of Hawai'i on June 12, 2007.

## I.   Motion to Stay All Proceedings

On June 15, 2007, MFH filed the Stay Motion. MFH asks the Court to stay all proceedings in the instant case pending a transfer decision by the Judicial Panel on Multidistrict Litigation ("JPML") and pending a determination of class certification by the transferee court. MFH represents that there

EXHIBIT A

are over 100 federal actions involving allegedly contaminated pet food from Defendants that resulted in injuries and/or death to pets.  MFH claims that none of the pending cases are advanced and discovery has yet to be conducted.  According to MFH, the JPML held oral arguments for four motions for transfer and coordination or consolidation on May 31, 2007, and it expects the JPML to issue an order in early July.

MFH maintains that a stay is necessary to promote judicial economy and avoid undue prejudice to the parties.  MFH points out that it would not make sense for the Court to supervise pre-trial proceedings when the case could be transferred because issues such as class certification are best decided by a single court.  In addition, MFH proffers that no prejudice will result to Plaintiff if the Court stays the action because the JPML decision is pending and the case is in its early stages.  Absent a stay, however, MFH explains that it will suffer substantial prejudice if it must defend multiple cases in multiple jurisdictions.

On July 13, 2007, Plaintiff filed her Opposition.  She seeks a denial of MFH's Motion because jurisdiction is at issue and will be determined in Plaintiff's motion for remand.  Second, there is no transfer pending to the MDL so an issuance of a stay would be premature.  According to Plaintiff, Defendants erroneously analogize this case to those federal actions claiming

3

EXHIBIT A

Case 1:07-cv-00323-DAE-LEK    Document 23    Filed 08/21/2007    Page 4 of 28

injuries an damages resulting from illness and/or death of pets that consumed tainted food. Because Plaintiff disputes MFH's removal of the case, she submits that the Court should not consider this Motion until the remand issue is determined.

Plaintiff additionally emphasizes that this case is not one of the series of cases currently under consideration for consolidation before the MDL. As such, it is a potential "tag-along action," which would require the Panel, prior to transfer, to serve a conditional transfer order on each party. Each party would then have fifteen days to oppose the order. [Mem. in Supp. of Mot. at 5-6 (citing Rules of Procedure of the Judicial Panel on Multi-District Litigation, Rule 7.4(a)).] Plaintiff again notes, however, that because no transfer is pending in the instant case, it would be premature to stay the case.

Plaintiff lastly argues that the Court should not issue a stay because this action raises issues unique to Hawaii law and is thus distinct from the other pending federal cases. For this reason, Plaintiff insists that judicial economy will not be served, as the MDL does not have experience with Hawai'i's consumer protection and food safety laws.

On July 20, 2007, Defendants filed their Reply.[1]

_____

[1]  MFH filed the Motion because it was the only party served. It represents that since then, Plaintiff served MFI and MFIF waived service. As such, the Motion is now on behalf of all Defendants.

EXHIBIT A

Initially, Defendants note that they expect the Court to first address Plaintiff's motion to remand. Defendants then reiterate that because they anticipate that the JPML will issue a conditional transfer order for the instant case, a stay pending a final decision on the transfer will promote judicial economy and avoid undue hardship. Defendants claim that subsequent to the issuance of the Transfer Order, they notified the JPML of this and other potentially-related actions. [Reply at 6 (citing Ex. B at 6-7).] On June 28, 2007, the JPML issued a conditional transfer order for sitxy-six potential tag-along actions, not including this action, and all but one were transferred on July 6, 2007. [Id. (citing Ex. C).] Defendants cite a number of cases for the proposition that district courts have stayed actions pending final disposition of objections to a conditional transfer order.

