DAVIS LEVIN LIVINGSTON GRANDE

THOMAS R. GRANDE      3954
851 Fort Street, Suite 400
Honolulu, Hawai'i 96813
Telephone: (808) 524-7500
Facsimile: (808) 356-0418
Email: tgrande@davislevin.com


EMILY A. GARDNER      6891
Attorney at Law
Dillingham Transportation Building
735 Bishop Street, Suite 402
Honolulu, Hawai'i 96813
Telephone: (808)-540-0200
Facsimile: (808)-540-0201
Email: eagardner@hawaii.rr.com

Attorneys for Plaintiff

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| YVONNE ORTIZ, individually and on behalf of all other similarly situated persons,<br><br>                Plaintiff,<br><br>   v.<br><br>MENU FOODS, INC., a New Jersey Corporation; MENU FOODS HOLDINGS, INC., a Delaware Corporation, MENU FOODS INCOME FUND, an unincorporated Canadian business; Doe Entities and Individuals 1- 100,<br><br>             Defendants. | Civil No. 07-1-0849-05   E E H<br>(Class Action)<br><br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR MONETARY DAMAGES; EXHIBITS 1-4; DEMAND FOR JURY TRIAL; SUMMONS TO ANSWER CIVIL COMPLAINT |

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2007 MAY 11 AM 11: 23

F. OTAKE
CLERK

I do hereby certify that this is a full, true, and correct copy of the original on file in this office.

Clerk Circuit Court, First Circuit

EXHIBIT __B__

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR MONETARY DAMAGES

Representative Plaintiff Yvonne Ortiz ("Representative Plaintiff") individually and on behalf of a class of similarly situated persons (collectively "Plaintiffs" or "the Class"), through her attorneys, Thomas R. Grande of Davis Levin Livingston Grande and Emily A. Gardner, Attorney at Law, files this class action complaint against Defendants Menu Foods, Inc., a New Jersey Corporation, Menu Foods Holdings, Inc. a Delaware Corporation, and Menu Foods Income Fund, an unincorporated Canadian business (collectively "Defendants" or "Menu Foods"), and alleges, based upon the best of Plaintiff's knowledge, information, and belief, as follows:

I.        INTRODUCTION

1.        In this case, Menu Foods produced, manufactured, marketed and/or sold contaminated and adulterated dog and cat food that contained aminopterin, a type of rat poison, and melamine, an industrial chemical sometimes used in fertilizer in countries outside the United States.  The food contaminants have been shown to cause serious injury, illness and/or death to dogs and cats.  A current listing of the contaminated and adulterated dog and cat food products ("Recalled Products") sold by Menu Foods is contained in Exhibit 1 (http://www.menufoods.com/recall/product_cat.html and http://www.menufoods.com/recall/product_dog.html).

2.        Menu Foods has admitted that its products were contaminated and adulterated and has initiated a voluntary recall of the contaminated and adulterated dog and cat food products.  Exhibit 2:  Statement of Paul Henderson, President and Chief Executive Officer

2

EXHIBIT 3

of Menu Foods

(http://www.menufoods.com/recall/PR%20Introductory%20Remarks%2004242007.htm).

3.    This class action seeks the following relief for Hawai'i consumers who purchased Menu Foods' contaminated and adulterated food for their dogs and cats:

a)    Declaratory relief that Menu Foods sold contaminated and adulterated pet food in violation of the Hawai'i Food, Drug & Cosmetic Act, HRS Chapter 328, which prohibits the manufacture, sale, delivery, holding, or offering for sale of any food that is adulterated because it contains a poisonous or deleterious substance which may render it injurious to health. Under HRS § 328-1, "Food" is expressly defined as "articles used for food or drink by humans, dogs or cats";

b)    Injunctive relief to ensure tainted pet food is not sold in Hawai'i and/or for the cost of medical examinations for pets that consumed the product; and

c)    Monetary damages for the cost of purchasing the adulterated and contaminated food by Hawai'i consumers, including consequential damages for out of pocket costs associated with preventative veterinary screening examinations, as recommended by the American College of Veterinary Internal Medicine ("ACVIM") for pets that consumed the recalled products.

II.    FACTUAL BACKGROUND

4.    In March 2007 Menu Foods recalled 53 brands of cuts and gravy wet-style dog food and 42 brands of cuts and gravy wet-style cat food which had caused dogs and cats to become ill. One common symptom in the sick dogs and cats was kidney failure, also known as acute renal failure. The dog and cat food was ultimately found to be contaminated with

3

aminopterin (rat poison) and melamine, an industrial chemical banned for use in the United States.

