DAVIS LEVIN LIVINGSTON GRANDE

THOMAS R. GRANDE  3954
851 Fort Street, Suite 400
Honolulu, Hawaii 96813
Telephone: (808) 524-7500
Facsimile: (808) 356-0418
Email: tgrande@davislevin.com

EMILY A. GARDNER   6891
Attorney at Law
Dillingham Transportation Building
735 Bishop Street, Suite 402
Honolulu, Hawaii  96813
Telephone: (808)-540-0200
Facsimile: (808)-540-0201
Email: eagardner@hawaii.rr.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| YVONNE ORTIZ, individually and on behalf of all other similarly situated persons, | ) ) ) | Civil No.  CV07-00323 DAE LEK (Class Action) |
| Plaintiff, | ) ) ) | PLAINTIFF'S RESPONSE TO MENU FOODS HOLDINGS, INC.'S OBJECTIONS TO THE |
| v. | ) ) ) | FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY |
| MENU FOODS, INC., a New Jersey Corporation; MENU FOODS HOLDINGS, INC.,  a Delaware Corporation,  MENU FOODS INCOME FUND, an unincorporated Canadian business; DOE ENTITIES and INDIVIDUALS 1- 100, | ) ) ) ) ) ) ) | IN PART PLAINTIFF'S MOTION FOR REMAND AND ORDER DENYING DEFENDANTS' MOTION TO STAY AS MOOT, FILED 8/21/07; CERTIFICATE OF |
| Defendants. | ) | SERVICE |

**PLAINTIFF'S RESPONSE TO MENU FOODS HOLDINGS, INC.'S
OBJECTIONS TO THE FINDINGS AND RECOMMENDATION
TO GRANT IN PART AND DENY IN PART PLAINTIFF'S
MOTION FOR REMAND AND ORDER DENYING
DEFENDANTS' MOTION TO STAY AS MOOT, FILED 8/21/07**

## TABLE OF CONTENTS

I.     Introduction ....................................................................................... 1

II.    Legal Standards ................................................................................. 3

   A.   Standard of Review for Magistrate Judge's Non-Dispositive Ruling ........... 3

      1.   Standards for Removal Generally .......................................................... 6
      2.   Proponent of Federal Jurisdiction Bears Burden of Proof ........................... 6
      3.   Removal Statute Strictly Construed Against Removal ................................. 7
      4.   Plaintiff is the Master of her Complaint ................................................. 7
      5.   Where Plaintiff Avers Amount in Controversy, Defendant Bears   Greater
           Burden of Proof, Absent Showing of Bad Faith ......................................... 8

III.   Menu's Objections to the Magistrate Judge's Order .................................. 12

IV.    Argument ......................................................................................... 13

   A.   The Magistrate Judge's Ruling is Not Contrary to Law Because She  Held
        Menu to the "Legal Certainty" Burden of Proof Required by Law ............. 14

   B.   The Magistrate Judge's Ruling is Not Clearly Erroneous Because She
        Properly Considered All Categories of Damages in Making her
        Determination that Menu Failed to Prove the Amount in Controversy to a
        Legal Certainty ................................................................................. 17

V.     Menu's Arguments About MDL Transfer Are Irrelevant ............................ 19

VI.    The Motion to Stay Should Be Upheld ................................................... 21

VII.   Conclusion ....................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

<u>Abrego Abrego v. The Dow Chemical Co.</u>, 443 F.3d 676, 685 (9th Cir.2006).....6

<u>Bednarz v. Frank</u>, 2007 WL 707541 (D. Hawaii  2007) ........................................4

<u>Burdick v. Comm'r Internal Revenue Serv.</u>, 979 F.2d 1369, 1370 (9th Cir.1992) 4

<u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 398-99, 107 S.Ct. 2425, 96 L.Ed.2d
   318 (1987)........................................................................................................7

<u>Christian v. White</u>, 2007 WL 461303, at * 2 (D. Hawaii  2007)...........................3

<u>Conant v. McCoffey</u>, No. C 97-0139 FMS, 1998 WL 164946, at *2
   (N.D.Cal.1998) ...............................................................................................4

<u>Duncan v. Stuetzle</u>, 76 F.3d 1480 (9th Cir. 1996) ...................................................6

<u>Ethridge v. Harbor House Restaurant</u>, 861 F. 2d 1389, 1393 (9th Cir. 1988).........7

