IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| YVONNE ORTIZ, Individually and on behalf of all other similarly situated persons,<br><br>          Plaintiff,<br><br>   vs.<br><br>MENU FOODS, INC., a New Jersey corporation; MENU FOODS HOLDINGS, INC., a Delaware corporation; MENU FOODS INCOME FUND, an unincorporated Canadian Business; DOE ENTITIES and INDIVIDUALS 1-100;<br><br>          Defendants. | CV. NO. 07-00323 DAE/LEK<br>(Class Action) |

ORDER ADOPTING FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR REMAND AND ORDER DENYING DEFENDANTS' MOTION TO STAY AS MOOT

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing. After reviewing Defendants' objections (Doc. # 24) and the response and reply thereto, the Court ADOPTS the Magistrate Judge's Findings and Recommendation Granting in Part and Denying in Part Plaintiff's Motion for Remand and Order Denying Defendants' Motion to Stay as Moot (Doc. # 23). This Court hereby remands this case to State court.

## BACKGROUND

Plaintiffs[1] filed the instant class action lawsuit in State court based upon Defendants' manufacturing of allegedly contaminated and adulterated dog and cat food between approximately November 2006 and March 2007. Defendants' product was sold in stores throughout Hawaii. The food allegedly caused illness, injury, and/or death to cats and dogs. Defendants recalled approximately 220 different products. Plaintiffs seek relief for Hawaii consumers who purchased the contaminated food for their dogs and cats. Plaintiffs estimate that the class includes several thousand potential members.

Plaintiffs seek to recover the cost of the food purchased, the cost of veterinary screening to determine if pets were injured, treble damages pursuant to Hawaii Revised Statutes Chapter 480, statutory damages of $5,000 per elder plaintiff, punitive damages in the event treble and elder damages are not awarded, attorneys' fees, and injunctive relief. Plaintiffs state in their Complaint that the total amount in controversy does not exceed $5 million.

Defendants removed the case to this Court. Plaintiffs filed a motion for remand and Defendants filed a motion to stay proceedings pending a transfer

---

[1] Although the caption names only one plaintiff, and the Class has not yet been certified, this Court will refer to Plaintiff as Plaintiffs since this is a proposed class action lawsuit.

decision by the Judicial Panel on Multidistrict Litigation.  Defendants assert that there are over 100 federal actions involving the allegedly contaminated pet food.  On August 21, 2007, the Magistrate Judge issued a Findings and Recommendation to Grant in Part and Deny in Part Plaintiff's Motion for Remand and Order Denying Defendants' Motion to Stay as Moot ("F&R") (Doc. # 23).  The Magistrate Judge found that Defendants failed to prove by a legal certainty that they have met the $5 million amount in controversy requirement for this Court to have jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

On September 4, 2007, Defendants filed objections to the F&R (Doc. # 24).  Defendants argue that the Magistrate Judge improperly considered the likelihood that Plaintiffs would not prevail in recovering damages for elders, and that the Magistrate Judge imposed a greater burden on Defendants than required by expecting them to provide data that they do not maintain as part of their own records.  Plaintiffs filed a response on September 14, 2007.  Defendants requested permission to file a reply, which this Court granted.  After stipulating to a stay of the case for several weeks, the stay was automatically lifted and on October 30, 2007, Defendants filed a reply.

## STANDARD OF REVIEW

Defendants assert that this court should apply a de novo standard of review applicable to objections of findings and recommendations of a magistrate judge. Plaintiff argues that this Court should apply the clearly erroneous standard of review applicable to non-dispositive orders and appeals thereof.

Pursuant to Local Rule 74.2, when a party objects to a magistrate judge's dispositive order, findings, or recommendations, the district court must make a de novo determination. Under a de novo standard, this court reviews "the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered." Freeman v. DirecTV, Inc., 457 F.3d 1001, 1004 (9th Cir. 2006). "The court may 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.' The court also may receive further evidence or recommit the matter to the magistrate with instructions." McDonnell Douglas Corp. v. Commodore Bus. Machs., Inc., 656 F.2d 1309, 1313 (9th Cir. 1981) (citation omitted); LR 74.2.

Pursuant to Local Rule 74.1, a party may appeal any pretrial, nondispositive matter determined by a Magistrate Judge. Fed. R. Civ. P. 72(a); LR 74.1. A district court "shall set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." LR 74.1. To find a magistrate

judge's decision "clearly erroneous," the district court must have a "definite and firm conviction that a mistake has been committed." Burdick v. Comm'r Internal Revenue Serv., 979 F.2d 1369, 1370 (9th Cir. 1992) ("A finding of fact is clearly erroneous if we have a definite and firm conviction that a mistake has been committed."). "The reviewing court may not simply substitute its judgment for that of the deciding court." Grimes v. City and County of San Francisco, 951 F.2d 236, 241 (9th Cir. 1991). "A decision is 'contrary to law' if it applies an incorrect legal standard or fails to consider an element of the applicable standard." Conant v. McCoffey, No. C 97-0139, 1998 WL 164946, at *2 (N.D. Cal. March 16, 1998).