Next, Defendants contest Plaintiff's argument that the Court should not grant a stay because her claims are distinct from all others in the MDL and are unique to Hawai'i. They counter that Plaintiff's position is without support and incorrect given the JPML's role in determining whether a case is properly included in MDL. In addition, Defendants explain that the other cases are not limited to pet death or injury, but rather, involve exposure only claims. [Id. at 9 (citing Exs. D, E, & F).] Defendants also accuse Plaintiff of conflating the

5

EXHIBIT A

prerequisite for transfer of a case to a MDL, which is common question(s) of fact, not law. Highlighting the MDL process, Defendants represent that if transferred, discovery and pretrial proceedings for the instant action would be conducted before the transferee court, but the case could subsequently be remanded to this district. Defendants contend that Plaintiff fails to articulate how discovery here is different from that in other cases involving the same or similar causes of action. [Id. at 10 (citing Exs. E, G, H, I & J).] Because factual issues are similar even with respect to Plaintiff's Hawai'i statutory claims, Defendants submit that discovery or motion practice in this Court would duplicate the efforts in the MDL proceeding and possibly risk inconsistent rulings.

## II.  Motion to Remand

On July 12, 2007, Plaintiff filed the Remand Motion. She seeks remand based on MFH's failure to prove to a legal certainty that the requirements for original jurisdiction in federal court have been met, namely the class size and an amount in controversy exceeding $5 million. Plaintiff argues that MFH misrepresents the allegations in the Complaint and clarifies that she seeks only a recovery of costs associated with the purchase of defective, toxic, recalled food products manufactured by Defendants and sold in Hawai'i to Hawai'i pet owners. Additionally, Plaintiff contends that MFH engages in speculation

EXHIBIT A

and conjecture in establishing that the Court has original jurisdiction under the Class Action Fairness Act ("CAFA").

With respect to the number of class members, Plaintiff notes that MFH has failed to offer any affidavit or admissible evidence of the number of consumers who purchased its tainted food. Rather, MFH postulated that based on Plaintiff's estimation that there are several thousand class members, there are approximately 3,000 class members because "several" is greater than two. Plaintiff presumes that MFH has possession of information concerning the number of consumers who purchased the tainted food.

Plaintiff also contests MFH's estimates of damages, charging that the estimations are speculative and erroneous. In particular, Plaintiff disputes MFH's estimate of $2,000 in damages per class member and MFH's estimation that one-third of the class members are "elders" who would be entitled to $5,000 each. Plaintiff contends that these estimates are the result of a misreading of the facts of the case and again highlights MFH's lack of evidence to support its assertions.

Lastly, Plaintiff seeks attorneys' fees and costs due to MFH's complete lack of factual authority for its position.

On July 27, 2007, MFH filed its Opposition. MFH contends that the only issue in dispute is the amount in controversy, as Plaintiff has admitted that the aggregate number

EXHIBIT A

Case 1:07-cv-00323-AE-LEK    Document 23    Filed 08/2/2007    Page 8 of 28

of class members is greater than 100 (the Complaint estimates the
class size as several thousand) and that diversity exists.
According to MFH, a calculation of even part of Plaintiff's
damages claims (statutory damages, veterinary screening, and
attorneys' fees) demonstrates that the amount in controversy
exceeds $5 million.  MFH relies on statistics from the Census
Bureau, Humane Society of the United States ("Humane Society"),
and the American Veterinary Medical Association ("AVMA") for its
estimate that 4,007 cats and 3,255 dogs were potentially affected
by the recall.  Based on its estimate of $217 per pet for
veterinary screening examinations, MFH submits that the total
cost of screenings is $1,575,854.  MFH next applies treble
damages sought by Plaintiff to this calculation for a damages
total of $4,727,562.  Finally, MFH argues that damages for elders
in the putative class total $2,090,000.  MFH arrives at this
figure by relying on a class size of 3,000, 13.95% of which are
elders multiplied by $5,000, the amount of damages an elder may
be entitled to under Hawai'i Revised Statutes Chapter 480.  In
excluding the elders from the damages total of $4,727,562 and
adding the elders' damages total of $2,090,000, MFH asserts that
the total damages are $6,158,067.

　　　As part of the calculus, MFH also discusses attorneys'
fees, which it estimates to be $201,500.  MFH thus concludes that
the damages claims plus the attorneys fees results in an amount

8

EXHIBIT    A

in controversy totaling $6,359,567. MFH contends that Plaintiff should not be awarded fees and costs associated with the removal of the action, as it acted in good faith.