### Menu Foods' Claims About The Quality of Its Pet Food

5.    Menu Foods is the largest maker of wet dog and cat food in North America, with its products sold under 95 brand names through supermarkets, big box, and pet product retailers and wholesalers. Menu Foods manufactures pet food for 17 of the top 20 North American retailers and is also a contract manufacturer of branded pet food products, manufacturing for five of the top six branded companies in North America. It is the only manufacturer in North America offering wet food in the pouch format. Menu Foods holds itself out to the public as a manufacturer of safe, nutritious, and high-quality dog and cat food. Exhibit 2: Statement of Paul Henderson, President and Chief Executive Officer of Menu Foods (http://www.menufoods.com/recall/070330E%20Opening%20Statement%20-%20March%2030%202007.htm).

6.    In conjunction with the sale of its pet food products, Menu Foods marketed, advertised, and warranted that its pet food was fit for the ordinary purpose for which it was sold—consumption by dogs and cats—and that its products were free from defects. Menu Foods produces its pet food products intending that consumers will purchase the pet food products, regardless of brand or label name, place of purchase, or the location where pets actually consume them. Menu Foods pet food products were placed in the stream of commerce, distributed, and offered for sale and sold to Plaintiff and Class Members in Hawai'i to feed to their dogs and cats.

7.    Menu Foods makes numerous express and implied warranties about the quality of its food and its manufacturing facilities. For example, Menu Foods claims that it

4

EXHIBIT 3

"manufacture[s] the private-label, wet pet-food industry's most comprehensive product program with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in the United States and Canada. Menu Foods intended for pet owners to believe its statements that its pet food is of first-rate quality.

## Menu Foods Use of Adulterated Flour

8.      In late 2006, Menu Foods began to use a new supplier of wheat gluten from China named Xuzhou Anying Biologic Technology Development Company Ltd. ("Xuzhou"). In wet pet food, wheat gluten is added for two purposes: (1) to provide a meaty texture and (2) as a binding agent. A meaty texture is an important characteristic of wet pet foods. Instead of wheat gluten, Menu Foods purchased contaminated wheat flour.

9.      Despite the fact that Menu Foods was purchasing a major ingredient used in many of the foods it manufacturers from a new supplier, Menu Foods did not test or otherwise determine whether or not the wheat four it was purchasing was safe for its intended purpose—consumption by dogs and cats. As North America's leading manufacturer of wet dog and cat foods—for more than 95 different brands—Menu Foods merely went on the assumption that the wheat four it purchased from a foreign provider would perform safely and as intended.

## Menu Foods Discovery of Adulterated Pet Food & Voluntary Recall

10.      On information and belief, Menu Foods may have first learned that its pet food was causing health problems to the dogs and cats that ate it in December of 2006. However, Menu Foods had actual knowledge of the contamination at least by February 20, 2007.

11.      On or about February 27, 2007, Menu Foods began testing its products on between 40 to 50 dogs and cats. Between 7 and 10 of those dogs and cats died during the test period.

EXHIBIT __B__

12.    On March 6, 2007, Menu Foods switched to a different supplier of wheat gluten.

13.    On March 16, 2007— almost one month after confirming that its products were causing illness and death in dogs and cats, and ten days after it secured a new supplier for wheat gluten so that it could continue to manufacture its products—Menu Foods initiated a recall of 51 brands of "cuts and gravy" style dog food and 40 brands of "cuts and gravy" style cat food. All of these products were produced at Menu Foods U.S. facilities between Dec. 3, 2006 and March 6, 2007. The original recall involved 91 different products and 60 million cans and pouches of cat and dog food.

14.    The Menu Foods product recall list has been amended several times since March 16, 2007 to include additional brands, and expanded to include products manufactured back to November 8, 2006. The most recent expansion occurred on or about May 2, 2007 and was implemented to address cross-contamination in products manufactured during the same time the products containing the toxic wheat flour were manufactured. Menu Foods' current recall list includes 220 different products.

15.    On March 30, 2007 Menu Foods asserted that the pet food manufactured in its Emporia, Kansas and Pennsauken, New Jersey facilities after March 6 is "safe and healthy" because it contains no melamine, no wheat gluten from Xuzhou, and that "those products not associated with the suspect wheat gluten performed very well and in a manner consistent with historic norms."