<u>Faulk v. Owens-Corning, Fiberglass Corp.</u>, 48 F.Supp. 2d 653, 657 n.2 (E.D.
   Texas Beaumont Division 1999) ......................................................................20

<u>Fu's Garden Restaurant v. Archer-Daniels-Midland Company</u>, 2000 WL 635440,
   *1 (N.D. ..........................................................................................................20

<u>Grimes v. City and County of San Francisco</u>, 951 F.2d 236, 241 (9th Cir.1991)..4

<u>Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.</u>, 535 U.S. 826, 831,
   122 S. Ct. 1889, 153 L.Ed.2d 13 (2002) ...........................................................7

<u>In Re Pet Food Products Liability Litigation</u>, MDL 1850 (Picus v. Walmart, et
   al., U.S.D.C. Nevada) ......................................................................................19

<u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377, 114 S.Ct. 1673,
   128 L.Ed.2d 391 (1994)....................................................................................7

Lowdermilk v. U.S. Bank National Ass'n, *479* F.3d 994 (9th Circuit, 2007)1, 8, 9, 10, 11, 12, 18, 22

McDonnell Douglas Corp. v. Commodore Bus. Machs., 656 F.2d 1309 (9th Cir. 1981) ...................................................................................................4

Office of Hawaiian Affairs v. Department of Education, 951 F. Supp. 1484 (D. Haw. 1997) .............................................................................................6

Samuel v. Langham, 780 F. Supp. 424, 427 (N.D. Tex. 1992) .............................7

Sanchez v. Monumental Life Insurance Co., 102 F. 3d 398 (9th Cir. 1996)...........6

Serrano v. 180 Connect, Inc., 478 F.3d 1018 (9th Cir. 2007) ...............................6

St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89, 58 S.Ct. 586, 82 L.Ed. 845 (1938)...........................................................................7, 8, 12

U.S. Pac. Builders v. Mitsui Trust & Banking, 57 F.Supp.2d 1018 (D.Hawaii 1999) ..................................................................................................4, 5

U.S. v. Geary, 2007 WL 1266069 *2 D. Hawaii  2007) ........................................4

Valles v. Ivy Hill Corp., 410 F.3d 1071, 1075 (9th Cir. 2005) ..............................7

## STATUTES

28 U.S.C. § 1332 (2005) ................................................................1, 6, 8, 9, 11, 21

28 U.S.C. § 1332(d) .............................................................................................6

28 U.S.C. § 1441(a) .............................................................................................6

## **RULES**

Local Rules of Practice for the United States District Court for the District of
Hawaii 74.1 ............................................................................................ 3, 4, 5, 13

Local Rules of Practice for the United States District Court for the District of
Hawaii 74.2 ................................................................................................. 4, 5

# I.  INTRODUCTION

This state class action was brought on behalf of Hawaii consumers who purchased adulterated pet food products manufactured by Defendants.  It seeks recovery under Hawaii's consumer protection laws.  Significantly, the case is not a personal injury case in which Plaintiff is seeking any damages for the death or illness of her pets.  The case seeks a return of moneys paid for adulterated pet food and for veterinary screening tests performed on pets exposed to the defective pet food products.

The Class Action Fairness Act ("CAFA")[1] and <u>Lowdermilk v. U.S. Bank National Ass'n</u>, 479  F.3d 994 (9th Circuit, 2007) firmly establish that because Plaintiff affirmatively, and in good faith, claimed an amount in controversy less than $5 million, Defendants Menu were required to prove to a "legal certainty," based on specific, non-speculative evidence or "concrete evidence" that the amount in controversy, exclusive of interest and costs, exceeds $5 million in order to maintain federal jurisdiction.  Neither CAFA nor <u>Lowdermilk</u> and its related line of cases establish that Defendants are entitled to federal jurisdiction merely if they are able to submit "credible and reliable statistical evidence" demonstrating that the amount in controversy could exceed $5 million in sum or value, as Defendants claim.  See Menu Objections at 1.

---

[1] The Class Action Fairness Act of 2005, 28 U.S.C. § 1332 (2005).

Menu's failure to carry its burden to meet the minimum jurisdictional amount or to show error by the Magistrate Judge is underscored by its claim:

> Importantly, Menu Foods is a manufacturer and does not sell pet food directly to consumers; it, therefore, is in no better position to assess market share in individual states than Plaintiffs.