"Although not considered by the Ninth Circuit, several circuits have held that a motion to remand is to be treated as a dispositive motion." McClelland v. Merck & Co., CIV. No. 06-00543, 2007 WL 178293, *1 (D. Haw. Jan. 19, 2007) (citing cases); see also Thorp v. Kepoo, 100 F. Supp. 2d 1258, 1260 (D. Haw. 2000) (applying de novo standard of review to objections of a magistrate judge's findings and recommendation regarding remand).

Because a motion to remand effectively removes the case from this Court, because the Magistrate Judge determined that her decision should be a findings and recommendation, rather than an order, and because a de novo review

is more favorable to Defendants in this case, this Court will apply the de novo standard of review.

## DISCUSSION

This Court has original jurisdiction "of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which-- (A) any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(1). It is undisputed that the requirements of diversity and the minimal number of class members have been met in the instant case. The issue in this case is whether the amount in controversy requirement has been met. Plaintiffs assert that they were careful to specifically allege in their Complaint that the amount in controversy does not exceed $5 million, inclusive of attorneys fees. Defendants argue that despite Plaintiffs' disclaimer, they are able to establish with a legal certainty that the amount in controversy exceeds $5 million.

There are several burdens of proof that this Court must adhere to in determining the instant objections, all of which work in favor of the Plaintiffs and against Defendants. First, it is well settled that removal pursuant to 28 U.S.C. § 1441 is "to be strictly construed, and any doubts as to the right of removal must be resolved in favor of remanding to state court." Durham v. Lockheed Martin

Corp. 445 F.3d 1247, 1252 (9th Cir. 2006); Opuna, LLC v. Sabbagh, Civil No. 05-00488, 2006 WL 2374750, at *1 (D. Haw. Aug. 15, 2006) ("When a case is removed to federal court, there is a strong presumption against federal court jurisdiction," and any doubts regarding subject matter jurisdiction should be resolved n favor of remand).

Second, Defendants, as the removing party, bear the burden of establishing federal jurisdiction. Lowdermilk v. U.S. Bank National Ass'n, 479 F.3d 994, 997(9th Cir. 2007); Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1024 (9th Cir. 2007) ("the removing party bears the initial burden of establishing federal jurisdiction under § 1332(d)(2)"); see Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 682-83 (9th Cir. 2006).

Third, Plaintiffs are the master of their complaint and may plead that the damages at issue are less than that required for diversity jurisdiction in federal court in order to avoid federal jurisdiction. Lowdermilk, 479 F.3d at 998-99. Where a plaintiff does so, the court "need not look beyond the four corners of the complaint to determine whether the CAFA jurisdictional amount is met[.]" Id. at 998. Furthermore, where "there is no evidence of bad faith, the defendant must not only contradict the plaintiff's own assessment of damages, but must overcome the presumption against federal jurisdiction" and show with a "legal certainty" that the

amount in controversy exceeds $5 million. Id. at 999. Although not insurmountable, the legal certainty standard sets a high bar for Defendants. Id. at 1000.

        Defendants assert that the $5 million minimum is met by adding together the categories of damages. Defendants estimate the veterinary costs sought by Plaintiffs by multiplying a cost of $217 per veterinary screening examination by the total number of cats and dogs potentially affected by the recalled food. Defendants calculate the total number of pets affected through extrapolations from statistics from the Census Bureau, the Humane Society and the American Veterinary Medical Association ("AVMA"). Defendants start with the percentage of households in the entire nation that own at least one dog or cat. Defendants then apply that percentage to the number of households in Hawaii to determine how many households in Hawaii own cats or dogs. Defendants then take the national statistic for the average number of dogs and cats owned per household and apply it the number of households in Hawaii that own cats or dogs to determine how many cats and dogs are in Hawaii. Defendants conclude that there were 325,580 cats and 726,694 dogs in Hawaii in 2006. Defendants then state that the recalled pet food represented 1% of the total pet food sold. Applying

that percentage to the number of dogs and cats estimated to be in Hawaii, Defendants state that 7,262 pets were potentially affected by the pet food recall.