On August 9, 2007, Plaintiff filed a Reply. She reiterates that MFH has failed to prove, with legal certainty, that the amount in controversy exceeds $5 million. Plaintiff argues that although satisfaction of the legal certainty standard requires MFH to offer proof from its own files, MFH only offered speculative third-party information. In particular, Plaintiff charges that MFH has access to its sales data for Hawai'i, which would assist in estimating class size, but relied instead upon Plaintiffs estimation of a class of "several thousand." Using sales data from the Menu Foods Income Fund website, as well as statistics from the Census Bureau, Plaintiff estimates damages for the recalled pet food to total $295,601, or $886,803, if trebeled.

Plaintiff next relies upon statements made at a FDA Press Conference for the claim that Defendants have recalled 60 million cans and pouches of pet food over a three month period. In Plaintiff's estimation then, approximately 80 million pouches and containers were recalled over the course of the recall period (November 8, 2006 to March 6, 2007). Adjusting this figure based on 1) Hawai'i's population relative to the continental United States; 2) the number of days in the recall (119); and 3) the

9

EXHIBIT A

assumption that each pet consumes two cans/pouches of food per day, and multiplying it by MFH's $217 estimate for veterinary screening, Plaintiff arrives at a total cost for veterinary screening of $306,187, which if trebled, totals $918,561.

Plaintiff further argues that punitive damages are not awarded with treble damages. As such, she has not included punitives in the calculations. With respect to the elder damages, Plaintiff postulates that there is no evidence suggesting that such damages would be awarded. A court considers specified factors (i.e. whether the conduct was in willful disregard of rights of elder, whether a person knew or should have known that his/her conduct was directed toward or targeted an elder, etc.) when determining if these statutory damages are appropriate and Plaintiff points out that MFH has not offered evidence that it targeted elders in the sale of the tainted food. Plaintiff therefore contends that it is inappropriate for MFD to include these damages in its calculation because by doing so, MFD assumes that all elders would be entitled to the maximum damages. Accepting MFH's estimation of attorneys' fees for the purposes of the Remand Motion, Plaintiff's calculation of the amount in controversy is $2,006,864.

On August 1, 2007, the JPML issued a condition transfer order for the instant case, which is not effective until filed with the Clerk of the United States District Court for the

10

EXHIBIT A

District of New Jersey.  In light of Plaintiff's opposition to
the conditional transfer order, filed August 15, 2007, the order
will not be transmitted to the Clerk in New Jersey and the case
will be stayed until further order of the JPML.

**DISCUSSION**

I.    <u>Stays</u>

District courts have "broad discretion to stay
proceedings as an incident to its power to control its own
docket."  <u>Clinton v. Jones</u>, 520 U.S. 681, 706-07 (1997) (citation
omitted).  In deciding a motion to stay a case, the court must
weigh the competing interests that the ruling will affect.  <u>See</u>
<u>Malama Mauka v. Rumsfeld</u>, 136 F. Supp. 2d 1155, 1165 (D. Haw.
2001); <u>see also</u> <u>Yong v. INS</u>, 208 F.3d 1116, 1119 (9th Cir. 2000)
(stating that the court must balance the hardship of proceeding
against "the ossification of rights which attends inordinate
delay").  The competing interests include, but are not limited
to: "hardship or inequity that a party may suffer in being
required to go forward, and the orderly course of justice
measured in terms of the simplifying or complicating of issues,
proof, and questions of law that could be expected to result from
a stay."  <u>Id.</u> (citing <u>Filtrol Corp. v. Kelleher</u>, 467 F.2d 242,
244 (9th Cir. 1972)) (some citations omitted).  The court should
also balance the length of the stay against the strength of the
reason for the stay.  <u>Id.</u>  A party requesting an especially long

11

EXHIBIT A

or an indefinite stay must make a greater showing of justification. See id.

A.  **Multidistrict Litigation**

Because this case is one of many brought against Defendants, multidistrict litigation is implicated. Coordination of multidistrict litigation is governed by 28 U.S.C. § 1407. Section 1407(a) provides, in pertinent part:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. . . .

28 U.S.C. § 1407(a). The JPML's Rules of Procedure provide that:

> The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court. A transfer or remand pursuant to 28 U.S.C. § 1407 shall be effective when the transfer or remand order is filed in the office of the clerk of the district court of the transferee district.