16.    Menu Foods has admitted that certain of its pet food products produced between November 8, 2006 and March 6, 2006 contained contaminants and that its products

6

EXHIBIT 8

were contaminated and adulterated, defective and potentially causing injury and death to dogs and cats. See generally Exhibit 2.

## FDA and State Regulatory Confirmation of Contamination and Adulteration

17.     The United States Food and Drug Administration ("FDA") has confirmed the existence of melamine in the recalled Menu Foods products and Cornell University has confirmed the existence of melamine in the urine and feces of deceased cats that were part of a taste testing study for Menu Foods. Exhibit 3 (http://www.fda.gov/cvm/MenuFoodRecallFAQ.htm).

18.     The FDA has concluded that the "association between melamine in the kidneys and urine of cats that died and melamine in the food they consumed is undeniable. Additionally, melamine is an ingredient that should not be in pet food at any level." Exhibit 3 (http://www.fda.gov/cvm/MenuFoodRecallFAQ.htm).

19.     The FDA reported that as many as one in six dogs and cats died in tests conducted by Menu Foods on its pet food products in February 2007 after Menu Foods received reports that its pet food was poisoning and killing pets. The FDA also has reported receiving thousands of consumer complaints about Menu Foods pet products from veterinarians and people having dogs and/or cats that consumed the tainted food. See generally Exhibit 3 (http://www.fda.gov/cvm/petfoods.htm).

20.     On March 23, 2007 New York State health officials reported that laboratory tests of the recalled Menu Foods products revealed the presence of aminopterin (rat poison) at levels of at least 40 parts per million. The pet food samples were tested by the New York State Animal Health Diagnostic Center at Cornell University and New York State Food

7

EXHIBIT _B_

Laboratory, which identified aminopterin as a contaminant. Exhibit 4

(http://www.agmkt.state.ny.us/AD/release.asp?ReleaseID=1598).

    21.    The ACVIM has "recommended that pets (dogs and cats) that ingested pet

food that was on the recall list, whether showing signs of illness (lethargy, vomiting, diarrhea,

anorexia, etc.) or not (asymptomatic) should be seen by their veterinarian for baseline blood

chemistries and urinalysis in order to ascertain the status of their renal (kidney) function. (The

ACVIM is the Official Organization of the Veterinary Specialties of Small Animal Internal

Medicine, Large Animal Internal Medicine, Cardiology, Neurology, and Oncology)

http://www.acvim.org/)." (emphasis added).

### Hawai'i Food, Drug and Cosmetic Act – HRS Chapter 328

    22.    Under the Hawai'i Food, Drug and Cosmetic Act "food" is defined as

"articles used for food or drink by humans, dogs or cats." HRS § 328-1.

    23.    HRS Chapter 328 applies to Defendants because they are engaged in the

"selling of food… includ[ing] the manufacture, production, processing, packing, exposure, offer,

possession, and holding of any such article for sale…" HRS § 328-5.

    24.    Under "HRS §328-6, Prohibited acts, the following acts and the causing

thereof within the State by any person are prohibited: (1) The manufacture, sale, delivery,

holding, or offering for sale of any food, drug, device, or cosmetic that is adulterated or

misbranded…"

    25.    Under Hawai'i Administrative Rules §11-29-3(b) "[d]og and cat

food…shall mean a food that is wholesome and nutritious for dogs and cats…."

8

EXHIBIT 3

26.    Under HRS § 328-9(1), "A food shall be deemed to be adulterated... (A) If it bears or contains any poisonous or deleterious substance which may render it injurious to health...[or]...(C) If it ....is otherwise unfit for food..."

27.    Defendant sold pet food products that -- by Defendants' own admissions and the findings of federal and state agencies-- were adulterated within the meaning of HRS Chapter 328, that contained poisonous or deleterious substances which may render them injurious to health and/or that were otherwise unfit for food.

28.    Defendants' recall of its pet food products confirm that its products were unfit for food.

III.    PLAINTIFF

29.    Plaintiff Yvonne Ortiz is a resident of the City and County of Honolulu who owns three cats and a dog.

30.    Until the Menu Foods recall was announced, Ms. Ortiz regularly purchased Priority One Dogfood and Priority One Catfood for her pets at Safeway Supermarket in downtown Honolulu.

31.    Between November 8, 2006 and March 6, 2006, Ms. Ortiz purchased Priority One Dogfood and Priority One Catfood for her pets at Safeway Supermarket in downtown Honolulu.

32.    The Priority One Dogfood and Priority One Catfood purchased by Ms. Ortiz are on the Menu Foods recall list of contaminated food products.