Menu Objections at 2-3 (emphasis added).  Menu's claim that it "is in no better position" than Plaintiff to assess market share, while certainly suspect, supports its abject failure to meet the requisite legal certainty standard.  While it may be true that Menu is a manufacturer, by virtue of the fact that it does deal directly with the branded companies and most likely some of their distributors, it is certainly in a better position than the Plaintiff to determine market share in individual states, or form a reasonable estimate on what this could be.[2]

---

[2] See  Menu Objections, Exhibit D, Declaration of Paul Henderson, at para 5:

> Although Menu Foods has sales data relating to gross sales and the branded companies, these figures do not reflect (1) the retail price that consumers pay; or (2) the volume of sales to consumers by state.  Such figures may be in the possession of the retailers and branded companies that Menu Foods sells to…"

Emphasis added.  Here, Menu admits that entities it regularly engages in business that may have the data needed to correctly establish Hawaii's market share, but instead relied on data provided by entities with which it does not regularly engage in business, the American Veterinary Medical Association and the Humane Society of the United States, to establish its product sales volume in Hawaii.

2.  As noted in the Declaration of Paul Henderson, at para 1, Mr. Henderson is the Chief Executive Officer of Menu Foods GenPar Limited.

Instead of offering any concrete product sales data, it submitted sparse, general statistics from the American Veterinary Medical Association (AVMA) and the Humane Society of the United States -- entities that are clearly not in a position to provide concrete evidence about market share -- leaving the Court to engage in conjecture and speculation.  E.g., Menu Objections, Exhibit A: Findings and Recommendation at 21 ("Instead of relying on such specific data that would assist the Court in determining whether the amount in controversy exceeds $5 million, MFH relies on general statistics, leaving the Court to speculate about the number of animals affected.") and 23 ("In the absence of concrete evidence, the Court cannot determine the amount in controversy with any certainty.").

In their appeal, and as demonstrated below, Defendants have failed to carry its burden to show that the Magistrate Judge's order was: (1) clearly erroneous or (2) contrary to law, and as shown by the facts and law applicable to this case, the Magistrate's Order should therefore be affirmed.

## II.  LEGAL STANDARDS

## A.    <u>Standard of Review for Magistrate Judge's Non-Dispositive Ruling</u>

This is an appeal of a non-dispositive motion and is therefore governed by the standards contained in Local Rules of Practice for the United States District Court for the District of Hawaii 74.1.  As stated in <u>Christian v. White</u>, 2007 WL 461303, at * 2 (D. Hawaii  2007):

A district judge "shall set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." LR 74.1. To find a magistrate judge's decision to be "clearly erroneous," the district court must have a "definite and firm conviction that a mistake has been committed." Burdick v. Comm'r Internal Revenue Serv., 979 F.2d 1369, 1370 (9th Cir.1992) ("A finding of fact is clearly erroneous if we have a definite and firm conviction that a mistake has been committed."). "The reviewing court may not simply substitute its judgment for that of the deciding court." Grimes v. City and County of San Francisco, 951 F.2d 236, 241 (9th Cir.1991). "A decision is 'contrary to law' if it applies an incorrect legal standard or fails to consider an element of the applicable standard." Conant v. McCoffey, No. C 97-0139 FMS, 1998 WL 164946, at *2 (N.D.Cal.1998).

In various portions of its memorandum in support of its argument, Menu erroneously cites Local Rule 74.2 and claims a *de novo* standard of review, which does not apply in this case.  Local Rule 74.2 governs only appeals of *dispositive* motions.  E.g., Menu Objections at 1, 8-9 erroneously citing Local Rule 74.2; erroneously citing Bednarz v. Frank, 2007 WL 707541 (D. Hawaii  2007) (appeal under LR 74.2); erroneously citing U.S. Pac. Builders v. Mitsui Trust & Banking, 57 F.Supp.2d 1018 (D.Hawaii 1999) (appeal under LR 74.2) and erroneously citing McDonnell Douglas Corp. v. Commodore Bus. Machs., 656 F.2d 1309 (9th Cir. 1981) (appeal under 28 USC 636(b)(1)(B)).  Compare LR 74.2, U.S. v. Geary, 2007 WL 1266069 *2 D. Hawaii  2007) ("On the other hand, if the matter is dispositive, the district court makes a *de novo* review of the magistrate judge's findings and recommendations.  A *de novo* review means "the court must consider

4

the matter anew, the same as if it had not been heard before and as if no decision previously had been rendered." U.S. Pac. Builders v. Mitsui Trust & Banking Co., 57 F.Supp.2d 1018, 1024 (D.Haw.1999).