These calculations, however, do not take into account several factors that could reduce the total number of pets affected.  First, the calculations do not account for the fact that Hawaii may have a smaller percentage of households owning cats and dogs compared to the rest of the nation since Hawaii is a unique island State, which imposes quarantine on cats and dogs brought into the State.  Accordingly, many people who move here may not bring their pets with them because of the quarantine.  In addition, the calculations do not account for the possibility that some number less than 1% of the pet population may have been affected by the recalled food.  Indeed, the fact that the recalled food represented 1% of the total pet food sold, does not necessarily mean that 1% of the pet population of Hawaii consumed that food.  It could very well be that fewer pets ate more of the recalled food, or that people purchased the recalled food but threw it away upon notice of the recall, having never fed it to their pet.  Finally, the calculations do not address the fact that some pets may have been affected by the food, but the owners did not take that pet to the veterinarian and therefore, did not incur a screening cost, or the fact that some pets may have consumed the food but did not fall ill.  Accordingly, not all members of the class necessarily incurred

veterinary screening costs.  Therefore, although these statistics come from publically available information, Defendants' calculations call for too much extrapolation and speculation for this Court to determine by a legal certainty the number of pets affected.

Contrary to Defendants' argument, the instant case is not similar to the cases cited by Defendants in their brief.  For example, although the court in Espinosa v. Philip Morris USA, Inc., No. 07 C 231, 2007 WL 917383, at *2 (N.D. Ill. March 26, 2007) considered statistics from the United States government, the defendants presented evidence of the purchase price of the product and were required to prove the amount in controversy by only a preponderance of the evidence, rather than the higher standard of a "legal certainty."  Similarly, in Johnson v. Transamerica Occidental Life Ins. Co., No. 04-C-1205, 2005 WL 1138648, at *1 (E.D. Wis. May 13, 2005), the removing party was only required to meet its burden "by showing proof to a reasonable probability," something less than the legal certainty burden required here.  In In re Intel Corp. Microprocessor Antitrust Litigation, No. MDL 05-1717-JJF, Civ.A. 05-485-JJF, 2006 WL 1431214, at *2 (D. Del. May 22, 2006), the court was presented with more than U.S. Census data on the respective populations, computer ownership and purchases.  The court also received evidence of the average cost of personal

10

computers containing microprocessors, and the complaint contained information regarding Intel's share of the microprocessor market.

Defendants next claim that the Magistrate Judge erred by creating a standard requiring them to use their own data to meet the legal certainty test. Defendants are mistaken. The Magistrate Judge did not create such a standard. Instead, as is clear in the F&R, the Magistrate Judge noted that Defendants did not satisfy the legal certainty test and that they were in the best position to know how many pets might have been affected. (F&R at 21.) This by no means requires the Defendants to present evidence based on only their own records. Indeed, Defendants, knowing that they must meet the legal certainty burden, could have provided data which would help determine their market share. For example, Defendants could have provided information from their customers regarding the sales price of the pet food and how much pet food was sold during the time period at issue. Certainly, Defendants are in a better position than Plaintiffs to make such a request of their customers, gather such information, and present it to the Court. Not only are Defendants in a better position, but they are the party that must meet the legal certainty test. Furthermore, although not required, Defendants could have presented evidence from their own records of the number of units of products they sold to Hawai`i retailers, Defendants' wholesale price, and the number of units of

product recalled. It is possible that this number may have been enough to meet the statutory minimum, without taking into account any profit margin imposed by the retailers. Nonetheless, this type of evidence would certainly be more reliable than the extrapolations and calculations from statistics from the Census Bureau, the Humane Society, and the AVMA, that Defendants presented to this Court.

Defendants also assert that the Magistrate Judge erred by holding that the mere fact that elders are a part of the class is by no means a guarantee that they will be entitled to the higher damages amount of $5,000 each and noting that Defendants failed to present evidence to support this proposition.[2] Defendants

---

[2] Hawaii Revised Statutes section 480-13 provides that

where the plaintiff is an elder, the plaintiff, in the alternative, may be awarded a sum not less than $5,000 or threefold any damages sustained by the plaintiff, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit. In determining whether to adopt the $5,000 alternative amount in an award to an elder, the court shall consider the factors set forth in section 480-13.5."

Hawaii Revised Statutes section 480-13.5 provides that the court must consider the following:

(1) Whether the person's conduct was in wilful disregard of the rights of the elder;
(2) Whether the person knew or should have known that the person's conduct was directed toward or targeted an elder;
(3) Whether the elder was more vulnerable to the person's conduct than other consumers because of age, poor health, infirmity, impaired

contend that this language in the F&R placed an unfair burden upon them to prove that they targeted elders.  Defendants assert that the Magistrate Judge should have accepted instead the request in the complaint that the Court award the $5,000 minimum damages to each elder.