R. Proc. Jud. Panel Multi. Litig. 1.5. In other words, a district court need not automatically stay a case when there is something pending before the MDL Panel. Rather, the court has the discretion to grant a stay when it is in the interests of

12

EXHIBIT  A

judicial economy and efficiency.  See Rivers v. Walt Disney Co.,

980 F. Supp. 1358, 1360 (C.D. Cal. 1997).

When considering a motion to stay, district courts in

the Ninth Circuit consider the following factors: "(1) potential

prejudice to the non-moving party; (2) hardship and inequity to

the moving party if the action is not stayed; and (3) the

judicial resources that would be saved by avoiding duplicative

litigation if the cases are in fact consolidated." Id. (citing

Am. Seafood, Inc. v. Magnolia Processing, Inc., Civ. A. Nos.

92-1030, 92-1086, 1992 WL 102762, at *1-2 (E.D. Penn. May 7,

1992)); see also Martin v. Merck & Co., Inc., No. S-05-750

LKK/PAN, 2005 WL 1984483, at *5 (E.D. Cal. Aug. 15, 2005)

(quoting Quincy Cmty. Servs. Dist. v. Atlantic Richfield, No.

CIV. S-03-2582, at *7 (E.D. Cal. 2004), for factors identical to

those in Rivers); Dix v. ICT Group, Inc., No. CS-03-0315-LRS,

2003 WL 22852135, at *7 (E.D. Wash. Oct. 20, 2003) (citing

Rivers, 980 F. Supp. at 1360).

## II.  Order of Determining Motions to Remand and Motions to Stay

In this case, not only is the issue of whether to grant

a stay before this Court, however, but also the issue of whether

to remand the action to state court.  Courts have held that when

jurisdictional issues are in dispute, a motion to remand should

be resolved prior to the determination of whether a stay is

appropriate.  Smith v. Mail Boxes, Etc., 191 F. Supp. 2d 1155,

EXHIBIT  A

1157 (E.D. Cal. 2002) (citing Good v. Prudential Ins. Co. of Am.,
5 F. Supp. 2d 804, 809 (N.D. Cal. 1998) (granting stay pending
MDL transfer decision after considering jurisdictional issues in
remand motion); Tortola Rest., L.P. v. Kimberly-Clark Corp., 987
F. Supp. 1186, 1188-89 (N.D. Cal. 1997) (denying stay motion and
addressing merits of motion to remand); Kohl v. Am. Home Products
Corp., 78 F. Supp. 2d 885, 888 (W.D. Ark. 1999) (granting stay
following determination that removal was proper and denial of
remand was warranted); Aetna U.S. Healthcare, Inc. v. Hoechst
Aktiengesellschaft, 54 F. Supp. 2d 1042, 1047 (D. Kan. 1999)
(reasoning that preliminary jurisdictional issue should be
determined on motion to remand before court considers staying the
action)). "However, the calculus changes somewhat when deference
to a MDL court will further 'the uniformity, consistency, and
predictability in litigation that underlies the MDL system.'"
McClelland v. Merck & Co., CIV. No. 06-00543 JMS/BMK, 2007 WL
178293, *2 (D. Haw. Jan. 19, 2007) (quoting Leeson v. Merck &
Co., Inc., No. S-05-2240 WBS PAN, 2006 WL 3230047 (E.D. Ca. Jan.
27, 2006)) (citation omitted).

    When considering simultaneous motions to remand and
motions to stay the proceedings, district courts employ a three-
step methodology. First, "a court should . . . give preliminary
scrutiny to the merits of the motion to remand. If this
preliminary assessment suggests that removal was improper, the

14

EXHIBIT A

court should promptly complete its consideration and remand the case to state court." Id. (quoting Meyers v. Bayer AG, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001)); Conroy v. Fresh Del Monte Produce, Inc., 325 F. Supp. 2d 1049, 1053 (N.D. Cal. 2004). If "the jurisdictional issue appears factually or legally difficult, [however,] the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding."[2] Id. (quoting Meyer, 143 F. Supp. 2d at 1049); Conroy, 325 F. Supp. 2d at 1053. A court should only proceed to the third step and consider the motion to stay "if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred." Meyer, 143 F. Supp. 2d at 1049; McClelland, 2007 WL 178293, at *2; Conroy, 325 F. Supp. 2d at 1053.