IV.    DEFENDANTS

33.    Defendant Menu Foods, Inc. is a New Jersey Corporation with its principal place of business at 9130 Griffith Morgan Lane, Pennsauken, New Jersey 08110.

9

EXHIBIT  6

34.    Defendant Menu Foods Income Fund is an unincorporated company established under Ontario, Canada law pursuant to a declaration of trust dated May 22, 2002. Menu Foods Operating Trust maintains its headquarters at 8 Falconer Drive, Streetsville, Ontario, Canada  L5N

35.    Defendant Menu Foods Holdings, Inc. is a Delaware Corporation which owns Defendant Menu Foods, Inc.  Defendant Menu Foods Holdings, Inc. maintains the Corporation Trust as its registered agent for service of process at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware  19801.

36.    On information and belief, Defendants Menu Foods Inc., Menu Foods Income Fund and Menu Foods Holdings, Inc. operate in the United States and Canada through a series of interlocking companies including, but not limited to, Menu Foods Midwest Corporation, Menu Foods Trust, Menu Foods Operating Trust, Menu Foods Limited Partnership, Menu Foods Acquisitions, Inc., and Menu Foods Limited, all of which are Canadian business entities located at 8 Falconer Drive, Streetsville, Ontario, Canada.

37.    At all times relevant, Defendants Menu Foods Inc., Menu Foods Income Fund and Menu Foods Holdings, Inc., Menu Foods Midwest Corporation, Menu Foods Trust, Menu Foods Operating Trust, Menu Foods Limited Partnership, Menu Foods Acquisitions, Inc. and Menu Foods Limited are affiliates and/or subsidiaries and/or alter egos, such that the actions of one are attributable to each other entity.

38.    At all times relevant, Menu Foods was responsible for the actions or inactions of its suppliers, including the suppliers of tainted ingredients, that is the subject of this lawsuit.

10

EXHIBIT ___B___

39.     At all times relevant, Menu Foods has transacted business in the state of Hawai'i through its distribution and sale of food products. Menu Food products are subject to the requirements of the Hawai'i Food, Drug & Cosmetic Act, HRS Chapter 328, which applies to all foods for dogs and cats sold in the state of Hawai'i.

40.     DOE Entities and Individuals 1-100 are sued herein under fictitious names because their true names and capacities, whether individual, corporate, associate, or otherwise are unknown to Plaintiff. These defendants might be liable for the acts complained of herein, directly or vicariously. When the true names and capacities are ascertained, Plaintiff asks leave to amend this Complaint to state the true names.

41.     Through investigation and research, Plaintiff has diligently and in good faith attempted to ascertain the names and identities of the possible Doe Entities and Individuals, but those identities remain unknown to Plaintiff. Further efforts to identify these defendants will be made during discovery in this case.

V.     NON-REMOVABILITY

42.     Pursuant to 28 U.S.C. § 1332(d)(2) and (d)(6), the individual class members aggregated claims and the amount in controversy does not exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and inclusive of attorneys fees..

43.     Pursuant to *Lowdermilk v. U.S. Bank National Association*, 479 F.3d 994 (2007), this action is not removable to federal court and if removed, Menu Foods has the burden of proving to a "legal certainty" the jurisdiction of any federal court over this action, i.e., that the amount in controversy exceeds the sum or value of $5,000,000.00.

11

EXHIBIT __B__

VI.    CLASS ALLEGATIONS

44.    Representative Plaintiff brings this action as a class action under Hawai'i Rules of Civil Procedure 23(a) and (b)(1), (b)(2) and (b)(3) on behalf of herself and all others similarly situated, as members of a proposed plaintiff class defined as:

> All Hawai'i consumers who purchased pet food on the Menu Foods recall list between November 8, 2006 and March 6, 2007.

45.    Excluded from the Class are the following: (a) Defendants; (b) Defendants' subsidiaries, parents, and affiliates, including all directors, officers, and employees thereof; (c) members of the immediate family of any of the foregoing, if natural persons; (d) the legal representatives, heirs, successors, and assigns of any of the foregoing; (e) any person in which any of the foregoing has a controlling interest, and (f) any claim for personal injury for any pet.