Menu's improper reliance on Rule 74.2 is fatal to its appeal. As shown above, the Court cannot conduct a *de novo* review of this non-dispositive motion. While a *de novo* review could allow the Court to consider the issues anew and to "exercise discretion to receive further evidence…", under Local Rule 74.1, the Court is restricted to the record submitted to the Magistrate Judge in determining its ruling.

To this end, Menu Food's Exhibit D, the September 4, 2007 Declaration of Paul Henderson was not submitted to the Magistrate Judge and should be disregarded by the Court for this reason, among others.[3] (However, as shown below, even if the Court considers Mr. Henderson's declaration, Menu still fails to carry its burden to show that the Magistrate Judge's ruling was clearly erroneous or contrary to law.)

Because Defendants' appeal relates to a non-dispositive motion, Defendants are bound to the standard of review articulated by L.R. 74.1 and must show that the Magistrate Judge's Order was "clearly erroneous" or "contrary to law" based

5

solely on the record previously submitted to the Magistrate Judge.  Neither

Defendants' Memorandum nor admissible exhibits support such a conclusion.

**B.    Standard of Review for Removal**

**1.    Standards for Removal Generally**

A civil action in state court may be removed to federal district court if the

district court had "original jurisdiction" over the matter. 28 U.S.C. § 1441(a).  As

amended by CAFA, 28 U.S.C. § 1332(d) gives federal district courts "original

jurisdiction of any civil action in which, *inter alia*, the amount in controversy

exceeds the sum or value of $5,000,000, exclusive of interest and costs," and in

which the aggregate number of proposed plaintiffs is 100 or greater, and any

member of the plaintiff class is a citizen of a state different from any defendant

**2.    Proponent of Federal Jurisdiction Bears Burden of Proof**

The Ninth Circuit has ruled that "under CAFA the burden of establishing

removal jurisdiction remains… on the proponent of federal jurisdiction." Abrego

Abrego v. The Dow Chemical Co., 443 F.3d 676, 685 (9th Cir.2006) (per curiam);

See also Serrano v. 180 Connect, Inc., 478 F.3d 1018 (9th Cir. 2007) (holding that

the proponent of federal jurisdiction bears the burden of proving jurisdiction).

Sanchez v. Monumental Life Insurance Co., 102 F. 3d 398 (9th Cir. 1996); Duncan

v. Stuetzle, 76 F.3d 1480 (9th Cir. 1996); Office of Hawaiian Affairs v. Department

of Education, 951 F. Supp. 1484 (D. Haw. 1997).

### 3.    Removal Statute Strictly Construed Against Removal

Because federal courts are courts of limited jurisdiction, federal jurisdiction must be strictly construed. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); 13 Wright, Miller & Cooper, at § 3522.  As such, the removal statute is strictly construed against removal. Ethridge v. Harbor House Restaurant, 861 F. 2d 1389, 1393 (9th Cir. 1988).  Where there is doubt as to the right to removal in the first instance, ambiguities are to be construed against removal.  Samuel v. Langham, 780 F. Supp. 424, 427 (N.D. Tex. 1992).

### 4.    Plaintiff is the Master of her Complaint

Because it is well established that the plaintiff is "master of her complaint", subject to a "good faith" requirement in pleading, a plaintiff may sue for less than the amount she may be entitled to if she wishes to avoid federal jurisdiction and remain in state court.  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89, 58 S.Ct. 586, 82 L.Ed. 845 (1938).  See also Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 831, 122 S. Ct. 1889, 153 L.Ed.2d 13 (2002); Caterpillar Inc. v. Williams, 482 U.S. 386, 398-99, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); Valles v. Ivy Hill Corp., 410 F.3d 1071, 1075 (9th Cir. 2005).

Where the plaintiff has alleged her facts and pled her damages, and there is no evidence of bad faith, the defendant must not only contradict the plaintiff's own assessment of damages, but must overcome the presumption against federal jurisdiction.  St. Paul Mercury Indem. Co., 303 U.S. at at 290.

### 5.    Where Plaintiff Avers Amount in Controversy, Defendant Bears Greater Burden of Proof, Absent Showing of Bad Faith

In the Complaint in this case, Plaintiff expressly avers that the amount in controversy does not exceed $5 million, exclusive of interest and costs, and expressly disclaim federal jurisdiction.  Menu Objections, Exhibit B; Complaint, paragraphs 42 and 43 at 11.  Plaintiff made this statement in good faith and based it upon her review of product sales data available to them at the time of filing.