Defendants are correct that in order to establish the amount in controversy, they are not required to prove that they targeted elders and attempt to establish what Plaintiffs may actually recover.  Instead, the Court should assume liability and recovery of the amount alleged in the Complaint.  Indeed, the question is not what damages the plaintiff may actually recover, but what amount is in controversy between the parties.  See Budget Rent-A-Car, Inc. v. Higashiguchi, 109 F.3d 1471, 1473 (9th Cir. 1997) ("Events occurring after the filing of the complaint that reduce the amount recoverable below the requisite amount do not oust the court from jurisdiction.").

Defendants, however, have not proven by a legal certainty the amount of damages sought by the elders because they cannot prove how many elders are part of the class.  Defendants contend that 418 members of the proposed class are elders.  Defendants reach this number by taking the percentage of the 2006 Hawaii

---

understanding, restricted mobility, or disability;
(4) The extent of injury, loss, or damages suffered by the elder; and
(5) Any other factors the court deems appropriate.

13

population that was over age 65 and applying it to Plaintiff's allegation that the class is "several thousand" members. Defendants state that 13.95% of the 2006 Hawaii population is over age 65. Defendants state that because the Complaint alleges that the class is "several" thousand and several means more than two, the class at a minimum must be 3,000. 13.95% of 3,000 class members is 418.

Again, Defendants' calculations fail to take into account a factor that could reduce the number of elder class members. Specifically, there is no indication that all elders in the population own pets and/or purchase pet food. Indeed, although 13.95% of Hawaii's population is over 65 years of age, Defendants presented no evidence of what percentage of elders own pets. Thus, this Court cannot determine with legal certainty that 13.95% of the class would be elders.

The only damages that can be calculated by a legal certainty at this time for purposes of the amount in controversy are the cost of pet food based on Plaintiffs' assertion that the cost would total approximately $295,601, or $886,803, if trebled, and the possible Attorneys' Fees recoverable at $201,500. However, together those categories of damages total only $1,088,803, far from the $5 million that must be established for jurisdiction under CAFA. Therefore, because Defendants did not prove the veterinary screening costs and elders' damages by a

legal certainty or otherwise establish by a legal certainty that the amount in controversy exceeds $5 million, their objections are denied and the F&R is adopted.

Since the objections were filed by Defendants, but before their reply brief was due, the Ninth Circuit held that where the complaint specifically states that damages are less than the jurisdiction threshold for diversity cases, but does not specify a total amount in controversy, and the complaint is unclear or ambiguous as to the amount pled, a preponderance of the evidence standard applies. Guglielmino v. McKee Foods Corp., -- F.3d --, No. 05-16144, 2007 WL 2916193, *5 (9th Cir. Oct. 9, 2007) (because the "complaint is unclear and does not specify "a total amount in controversy," the proper burden of proof in this case is proof by a preponderance of the evidence.").

In Guglielmino, the court found that the complaint was not a model of clarity and failed to allege a sufficiently specific total amount in controversy because the allegation in the Jurisdiction and Venue that stated that damages are less than $75,000, was not repeated in the Prayer for Relief section, and did not take account of attorneys' fees, accounting of moneys, or payment of back taxes and benefits. Here, however, Plaintiffs made clear in their Complaint that the amount in controversy does not exceed $5 million, inclusive of attorneys' fees.

Furthermore, Plaintiffs specified their monetary damages by category to include the cost of food purchased, the veterinary screening examinations, treble damages pursuant to a specific Hawaii Revised Statute, and damages for elder plaintiffs pursuant to a specific Hawaii Revised Statute.  Moreover, Plaintiffs have clarified that this case is not similar to the other pending lawsuits against Defendants nationwide, because Plaintiffs are not seeking damages for illness or death of pets and have specifically excluded those claims for the class definition.

As Plaintiffs' Complaint is not ambiguous regarding the amount in controversy and as Plaintiffs specifically stated that the amount in controversy is less than the jurisdictional amount required, the legal certainty standard applies.  See Lowdermilk, 479 F.3d at 998-99.  Notwithstanding that the legal certainty standard is the correct standard to apply and both parties agreed to such, this Court finds that even if the preponderance of the evidence standard applied, Defendants cannot meet their burden for the same reasons discussed above.

Because this Court is adopting the Magistrate Judge's F&R and remanding this case to State court, Defendants' Motion to Stay and objections thereto are moot.

16

CONCLUSION

For the reasons stated above, the Court ADOPTS the Magistrate Judge's Findings and Recommendation Granting in Part and Denying in Part Plaintiff's Motion for Remand and Order Denying Defendants' Motion to Stay as Moot (Doc. # 23). This case is HEREBY REMANDED to State court.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 13, 2007.



_____
David Alan Ezra
United States District Judge

Ortiz v. Menu Foods, Inc., et al., CV No. 07-00323 DAE-LEK; ORDER ADOPTING FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR REMAND AND ORDER DENYING DEFENDANTS' MOTION TO STAY AS MOOT