Here, a preliminary assessment of the Remand Motion indicates that remand is appropriate because MFH has not established, with legal certainty, that the amount in controversy exceeds $5 million. Consequently, the Court will address the Remand Motion and recommend that the district court remand the action to state court. The Court acknowledges that the jurisdictional issue is somewhat complicated because of the

_____

[2]  This is because it is only for the purpose of furthering judicial economy and consistency that the transferee court should decide the jurisdictional issue. Meyer, 143 F. Supp. 2d at 1049.

EXHIBIT A

challenges with estimating, at this early stage, the total amount of damages in controversy. However, judicial economy would not be served by staying the case and/or having the district of New Jersey decide the jurisdictional issue.

First, issues of jurisdiction should be decided as early in the process as possible. Second, this Court's review of the district of New Jersey's docket indicates that the other MDL cases before that court were initiated in federal court and in the one case removed to federal court, the plaintiff did not challenge removal. Thus, this CAFA jurisdictional issue has not been raised in the cases transferred to the district of New Jersey. Even if a number of the cases pending transfer raised CAFA jurisdictional issues, judicial economy would not be served by having the transferee court rule on remand because this action is based entirely on Hawai'i state law. Moreover, each class size would vary as would the corresponding amounts in controversy. See, e.g., Conroy, 325 F. Supp. 2d at 1054 (finding that a stay would be judicially inefficient where it would allow the transferee court to rule on several pending questions of jurisdiction but would require that court to apply various state and circuit laws to each jurisdictional claim). Last, the parties have already fully briefed the Remand Motion and it would not serve any of the parties' interests to delay the adjudication of the remand issue. Because this case should only be

EXHIBIT A

Case 1:07-cv-00323-DAE-LEK    Document 23    Filed 08/21/2007    Page 17 of 28

transferred if subject matter jurisdiction is proper,[3] the Court
finds it appropriate and necessary to first address the Remand
Motion.

A.    **Remand**

MFH removed the instant case pursuant to 28 U.S.C. §§
1441(b) and 1332(d) (CAFA).[4] [Notice of Removal at 7.]  Section
1441 provides, in pertinent part:

> (a)  Except as otherwise expressly provided by Act
> of Congress, any civil action brought in a State
> court of which the district courts of the United
> States have original jurisdiction, may be removed
> by the defendant or the defendants, to the

---

[3]  Indeed, 28 U.S.C. § 1404(a) "limits transfer of a civil
action to 'any other district or division where it might have
been brought'. . . [i]n other words, because a court may only
transfer a case to a venue where the case could have been brought
originally, questions regarding subject matter jurisdiction must
be resolved before any such transfer." Conroy, 325 F. Supp. 2d
at 1053.

[4] Section 1446(b) of Title 28 of the U.S. Code provides, in
pertinent part:

> The notice of removal of a civil action or
> proceeding shall be filed within thirty days after
> the receipt by the defendant, through service or
> otherwise, of a copy of the initial pleading
> setting forth the claim for relief upon which such
> action or proceeding is based, or within thirty
> days after the service of summons upon the
> defendant if such initial pleading has then been
> filed in court and is not required to be served on
> the defendant, whichever period is shorter.

28 U.S.C. § 1446(b).  Plaintiff served MFH with the Summons and
Complaint by certified mail on May 23, 2007.  MFH filed the
Notice on June 12, 2007.  Accordingly, the Court finds that MFH
timely filed its Notice.

17

district court of the United States for the
district and division embracing the place where
such action is pending. . . .
(b)  Any civil action of which the district courts
have original jurisdiction founded on a claim or
right arising under the Constitution, treaties or
laws of the United States shall be removable
without regard to the citizenship or residence of
the parties. . . .

28 U.S.C. § 1441 (a), (b).  Section 1441 is strictly construed

against removal and courts resolve any doubts about the propriety

of removal in favor of remanding the case to state court.  See

Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1252 (9th Cir.

2006).