46.    Class requirements under HRCP 23(a) are met:

a.    The Class is so numerous that joinder of all members is impractical. There are several thousand potential members of the Class.

b.    There are questions of law and fact common to the Class as follows:

1.    All Class members are consumers who purchased Menu Foods products during the Class period.

2.    Menu Foods purchase of pet food product ingredients containing rat poison and melamine.

EXHIBIT B

3.    Menu Foods' conduct in failing to adequately test and/or inspect its products for rat poison and melamine.

4.    Menu Foods sale and marketing of food products that were adulterated and/or unsafe for their intended purpose.

c.    The claims of the Representative Plaintiff are typical of the claims of the Class because Representative Plaintiff and all Class members were damaged by the same wrongful conduct of Menu Foods.

d.    The Representative Plaintiff will fairly and adequately represent the interests of the Class. The interests of Representative Plaintiff are coincident with, and not antagonistic to, those of the Class. Therefore, Representative Plaintiff has no conflict of interest with the Class. In addition, Representative Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex class action litigation.

47.    Class requirements under HRCP 23(b)(1) are met because the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.

48.    Class requirements under HRCP 23(b)(2) are met because the party opposing the Class (Defendants herein) have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

49.    Class requirements under HRCP 23(b)(3) are met because:

a.    The questions of law and fact common to the members of the Class are important and predominate over any questions affecting only individual members regarding:

13

EXHIBIT _B_

(1)    The legal obligations of Defendants;

(2)    The knowledge and conduct of the Defendants;

(3)    Damages to Class Members.

50.    Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. There are no difficulties likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of the controversy. Separate cases could produce varying adjudications with respect to individual members, resulting in conflicting and incompatible standards of conduct.

## COUNT I
### (DECLARATORY AND INJUNCTIVE RELIEF)

51.    Representative Plaintiff realleges and incorporates all the above allegations.

52.    The conduct of Menu Foods as alleged herein violates Hawai'i Revised Statutes Chapter 328, the Hawai'i Food, Drug and Cosmetic Act. Pursuant to HRCP 23(b)(2) and the Hawai'i Declaratory Judgment Act, Plaintiffs are entitled to a declaration that Menu Foods sold adulterated pet food in violation of the Hawai'i Food, Drug & Cosmetic Act, HRS Chapter 328, which prohibits the manufacture, sale, delivery, holding, or offering for sale of any food, drug, device, or cosmetic that is adulterated because it contains a poisonous or deleterious substance which may render it injurious to health.

14

EXHIBIT B

53.     Plaintiffs also seek an injunctive relief to: (1) preclude Menu Foods for selling adulterated pet food in the State of Hawai'i, (2) ensure that no adulterated pet food is still being sold in the Sate of Hawai'i, and/or (3) to pay for the costs of veterinary screening examinations for any pet that consumed the contaminated food.

## COUNT II
### (NEGLIGENCE/GROSS NEGLIGENCE)

54.     Representative Plaintiff realleges and incorporates all the above allegations.

55.     Defendants, as North America's leading manufacturer of wet dog and cat foods—for more than 95 different brands—owed a duty to the representative Plaintiff and the Class, as reasonably foreseeable consumers of its products, that its pet foods were not unsafe for dogs and cats.

56.     Despite the fact that Defendants were purchasing a major ingredient used in many of its foods from a new supplier, Defendants were negligent in selecting the ingredient producer and/or did not test or otherwise determine whether or not the wheat gluten it was purchasing was safe for its intended purpose–consumption by dogs and cats—prior to incorporating it into the more than 95 different brands it manufactures. In so doing, Defendants breached their duty of care owed the representative Plaintiff and the Class by failing to use sufficient quality control or perform adequate testing or manufacturing practices. The conduct of Menu Foods as alleged herein constitutes negligence, proximately causing monetary damage to the Representative Plaintiff and the Class.

EXHIBIT __B__

57.     Menu Foods actions and omissions as alleged herein relating to the sale, delivery, and offering for sale of adulterated food products were done in violation of HRS 328-6, and therefore constitute evidence of negligence.

58.     Menu Foods further breached their duty of care owed to the representative Plaintiff and the Class by failing to take sufficient measures in a timely fashion to prevent their products from being offered for sale, sold, or fed to pet dogs and cats —particularly when Menu Foods knew or should have known their products were unsafe after receiving numerous complaints from veterinarians and consumers and after conducting its own internal testing.  The conduct of Menu Foods as alleged herein constitutes gross negligence as it was willful, wanton, and reckless and done in conscious disregard for the safety and rights of the representative Plaintiff and the Plaintiff Class, proximately causing monetary damage to representative Plaintiff and the Plaintiff Class and entitling them to an award of punitive damages.