Where a complaint specifies an amount in controversy, the Court "need not look beyond the four corners of the complaint to determine whether the CAFA jurisdictional amount is met…"  Lowdermilk v. U.S. Bank National Ass'n, 479 F.3d 994, 998 (9th Circuit, 2007).  In assessing the jurisdictional amount, the court should initially look to whether Plaintiff avers damages that do not reach the threshold for federal jurisdiction.  Id.

In establishing the burden of proof required to confer federal jurisdiction, the Lowdermilk court went on to explain, "**absent evidence of bad faith, we are obliged to honor the representation of Plaintiffs' claimed jurisdictional amount… They are not obligated to overstate their damages to satisfy the**

**defendant's interest in a federal forum, but may plead conservatively to secure a state forum**. Id at 1003. (emphasis added)

The <u>Lowdermilk</u> court required that "the party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met." In proving that the jurisdictional amount is exceeded to a legal certainty, the "defendants cannot rely upon mere conjecture or speculation, but must instead advance a theory or theories supported by evidence from its own files that the jurisdictional minimum is exceeded"; or by providing "concrete evidence" showing the actual amount in controversy. <u>Id</u>. at 1000, 1001.

In <u>Lowdermilk</u>, defendant submitted a declaration to the court of (1) the estimated class size and (2) the estimated damage for each class member to support its contention that the jurisdictional amount was exceeded. <u>Id.</u> at 1000.

Notwithstanding its proffered declaration and supporting documentation, the Court in <u>Lowdermilk</u> rejected the evidence submitted by the defendant. In <u>Lowdermilk</u>, the case was brought on behalf of Defendants' employees, alleging that they were paid late wages after termination. <u>Id.</u> at 1000. Finding that the defendant offered "thin support" for its proffered numbers, <u>Id.</u> at 1001, the Court found that defendants' deficiencies included the following:

(1)     failing to prove to a legal certainty class size by providing no evidence of "how many...employees...would qualify as class members." Id. at 1001.

9

(2)    failing to prove to a legal certainty the amount of damages by providing no evidence and instead  "assume[ing] that all class members would be entitled to the maximum damages under Oregon law…"  Id. at 1001.

The Court found that the defendant did not come forward with "concrete evidence… to estimate with any certainty the actual amount in controversy."  Id. at 1001.  The Court reasoned that it is appropriate to place this burden on the defendant since only the defendant has access to evidence that would prove the jurisdictional amount or disprove Plaintiff's stated jurisdictional limit.  Id. at 1002 ("If Defendant, who is the only party with access to its employment records cannot more accurately approximate the class size, Plaintiff cannot be expected to plead her case with any more specificity than she did."  Id. at 1002.)

The Court in Lowdermilk ruled that absent Defendants' proffer of appropriate evidence as to "the size of the class, the amount of unpaid wages owed due to the rounding policy, and whether or not members of the class qualify for penalty wages; such speculation does meet the 'legal certainty' standard."  Id. at 1002.  The Court concluded that

> [W]e cannot base our jurisdiction on Defendant's speculation and conjecture. Even if we include attorneys' fees in the calculation, Defendant is no closer to carrying its burden because we simply have no basis for estimating the claims of the individual class members. Accordingly, we hold that at this juncture of the

litigation, Defendant has failed to prove with legal certainty that the amount in controversy meets CAFA's jurisdictional requirements.

Id. at 1002.

Thus, Lowdermilk established that Defendant's burden of proof needed to confer federal jurisdiction under CAFA when plaintiff has affirmatively claimed an amount in controversy less than $5,000,000, is that Defendants must prove to a legal certainty that the amount in controversy exceeds $5,000,000 by advancing a theory or theories supported by evidence from its own files that the jurisdictional minimum is exceeded, or by providing concrete evidence showing the actual amount in controversy.  In doing so, the defendants cannot rely upon mere conjecture or speculation. Id. at 1000, 1001.

Significantly, in forming the appropriate legal standard, the court in Lowdermilk acknowledged that "the legal certainty standard sets a high bar for the party seeking removal, but it is not insurmountable."  Id. at 1000.  The court then clearly articulated the conditions that are needed to meet the legal certainty standard when plaintiff has averred an amount in controversy.  They are: (1) when defendants advance theories of damages drawing on evidence from their own files, or (2) when defendants submit concrete evidence establishing the actual amount in controversy.

The court also ruled that where Plaintiff has pled an amount in controversy, as she has here, Defendants must not only contradict Plaintiff's own assessment but must overcome the presumptions against federal jurisdiction.  St. Paul Mercury Indem. Co., *supra* at 290.