       MFH claims that it properly removed under CAFA because

it is a citizen of Delaware, Plaintiff is a citizen of Hawai'i,

and the amount in controversy exceeds $5 million.  [Notice of

Removal at ¶ 11 (citing 28 U.S.C. §§ 1332, 1441).]  CAFA grants

federal district courts original jurisdiction over cases in which

1) the amount in controversy exceeds $5 million, exclusive of

interests and costs, 2) the aggregate number of proposed

plaintiffs is 100 or greater; and 3) any member of the plaintiff

class is a citizen of a state different from any defendant.  See

28 U.S.C. § 1332(d); Lowdermilk v. U.S. Bank Nat. Ass'n, 479 F.3d

994, 997 (9th Cir. 2007).  "'[U]nder CAFA, the burden of

establishing removal jurisdiction remains, as before, on the

proponent of federal jurisdiction.'"  Id. (quoting Abrego Abrego

v. Dow Chemical Co., 443 F.3d 676, 685 (9th Cir. 2006)).  The

18

EXHIBIT   A

parties do not dispute the existence of minimal diversity or that the aggregate number of proposed plaintiffs is 100 or greater.[5] According to the evidence before the Court, Plaintiff is a citizen of Hawaiʻi and MFH is a citizen of Delaware.[6] While the parties dispute the exact number of class members, there is no dispute that the number of proposed plaintiffs well-exceeds 100. Indeed, Plaintiff herself estimated the proposed class to total "several thousand." [See Compl. at ¶ 46.a.]

The only issue remaining is therefore whether the amount in controversy exceeds $5 million. In her Complaint, Plaintiff represents that "the amount in controversy does not exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and inclusive of attorneys [sic] fees." [Id. at ¶ 42.] MFH insists that the amount in controversy exceeds $5 million and it relies in part upon statistics to support is position. Where, as here, a plaintiff avers damages below the threshold for federal jurisdiction, a court "need not look beyond the four corners of the complaint to determine whether the CAFA jurisdictional amount is met." Lowdermilk, 479 F.3d at 998. Given that Plaintiff, in her Complaint, specifically disclaims

---

[5]   Plaintiff contests MFH's estimation of class size, however, because of the lack of supporting evidence.

[6]   MFH is the only defendant that sought removal because Plaintiff had not served the other defendants at the time. However, Plaintiff alleges that MF is a citizen of New Jersey and MFIF is a citizen of Ontario, Canada. [Compl. at ¶¶ 33-34.]

EXHIBIT A

damages in excess of $5 million, it is incumbent on MFH to "prove
with legal certainty that CAFA's jurisdictional amount is met."
Id. at 1000.  This is because Plaintiff "is 'master of her
complaint' and can plead to avoid federal jurisdiction."  Id. at
998-99 (citations omitted).  As explained by the Lowdermilk
court:

> subject to a "good faith" requirement in a
> pleading, a plaintiff may sue for less than that
> amount she may be entitled to if she wishes to
> avoid federal jurisdiction and remain in state
> court.  Where the plaintiff has alleged her facts
> and pled her damages, and there is no evidence of
> bad faith, the defendant must not only contradict
> the plaintiff's own assessment of damages, but
> most overcome the presumption against federal
> jurisdiction.

Id. at 999 (citations omitted).

1.    **Plaintiff's Damages Claims**

a.    **veterinary screenings**

Relying solely on statistics from the Census Bureau,
the Humane Society, and the AVMA, MFH postulates that 4,007 cats
and 3,255 dogs were potentially affected by the recall.  Based on
its estimate of $217 per pet for veterinary screening
examinations, MFH submits that the total cost of screenings is
$1,575,854.  Applying treble damages to this amount, MFH argues
that the veterinary screening damages total $4,727,562.
Contrastingly, Plaintiff relies on representations that
Defendants recalled 60 million cans and pouches of pet food over
a three month period and adjusts this number to account for

20

EXHIBIT  A

factors such as Hawai'i's population and the assumption that each pet consumed two cans/pouches of food per day, as well as MFH's estimation of a $217 per pet screening cost, to arrive at veterinary screening damages in the amount of $306,187, which if trebled pursuant to Hawai'i Revised Statutes Chapter 480, totals $918,561. This Court finds that MFH has not satisfied its burden of establishing with legal certainty the amount of damages for veterinary screening. Although the Court does not take issue with MFH's estimation of the veterinary screening expenses, it has concerns regarding MFH's estimates of the number of pets affected by the recall. MFH is in the best position to know how many pets might have been affected by the tainted food. Instead of relying on such specific data that would assist the Court in determining whether the amount in controversy exceeds $5 million, MFH relies on general statistics, leaving the Court to speculate about the number of animals affected. See id. at 1002 ("If Defendant, who is the only party with access to its . . . records cannot more accurately approximate the class size, Plaintiff cannot be expected to plead her case with any more specificity."). Given the great disparity between MFH's and Plaintiff's approximations, this Court cannot determine with any certainty the amount in controversy for the veterinary screenings. Indeed, it is MFH's burden to satisfy the legal certainty requirement and the Court finds that it has not.