## COUNT III
### (STRICT PRODUCTS LIABILITY)

59.     Representative Plaintiff realleges and incorporates all the above allegations.

60.     Menu Foods is strictly liable for supplying a product that was either: (1) defective in its manufacture by virtue of the introduction of toxic contaminants, including, but not limited to, aminopterin and melamine, into a product while under Menu Foods control, such that it failed to meet the reasonable expectations as to its safety, or, (2) defective in its design by virtue of the lack of testing and/or safeguards necessary to ensure that toxic contaminants, including aminopterin and melamine, were not introduced into its pet food while under Menu

16

EXHIBIT     B

Foods control, such that the products failed to meet the reasonable expectations of the representative Plaintiff and Class, with regard to their dogs and/or cats' safety.

61.    The representative Plaintiff and Class, as owners of dogs and/or cats, are ordinary and reasonably foreseeable users of Defendants' pet food products and purchased the defective products in a foreseeable manner and for their intended purpose, in that they purchased it to feed to their dogs and/or cats. Menu Foods' manufacture and/or design of defective pet food products proximately caused the representative Plaintiff and Class to suffer monetary damages for which Menu Foods is strictly liable.

## COUNT IV
### (Breach of Express or Implied Warranties)

62.    Representative Plaintiff realleges and incorporates all the above allegations.

63.    Menu Foods, by calling its products "food" and making other similarly enticing representations including that its pet food products were "safe, nutritious and of high quality," impliedly and/or expressly warranted that its products were ingestible and would not sicken and/or kill the dogs and cats that ate them. Menu Foods also warranted thereby that their products were merchantable and fit for their intended purpose of nourishing dogs or cats.

64.    Menu Foods products, as described more fully in the body of the Complaint, were in fact, unmerchantable and unfit for their intended purpose of nourishing dogs and cats. Menu Foods therefore breached express and/or implied warranties of merchantability. The representative Plaintiff and Class were damaged thereby and entitled to monetary damages

17

EXHIBIT  B

## COUNT V
### (UNFAIR AND DECEPTIVE ACTS OR PRACTICES)

65.     Representative Plaintiff realleges and incorporates all the above allegations.

66.     The conduct of Menu Foods as alleged herein constitutes an unfair or deceptive act or practice prohibited by HRS Chapter 480, proximately causing monetary damage to the Representative Plaintiff and the Class.

## COUNT VI
### (UNJUST ENRICHMENT/DISGORGEMENT)

67.     Representative Plaintiff realleges and incorporates all the above allegations.

68.     The conduct of Menu Foods has resulted in their unjust enrichment, which amounts should be disgorged to the Representative Plaintiff and the Class.

## COUNT VII
### (NONDISCLOSURE)

69.     Representative Plaintiff realleges and incorporates all the above allegations.

70.     The conduct of Menu Foods as alleged herein constitutes nondisclosure, proximately causing monetary damage to the Representative Plaintiff and the Class.

WHEREFORE, Representative Plaintiff asks the Court for the following relief and seeks judgment against Menu Foods as follows:

18

EXHIBIT ___B___

A.    That the court certify a declaratory and injunctive class pursuant to HRCP 23(a) and 23(b)(2) and grant the declaratory and injunctive relief requested herein.

B.    That the court certify a damages class pursuant to HRCP 23(a) and 23(b)(1) and/or 23(b)(3) and grant the damages requested herein.

C.    That the Class be defined as requested and notice be given to all potential Class members in a form and manner to be determined by the court upon Representative Plaintiff's motion to certify the Class;

D.    That any and all other appropriate steps be taken to protect the rights of the Class members;

E.    That general, special and consequential damages be awarded pursuant to HRS § 480-13 and/or common law for the Representative Plaintiff and the Class as is established at the time of trial, including the cost of the food purchase and consequential damages for veterinary screening examinations as recommended by the ACVIM.

F.    That treble damages be awarded pursuant to HRS § 480-13 or punitive damages be awarded for Menu Food's gross negligence and/or wanton and reckless conduct;

G.    That the Court award costs of suit, pre-judgment and post-judgment interest, and attorneys' fees pursuant to HRS Chapter 480 or as otherwise allowed by law; and such other relief as this Court deems just and proper, including the $5,000 alternative minimum damages awardable to any member of the Class who is an elder pursuant to the provisions of HRS Chapter 480; and

H.    That the Court provide any and all equitable relief that it deems just and proper.

19

EXHIBIT B

Dated: Honolulu, Hawai'i   MAY 1 1 2007

_____
THOMAS R. GRANDE
EMILY A. GARDNER
Attorneys for Plaintiff

20

EXHIBIT B