Because all Menu has done is advance an alternative theory on damages based on speculative statistical analysis that the amount in controversy could exceed $5 million, it has failed to meet the "legal certainty" standard articulated in Lowdermilk and has failed to overcome the firmly established presumptions against federal jurisdiction.

## III.    MENU'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER

Menu asserts that the Magistrate Judge erred in two respects:

> (1)    When calculating the value of damages and relief sought by Plaintiffs to arrive at the amount in controversy, the Magistrate Judge failed to include one category of damages sought by Plaintiffs because she improperly considered the likelihood that Plaintiffs would not prevail in recovering those damages.

> (2)    The Magistrate Judge's finding that Menu Foods has not established that the amount in controversy was at least $5 million because its calculations were not based on company data improperly imposed a greater burden upon Menu Foods than the legal certainty standard.

Menu Objections at 9.

Whether these alleged errors are considered factual findings or legal conclusions, the Magistrate Judge ruled correctly.

Because Menu Foods makes only two specific allegations of error, the Court should accept the other findings and conclusions not appealed.[4]  These include:

(1)    "The Court finds that MFH has not satisfied its burden of establishing with legal certainty the amount of damages for veterinary screening." Menu Objections: Exhibit A:  Findings and Recommendations at 21.

(2)    "Aside from stating that Plaintiff's claims for food costs, punitive damages, and request for injunctive relief would increase the amount in controversy, MFH offered no evidence to support this assertion."  Id. at 23.

(3)    "Even if the Court were to give credence to MFH's approximation of attorneys' fees, it is of no consequence because MFH has failed to meet the legal certainty standard.  Adding $201,500 [in attorneys fees] to an unknown amount in controversy does not assist the Court in determining whether the jurisdictional amount is met."  Id. at 25.

## IV.    ARGUMENT

At the outset, Plaintiff again notes that a *de novo* review is not available under Local Rule 72.1, and that in order to prevail, Defendants must show that the Magistrate Judge's order was "clearly erroneous" or that it was "contrary to law."

---

[4] Under Local Rule 74.1, the Court has discretion to reconsider *sua sponte* any matter determined by the Magistrate Judge.

**A.**     **The Magistrate Judge's Ruling is Not Contrary to Law Because She Held Menu to the "Legal Certainty" Burden of Proof Required by Law**

Defendants claim that the Magistrate Judge's finding that Menu Foods has not established that the amount in controversy was at least $5 million because its calculations were not based on "company data" misstates the Judge's ruling. The Judge did not rule that Menu was not permitted to obtain the evidence it needed to meet the burden, but concluded that the evidence Menu relied on as the basis of its statistical analysis from the American Veterinary Medical Association and the Humane Society of the United States was general and speculative.

Plaintiff has searched the Magistrate Judge's Findings and Recommendation at page 21 and elsewhere, and has failed to find any ruling by the Magistrate Judge that "Company data" had to be used to establish legal certainty. The ruling on page 21 of the order states in pertinent part:

> [The Court] has concerns regarding MFH's estimates of the number of pets affected by the recall. MFH is in the best position to know how many pets might have been affected by the tainted food. Instead of relying on specific data that would assist the Court in determining whether the amount in controversy exceeds $5 million, MFH relies on general statistics, leaving the Court to speculate about the number of animals affected. See [Lowerdermilk] at 1002 ("If Defendant, who is the only party with access to its … records cannot more accurately approximate the class size, Plaintiff cannot be expected to plead her case with any more specificity.")

Menu Objections, Exhibit A:   Findings and Recommendation at 21.

Plainly stated, the purported error of law – requiring company data to prove jurisdiction – was not made by the Magistrate Judge.

Menu's real objection is not to the Magistrate Judge's Findings and Recommendation, but to Plaintiff pointing out to the Magistrate Judge that Menu withheld company data in its possession that would assist the Magistrate Judge in making her decision.

Because Menu did not disclose to the Court its own internal statistics to measure potential damages and class size, Plaintiff attached as Exhibit 1 to her Reply Memorandum in Support of Remand portions of the March 2007 "Menu Foods Income Fund Consolidated Balance Sheets *(All figures expressed in thousands of Canadian dollars, unaudited)"* Exhibit 1 at 1 (italics in original).