21

EXHIBIT A

b.    **elder damages**

As part of its estimation of the total amount in controversy, MFH includes damages for elders, which it calculates to be $2,090,000. MFH again relies on Census Bureau statistics to arrive at this figure. Specifically, MFH assumes that the class size is 3,000 and the number of elders is 13.95% of the class, or 418. Plaintiff counters that there is no evidence suggesting that Defendants targeted elders and as a consequence, it is inappropriate for MFH to include these calculations in the jurisdictional amount.

Hawai'i Revised Statutes § 480-13(b)(1) entitles consumers injured by unfair or deceptive acts or practices to damages "not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit." Haw. Rev. Stat. § 480-13(b)(1). When the plaintiff is an elder,[7] this section provides for alternative damages of "not less than $5,000 or threefold any damages sustained by the plaintiff, whichever sum is the greater." See id. To determine whether an award of elder damages is appropriate, a court considers the following factors:

> (1) Whether the person's conduct was in wilful disregard of the rights of the elder;

_____

[7] Section 480-13.5(c) defines an elder as a consumer who is sixty-two years or older.

22

EXHIBIT    A

> (2) Whether the person knew or should have known that the person's conduct was directed toward or targeted an elder;
> (3) Whether the elder was more vulnerable to the person's conduct than other consumers because of age, poor health, infirmity, impaired understanding, restricted mobility, or disability;
> (4) The extent of injury, loss, or damages suffered by the elder; and
> (5) Any other factors the court deems appropriate.

See id. § 480-13.5(b). Clearly then, the mere fact that elders are part of the class is by no means a guarantee that they will be entitled to the higher damages. MFH assumes that all elders would be entitled to $5,000, but has not provided evidence to support this position. First, it relies solely on general statistics to estimate the number of elders in the class. Second, other than its bare assertion that the elders would receive the damages, MFH has not provided the Court with any evidence to address the foregoing factors, or demonstrate why elder damages would be appropriate in this case. In the absence of concrete evidence, the Court cannot determine the amount in controversy with any certainty.

### c.    food costs, punitive damages, injunctive relief

Aside from stating that Plaintiff's claims for food costs, punitive damages, and request for injunctive relief would increase the amount in controversy, MFH offered no evidence to support this assertion. Plaintiff submitted evidence to suggest that the pet food damages would total $295,601, or $886,803, if

23

EXHIBIT ___A___

trebled.  MFH is undoubtedly in the best position to ascertain the pet food damages, as it should have the sales data for pet food purchases in Hawai'i during the recall period.  Yet it failed to provide any data.  The Court is therefore left to speculate about the amount of these damages and MFH has failed to prove with legal certainty that the amount in controversy exceeds $5 million.

### d.  <u>attorneys' fees</u>

As part of its damages, Plaintiff requests attorneys' fees.  Employing the lodestar method, MFH estimates that based on Mr. Grande's and Ms. Gardner's experience, multiplied by the amount of hours that would likely be expended in this action, the total attorneys' fees would total at least $201,500.  Plaintiff does not contest MFH's estimate for the purposes of the Remand Motion.  Hawai'i Revised Statutes § 480-13(b) provides that "if the judgment is for the plaintiff, the plaintiff shall be awarded . . . reasonable attorney's fees together with the costs of suit."  Haw. Rev. Stat. § 480-13(b)(1); <u>see also id.</u> § 480-13(b)(2).  Where a statutory authority provides for attorneys' fees, the fees are included in the amount in controversy to reach CAFA's $5 million minimum.  <u>Lowdermilk</u>, 479 F.3d at 1000.