Under the Notes to Consolidated Financial Statements, Menu Foods Income Fund reported that

> The Fund's operations fall into one reportable business segment. The Fund is principally engaged in the manufacture of wet [pet food] products, where it serves major customers on a North American basis. Geographic segment information is presented below.

Plaintiff's Reply Memorandum, Exhibit 1 at 21.

Menu's quarterly sales for the last quarter of 2006 for "United States Domestic" was $56,907,000 Canadian, or a total of $227,628,000 Canadian for calendar year 2006.  Plaintiff then used Menu Foods' own internal statistics to

prove that the jurisdictional amount was not met. See Menu Objections, Exhibit A: Findings and Recommendations at 9 ("Using sales data from the Menu Foods Income Fund website, as well as statistics from the Census Bureau, Plaintiff estimates damages for the recalled pet food to total $295,601, or $886,803, if trebled.).

Contrary to Menu's representations, the issue on appeal is not "whether credible and reliable statistical evidence demonstrates that the amount in controversy exceeds $5 million in sum or value", Menu Objections at 1. As demonstrated above the law clearly requires more. The Magistrate Judge reviewed the general statements and data derived from the AVMA, Humane Society and U.S. Census Bureau and presented by Defendants, as well as their statistical analysis, found their conclusions relating to the amount of pet food sales in Hawaii to be speculative. Based upon this insufficient data, the Magistrate Judge determined that Menu failed to prove to a "legal certainty" that the amount in controversy exceeds $5 million—the burden required by law. Because the Magistrate Judge held Menu to the burden of proof required by law her ruling cannot be held "contrary to law" and must be upheld.

**B.**    **The Magistrate Judge's Ruling is Not Clearly Erroneous Because She Properly Considered All Categories of Damages in Making her Determination that Menu Failed to Prove the Amount in Controversy to a Legal Certainty**

Menu objects to the Magistrate Judge's omission of "one category of damages", which apparently is senior damages.[5]  However, as shown above, it was not the failure to include all categories that was the basis of the Magistrate Judge's ruling, but instead Menu's failure to introduce specific, concrete evidence in support of its position.

On the issue of senior damages, the Magistrate Judge ruled that:

> Menu assumes that the class size is 3,000 and the number of elders is 13.95% of the class, or 418.  Plaintiff counters that there is no evidence suggesting that Defendants targeted elders and as a consequence, it is inappropriate for MFH to include these calculations in the jurisdictional amount.

Menu Objections: Exhibit A: Findings and Recommendation at 22.  In rejecting Menu's argument that senior damages would be awarded the Magistrate Judge ruled:

> Clearly then, the mere fact that elders are part of the class is by no means a guarantee that they will be entitled to higher damages.  MFH assumes that all elders would be entitled to $5,000, but has not provided evidence to support this position.  First, it relies solely on general

---

[5] Menu's brief is unclear on this issue.  After initially claiming that senior damages were not properly included,  Menu later claims that the Magistrate Judge failed to "include all categories of damages and relief claimed by Plaintiff.  However, Menu fails to identify what other categories it is referring to.  Menu Objections at 10.

<u>statistics to estimate the number of elders in the class</u>.
Second, other than its bare assertion that the elders would
receive the damages, MFH has not provided the Court
with any evidence to address the foregoing factors, or
demonstrate why elder damages would be appropriate in
this case.  <u>In the absence of concrete evidence, the Court
cannot determine the amount in controversy with any
certainty</u>.

Menu Objections: Exhibit A: Findings and Recommendations at 23 (emphasis
added).

Contrary to Menu's assertions, the Magistrate Judge did not ""fail[ed] to
include one category of damages", Menu Objections at 9.  The Magistrate Judge
considered the category and ruled that Menu had failed to meet its burden because
it did not introduce any concrete or reliable evidence in support of its position.

Because Menu did not offer any evidence that it targeted seniors in the sale
of its poisoned pet food, the Magistrate Judge properly excluded that element of
damages from the jurisdictional computation.  As noted in <u>Lowdermilk</u>, it is not
appropriate to calculate a jurisdictional amount where "Defendant assumes that all
class members would be entitled to the maximum damages… but provides no
evidence to support this assertion". 479 F.3d at 1001.   Thus, there was no basis to
include alternative senior damages in the jurisdictional calculation and the finding
of the Magistrate Judge on this issue was not clearly erroneous.

However, even if the Judge did accept Menu's general statistical analysis as
providing the measure of senior damages to a legal certainty, the Judge would not

have a reliable figure to add senior damages to, because as shown above, Menu

failed to show the jurisdictional amount to a legal certainty.  Adding a known

figure to an unknown figure does not provide the legal certainty required by law.