MFH cites a number of this Court's orders regarding attorneys' fees to estimate the hourly rate that Plaintiff's attorneys would likely be awarded.  It also estimates that a

EXHIBIT __A__

total of 1,000 hours would be expended between Mr. Grande and Ms.

Gardner.  Even if the Court were to give credence to MFH's

approximation of attorneys' fees, it is of no consequence because

MFH has failed to meet the legal certainty standard.  Adding

$201,500 to an unknown amount in controversy does not assist the

Court in determining whether the jurisdictional amount is met.

Based on the foregoing discussion, the Court finds that

MFH has fallen well short of satisfying the legal certainty

requirement.  MFH's evidence (or in some cases, complete lack of

evidence) makes it difficult, if not impossible, for this Court

to ascertain with any certainty whether the amount in controversy

exceeds $5 million.  Accordingly, the Court finds that it does

not have jurisdiction under CAFA and recommends that the district

court remand the action to state court.

    2.   **Entitlement to Removal Expenses**

Plaintiff argues that she is entitled to fees and costs

incurred as a result of the removal because of MFH's lack of

factual authority for its position.  MFH maintains that it

removed the action in good faith and thus contests Plaintiff's

request for fees and costs.  When a federal court remands a case,

it "may require payment of just costs and any actual expenses,

including attorney fees, incurred as a result of the removal."

28 U.S.C. § 1447(c).  The United States Supreme Court has stated

that: "Absent unusual circumstances, courts may award attorney's

EXHIBIT  A

fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  Martin v. Franklin Capital Corp., 126 S. Ct. 704, 711 (2005) (citations omitted).  The district court retains discretion to determine whether a given case presents unusual circumstances that warrant a departure from this rule.  Id.  The Martin Court also instructed that

> The appropriate test for awarding fees under § 144(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

Id.  A district court should award the plaintiff his or her attorneys' fees "if, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal . . . By contrast, if clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees."  Lott v. Pfizer, Inc., No. 06-33722007, WL 1804261, *3 (7th Cir. 2007).

In this case, CAFA affords MFH a right to a federal forum provided certain requirements are met. As already discussed, the minimal diversity and aggregate number of proposed plaintiffs greater than 100 requirements are satisfied.  Even

26

EXHIBIT A

Case 1:07-cv-00323-⸤ ⸥E-LEK    Document 23    Filed 08/2⸍2007    Page 27 of 28

though the Court finds that MFH does not satisfy the legal certainty standard, that does not mean that MFH lacked an objectively reasonable basis for removing the action to federal court.  MFH is convinced that the amount in controversy exceeds $5 million and theoretically, the damages for this type of class action could very well exceed $5 million.  The Court therefore finds that MFH had an objectively reasonable basis for removing the action, despite the fact that MFH did not ultimately carry its burden of establishing the amount in controversy with legal certainty.  In addition, there are no unusual circumstances that would warrant an award of attorneys' fees and costs. Accordingly, the Court finds that Plaintiff is not entitled to her removal related expenses and recommends that the district court deny Plaintiff's request for fees and costs incurred in securing remand of this case.

**B.    Stay**

In light of the fact that the Court is recommending remand, it is unnecessary to address the Stay Motion.  The Court accordingly DENIES Defendants' Stay Motion as moot.

### CONCLUSION

Based on the foregoing, this Court FINDS that MFH failed to prove with legal certainty that the amount in controversy exceeds $5 million.  This Court accordingly RECOMMENDS that Plaintiff Yvonne Ortiz's Motion for Remand, filed

27

EXHIBIT A

July 12, 2007, be GRANTED IN PART AND DENIED IN PART.  The Court

recommends that the district court GRANT Plaintiff's request to

remand the instant case to the First Circuit Court and DENY

Plaintiff's request for fees and costs.

The Court also DENIES Defendant Menu Foods Holdings,

Inc.'s Motion to Stay All Proceedings, filed June 15, 2007, as

moot.

IT IS SO FOUND AND RECOMMENDED AND SO ORDERED.

DATED: Honolulu, Hawai'i, August 21, 2007.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

ORTIZ V. MENU FOODS, INC., ET AL., CV 07-00323 DAE-LEK; FINDINGS
AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S
MOTION FOR REMAND AND ORDER DENYING DEFENDANTS' MOTION TO STAY AS
MOOT

EXHIBIT  A