## V. MENU'S ARGUMENTS ABOUT MDL TRANSFER ARE IRRELEVANT

      In its objections, Menu repeatedly emphasizes that the Court should consider

potential transfer to the MDL as support for Menu's position that it met its legal

certainty burden.  However, whether or not a case is appropriate for transfer to the

MDL should not be a basis for whether the jurisdictional limit is exceeded.  If

federal jurisdiction is established, then the appropriateness of MDL consolidation

will be determined by the MDL panel.

      However, in the MDL, Menu itself has argued against consolidation and in

favor of transfer back to the transferee court because of one of the cases (1)

involved state consumer protection statutes (like this case), (2) did not involve

injury to pets (like this case), and (3) did not involve the same class of plaintiffs

(like this case) as the national personal injury classes in most other MDL-

transferred cases.  In Re Pet Food Products Liability Litigation, MDL 1850 (Picus

v. Walmart, et al., U.S.D.C. Nevada):  Menu's Brief in Support of Joint Motion to

Vacate Conditional Transfer Order at 5-6.

      Moreover, Menu is just plain wrong when it implies that this Court lacks

jurisdiction to decide the motion for remand because the JPML has issued a

conditional transfer order.  Menu Objections at 7.

Under JPML Rule 1.5, this Court retains jurisdiction to decide the pending

motions to remand and stay:

> The pendency of a motion, order to show cause,
> conditional transfer order or conditional remand order
> before the Panel concerning transfer or remand of an
> action pursuant to 28 U.S.C. §1407 does not affect or
> suspend orders and pretrial proceedings in the district
> court in which the action is pending and does not in any
> way limit the pretrial jurisdiction of that court. A transfer
> or remand pursuant to 28 U.S.C. §1407 shall be effective
> when the transfer or remand order is filed in the office of
> the clerk of the district court of the transferee district.

When a notice of opposition to conditional transfer order is filed, the transferee

court "retains jurisdiction to decide [a pending motion to remand]." Fu's Garden

Restaurant v. Archer-Daniels-Midland Company, 2000 WL 635440, *1 (N.D.

Cal. 2000). Faulk v. Owens-Corning, Fiberglass Corp., 48 F.Supp. 2d 653, 657 n.2

(E.D. Texas Beaumont Division 1999).

Under JPML Rule 7.4(c), upon the receipt of the notice of opposition "the

Clerk of the Panel shall not transmit said [conditional transfer] order to the clerk of

the transferee district court until further order of the Panel." Because

"[c]onditional transfer orders do not become effective unless and until they are

filed with the clerk of the transferee district court," Rule 7.4(e), filing the notice of

opposition "stays execution of the [conditional transfer] order." Fu's Garden

Restaurant v. Archer-Daniels-Midland Company, 2000 WL 635440, *1 (N.D. Cal.

2000).  The conditional transfer order has not been filed with the Hawaii District Court clerk and this Court retains jurisdiction to determine whether there is federal jurisdiction under CAFA.

As a final matter, remand of this case to state court does not deprive the litigants of coordinated discovery and other pretrial matters.  Federal and state courts routinely coordinate state and federal cases that have common factual issues. See generally Manual for Complex Litigation (4th 2006) at 20.3 (Related State and Federal Cases).

## VI.    THE MOTION TO STAY SHOULD BE UPHELD

Menu has offered no argument in support of its position that the stay be overturned.  Respectfully, this Court should affirm the Magistrate Judge's decision in dismissing the stay motion as moot.

## VII.   CONCLUSION

Menu has failed to show that the Magistrate Judge was clearly erroneous in her factual determination that Menu failed to prove as a matter of fact that the jurisdictional limit was exceeded.  In doing so, the Magistrate Judge applied the correct standard of "legal certainty" and did not require that Menu prove the jurisdictional limit from its own company records (although it's company records plainly establish that the jurisdictional limit is not met), but determined that because Menu relied on general, non-concrete evidence it did not prove damages to

a "legal certainty."  In its objections, Menu seems to be asking the court to apply a new, lesser standard than established by <u>Lowdermilk</u>.  The Court, respectfully, should not apply such a standard, and as such, the Magistrate Judge's order should be upheld.

DATED:  Honolulu, Hawaii, April 14, 2007.

_____/s/ Thomas R. Grande_____
THOMAS R. GRANDE
EMILY A. GARDNER

Attorneys for Plaintiff
